RANSOM, GILBERTSON, MARTIN &
RATLIFF, LLP
Jeffrey S. Ratliff
5441 S. Macadam Avenue, Suite 301
Portland, OR 97239
T: 503-226-3664

*Liaison Counsel for Meitav Provident and
Pension Funds Ltd., the Teachers Funds,
and the Menora Funds and Proposed
Liaison Counsel for the Class*

[Additional counsel on signature page.]

### UNITED STATES DISTRICT COURT
### DISTRICT OF OREGON

| | |
|---|---|
| IN RE NIKE, INC. SECURITIES LITIGATION | **CASE No.: 3:24-cv-00974-AN**<br><br>**CLASS ACTION**<br><br>**NOTICE OF MOTION AND MOTION OF MEITAV PROVIDENT AND PENSION FUNDS LTD., THE TEACHERS FUNDS, AND THE MENORA FUNDS FOR APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**ORAL ARGUMENT REQUESTED** |
| This Document Relates to: All Actions | |

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT                                                                        2

STATEMENT OF FACTS                                                                           4

ARGUMENT                                                                                     9

    A.    THE FUNDS SHOULD BE APPOINTED LEAD PLAINTIFFS                        9

        1.    The Funds Are Willing to Serve as Class Representatives                 10

        2.    The Funds Have the "Largest Financial Interest"                        12

        3.    The Funds Otherwise Satisfy the Requirements of Rule 23 of the Federal Rules of Civil Procedure     13

        4.    The Funds Will Fairly and Adequately Represent the Interests of the Class and Are Not Subject to Unique Defenses     18

    B.    LEAD PLAINTIFFS' SELECTION OF COUNSEL SHOULD BE APPROVED                18

CONCLUSION                                                                                  19

**TABLE OF AUTHORITIES**

                                                  **Page(s)**

**Cases**

*Backe v. Novatel Wireless, Inc.*, No. 08-CV-01689-H (RBB),
    2008 U.S. Dist. LEXIS 100622 (S.D. Cal. Dec. 10, 2008)                      3, 16

*Bao v. SolarCity Corp.*, No. 14-cv-01435-BLF,
    2014 U.S. Dist. LEXIS 111869 (N.D. Cal. Aug. 11, 2014)                      13

*Brown v. Computerized Thermal Imaging, Inc.*, Civil No. 02-611-KI,
    2002 U.S. Dist. LEXIS 18515 (D. Or. Sep. 24, 2002)                     13, 14, 15

*China Agritech, Inc. v. Resh*,
    138 S. Ct. 1800 (2018)                                                       16

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, No. 11-CV-04003-LHK,
    2012 U.S. Dist. LEXIS 2776 (N.D. Cal. Jan. 9, 2012)                          12

*Deering v. Galena Biopharma, Inc.*, No. 3:14-cv-00367-SI,
2014 U.S. Dist. LEXIS 140766 (D. Or. Oct. 3, 2014) ..... 13, 14, 18

*Feyko v. Yuhe Int'l Inc.*, No. CF 11-05511 DDP (PJWx),
2012 U.S. Dist. LEXIS 28040 (C.D. Cal. Mar. 2, 2012) ..... 4, 16

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) ..... 14

*Herrgott v. United States Dist. Court for the N. Dist. of Cal. (In re Cavanaugh)*,
306 F.3d 726 (9th Cir. 2002) ..... 14

*Hessefort v. Super Micro Comput., Inc.*,
317 F. Supp. 3d 1056 (N.D. Cal. 2018) ..... 13

*In re AudioEye, Inc.*, No. CV-15-163-TUC-DCB,
2015 U.S. Dist. LEXIS 193348 (D. Ariz. July 31, 2015) ..... 4, 16

*In re Regions Morgan Keegan Closed-End Fund Litig.*, No. 07-02830,
2010 U.S. Dist. LEXIS 132902 (W.D. Tenn. Dec. 15, 2010) ..... 4, 16

*In re SolarCity Corp. Sec. Litig.*, No. 16-CV-04686-LHK,
2017 U.S. Dist. LEXIS 11553 (N.D. Cal. Jan. 25, 2017) ..... 14

*Knox v. Yingli Green Energy Holding Co.*,
136 F. Supp. 3d 1159 (C.D. Cal. 2015) ..... 12, 13

*Lax v. First Merchants Acceptance Corp.*, Nos. 97 C 2715 *et al.*,
1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) ..... 12, 13

*McCracken v. Edwards Lifesciences Corp.*, No. 8:13-CV-1463-JLS,
2014 U.S. Dist. LEXIS 2147 (C.D. Cal. Jan. 8, 2014) ..... 17

*Mersho v. United States Dist. Court*,
6 F.4th 891 (9th Cir. 2021) ..... 16

*Miami Police Relief & Pension Fund v. Fusion-io, Inc.*, No. 13-CV-05368-LHK,
2014 U.S. Dist. LEXIS 80141 (N.D. Cal. June 10, 2014) ..... 16

*Nicolow v. Hewlett Packard Co.*, Nos. 12-05980 CRB *et al.*,
2013 U.S. Dist. LEXIS 29876 (N.D. Cal. Mar. 4, 2013) ..... 12, 13

*Osher v. Guess?, Inc.*, No. CV 01-00871 LGB (RNBx),
2001 U.S. Dist. LEXIS 6057 (C.D. Cal. Apr. 26, 2001) ..... 18

*Richardson v. TVIA, Inc.*,
2007 U.S. Dist. LEXIS 28406 (N.D. Cal. Apr. 16, 2007) ..... 14

*Staton v. Boeing Co.*,

327 F.3d 938 (9th Cir. 2003)                                                        15

*Xu v. FibroGen, Inc.*, No. 21-cv-02623-EMC,
      2021 U.S. Dist. LEXIS 164034 (N.D. Cal. Aug. 30, 2021)                 17

## Statutes

15 U.S.C. § 77z-1                                                                13, 18

15 U.S.C. § 78u-4                                                                *passim*

Private Securities Litigation Reform Act of 1995                       *passim*

## Rules

Fed. R. Civ. P. 23                                                               *passim*

LR 7-1(a)                                                                             1

## LR 7-1(a) CERTIFICATION

Local Rule 7-1(a) requires the moving party to certify that the "parties made a good faith effort through personal or telephone conferences to resolve the dispute" before filing a motion. LR 7-1(a)(1)(A). Pursuant to the lead plaintiff procedures of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), whereby any "purported class member . . . including any . . . class member who is not individually named as a plaintiff in the complaint" may file a motion for appointment as lead plaintiff, 15 U.S.C. § 78u-4(a)(3)(B)(i), there may be as-yet unknown movants who intend to seek appointment as lead plaintiff on August 19, 2024. The undersigned counsel respectfully requests that Local Rule 7-1(a)'s conferral requirement be waived as to the unknown movants in this instance. If any subsequent motion for appointment as lead plaintiff is filed after this Motion, the undersigned will confer, as necessary, with counsel for those movants after the filing of this Motion.

## MOTION

**PLEASE TAKE NOTICE** that on a date and at a time to be designated by the Court, Lead Plaintiff Movants Meitav Provident and Pension Funds Ltd. ("Meitav"), Kranot Hishtalmut Le Morim Tichoniim Morey Seminarim Ve Mefakhim Hevra Menahelet Ltd. and Kranot Hishtalmut Le Morim Ve Gananot Hevra Menahelet Ltd. (together, the "Teachers Funds"), and Menora Mivtachim Insurance Ltd. ("Menora Insurance") and Menora Mivtachim Pensions and Gemel Ltd. ("Menora Pensions & Gemel" and, together with Menora Insurance, the "Menora Funds") (collectively, the "Funds"), respectfully submit this Memorandum of Law in support of their motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the PSLRA, for an Order: (1) appointing the Funds as Lead Plaintiffs on behalf of a class (the "Class") consisting of all

persons and entities other than the above-captioned defendants ("Defendants") that purchased or otherwise acquired NIKE, Inc. ("NIKE" or the "Company") Class B common stock between March 19, 2021, and June 27, 2024, both dates inclusive (the "Class Period"); and (2) approving proposed Lead Plaintiffs' selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class and Ransom, Gilbertson, Martin & Ratliff, LLP ("Ransom") as Liaison Counsel for the Class.[1]  This Motion is based upon the Memorandum of Law below and the Declaration of Jeremy A. Lieberman ("Lieberman Decl.") and exhibits thereto filed concurrently herewith.

## MEMORANDUM OF LAW

The Funds respectfully submit this Memorandum of Law in support of their motion, pursuant to Section 21D(a)(3) of the Exchange Act, 15 U.S.C. § 78u-4(a)(3), as amended by the PSLRA, for an Order: (1) appointing the Funds as Lead Plaintiffs on behalf of the Class; and (2) approving proposed Lead Plaintiffs' selection of Pomerantz as Lead Counsel for the Class and Ransom as Liaison Counsel for the Class.

## PRELIMINARY STATEMENT

The Complaints in the above captioned consolidated action (the "Consolidated Action")[2] allege that Defendants defrauded investors in violation of the Exchange Act.  NIKE investors,

---

[1] On June 20, 2024, the action styled *City Pension Fund for Firefighters and Police Officers in the City of Pembroke Pines v. Nike, Inc. et. al.*, No. 24-cv-00974 (the "*Pembroke Pines* Action") was filed in this Court, alleging a class period including all persons and entities that purchased or otherwise acquired NIKE Class B common stock between March 19, 2021, and March 21, 2024, inclusive. *See* Dkt. No. 1 at 1 ¶ 1. Then, on July 15, 2024, a second action alleging substantially the same wrongdoing as the *Pembroke Pines* Action against the same defendants was filed in this Court, styled *Mehta v. Nike, Inc. et. al.*, No. 24-cv-01150 (the "*Mehta* Action"), alleging a class period including all persons and entities that purchased or otherwise acquired NIKE Class B common stock between March 19, 2021, and June 27, 2024, inclusive. *See Mehta* Action, Dkt. No. 1 at 1 ¶ 1. Therefore, to avoid excluding any potential class members, this motion has adopted the larger class period alleged in the *Mehta* Action.

[2] On August 8, 2024, the Court issued an Order, *inter alia*, consolidating the *Pembroke Pines* Action and the *Mehta* Action for all purposes. *See* Dkt. No. 11.

including the Funds, incurred significant losses following the disclosure of the alleged fraud, which caused the prices of NIKE securities to fall sharply, damaging the Funds and other NIKE investors.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant that possesses the largest financial interest in the outcome of the Consolidated Action and that satisfies the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). During the Class Period, the Funds collectively: (i) purchased 1,649,496 shares of NIKE Class B common stock; (ii) expended $178,515,137 on their purchases of NIKE Class B common stock; (iii) retained 1,239,864 of their shares of NIKE Class B common stock; and (iv) as a result of the disclosures of the fraud, incurred losses of approximately $26,575,298 in connection with their Class Period purchases of NIKE Class B common stock. *See* Lieberman Decl., Exhibit ("Ex.") A. Accordingly, the Funds believe that they have the largest financial interest in the relief sought in the Consolidated Action.

Beyond their considerable financial interest, the Funds also meet the applicable requirements of Rule 23 because their claims are typical of absent Class members and because they will fairly and adequately represent the interests of the Class. As sophisticated institutional investors, the Funds are paradigmatic lead plaintiffs under the PSLRA, and their appointment would advance the legislative purpose of "increasing the role of institutional investors in class actions" in order to "benefit shareholders and assist courts by improving the quality of representation in securities class actions." H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted in* U.S.C.C.A.N. 730, 733. For this reason, courts in this Circuit strongly prefer appointment of institutional investors to lead complex securities class actions. *See, e.g., Backe v. Novatel Wireless, Inc.*, No. 08-CV-01689-H (RBB), 2008 U.S. Dist. LEXIS 100622, at *12 (S.D.

Cal. Dec. 10, 2008) (noting that movant was "the sort of lead plaintiff envisioned by Congress in the enactment of the PSLRA--a sophisticated institutional investor with a real financial interest in the litigation"); *Feyko v. Yuhe Int'l Inc.*, No. CF 11-05511 DDP (PJWx), 2012 U.S. Dist. LEXIS 28040, at *8 (C.D. Cal. Mar. 2, 2012) (appointing institutional investor as lead plaintiff, finding it to be "'exactly the type of sophisticated market participant[] Congress intended to take on the role of lead plaintiff following the PSLRA's reforms'") (quoting *In re Regions Morgan Keegan Closed-End Fund Litig.*, No. 07-02830, 2010 U.S. Dist. LEXIS 132902, at *8 (W.D. Tenn. Dec. 15, 2010)); *In re AudioEye, Inc.*, No. CV-15-163-TUC-DCB, 2015 U.S. Dist. LEXIS 193348, at *13 (D. Ariz. July 31, 2015) (appointing as lead plaintiff "an institutional investor, which is precisely the kind of investor that Congress sought to encourage to assume a more prominent role in securities litigation with the enactment of the PSLRA's lead plaintiff provisions").

In order to fulfill their responsibilities as Lead Plaintiffs and vigorously prosecute the Consolidated Action on behalf of the Class, the Funds have selected Pomerantz as Lead Counsel for the Class. Pomerantz is a nationally-recognized securities class action firm that has recovered billions of dollars on behalf of defrauded investors, as detailed in its firm resume, and is well qualified to serve as Lead Counsel in the Consolidated Action.

Accordingly, the Funds respectfully request that the Court enter an order appointing the Funds as Lead Plaintiffs for the Class, and approving their selection of Pomerantz as Lead Counsel for the Class.

## STATEMENT OF FACTS

As alleged in the Complaints in the Consolidated Action, NIKE is an Oregon corporation with its principal executive offices in Beaverton, Oregon. NIKE is a global athletic footwear and

8

apparel company which designs, markets, and sells products for its NIKE, Jordan, and Converse brands. NIKE branded products are sold through the Company's retail stores, NIKE Brand Digital platforms ("NIKE Digital"), wholesale partners, distributors, and licensees. NIKE Digital includes Nike.com and the Company's digital application, Nike+. The Company's Class B common stock trades on the New York Stock Exchange under the ticker symbol "NKE."

In 2017, NIKE began implementing its "Consumer Direct Offense" strategy, which focused on increasing innovation and direct connections with consumers. Consumer Direct Offense also emphasized NIKE's digital presence as a means of directly connecting with consumers by "add[ing] greater digital expertise and control in the markets where consumer connections happen." In fact, the Company began reporting the financial metrics from NIKE Digital and the Company's retail stores as "NIKE Direct." In connection with NIKE's direct-to-consumer strategy, the Company dropped nearly one-third of its sales partners by late 2020, and significantly reduced sales to other major retail clients in order to shift the Company's focus to direct-to-consumer sales.

The Class Period begins on March 19, 2021, to coincide with NIKE's announcement of its financial results for the third quarter of fiscal year 2021, and NIKE's related investor earnings call, after the market closed the prior evening. In connection with these results, Defendant John J. Donahoe II (the Company's President and Chief Executive Officer) touted that "NIKE continues to deeply connect with consumers all over the world driven by our strong competitive advantages" and that "[o]ur strategy is working, as we accelerate innovation and create the seamless, premium marketplace of the future." Defendant Matthew Friend (the Company's Executive Vice President and Chief Financial Officer) similarly assured investors that "NIKE's brand momentum is as strong as ever and we are driving focused growth against our largest

9

opportunities." On the related investor earnings call, Defendant Donahoe emphasized NIKE's "tremendous success in digital" and that "NIKE's digital transformation remains a unique advantage."

Throughout the Class Period, Defendants repeatedly touted the purported strength of NIKE's business model, and in particular, the claimed success of its digital and direct-to-consumer strategies to produce sustainable growth, while downplaying the significant competitive pressures facing the Company.

Investors began to learn the truth about NIKE's inability to generate sustainable revenue growth on June 27, 2022, when the Company announced its fourth quarter and full year 2022 financial results after market close. NIKE announced that quarterly revenues declined 1% year-over-year and quarterly wholesale revenues declined 7% year-over-year. However, Defendant Donahoe reassured investors that NIKE's "strategy is working" by creating value through its "competitive advantages, including [its] pipeline of innovative product[s] and expanding digital leadership." He further asserted that NIKE's investments in digital and other areas prompted Defendants to be "very confident in our long-term strategy and our growth outlook." On this news, the price of NIKE Class B common stock declined $7.72 per share, or nearly 7%, from a close of $110.50 per share on June 27, 2022, to close at $102.78 per share on June 28, 2022.

Three months later, on September 29, 2022, investors learned more when NIKE reported its first quarter fiscal year 2023 financial earnings after market close. In spite of modest revenue growth, NIKE reported that its net income declined 22% year-over-year and that diluted earnings per share ("EPS") similarly declined 20% year-over-year. NIKE also reported a significant reduction in gross margin (down 220 basis points year-over-year) driven by the disposal of excess inventory—which was 44% higher than in the first quarter of 2022. On this news, the

10

price of NIKE Class B common stock declined $12.21 per share, or nearly 13%, from a close of $95.33 per share on September 29, 2022, to close at $83.12 per share on September 30, 2022.

Notwithstanding the Company's struggles with NIKE Direct and its direct-to-consumer strategy, Defendants continued to tout the purported strength of NIKE's business model over the next year, telling investors that NIKE's "competitive advantages continue to fuel our momentum" and that NIKE is primed to "leverage our competitive advantages to not only gain share but also grow the market."

On December 21, 2023, however, investors learned more about the competitive pressures facing NIKE when the Company issued its second quarter fiscal year 2024 financial results and held its related investor earnings call after market close. Defendant Friend admitted that NIKE's "total retail sales across the marketplace fell short of our expectations," and that NIKE's digital platforms lost consumer traffic to competitors because of "higher promotional activity across the marketplace." Given these challenges, Defendant Friend revealed that NIKE was "adjusting [its] channel growth plans for the remainder of the year" and "identifying opportunities across the company to deliver up to $2 billion in cumulative cost savings over the next 3 years." On this news, the price of NIKE Class B common stock declined $14.49 per share, or nearly 12%, from a close of $122.53 per share on December 21, 2023, to close at $108.04 per share on December 22, 2023.

On March 21, 2024, NIKE announced its third quarter fiscal year 2024 financial results after market close, revealing a 3% year-over-year decline in revenue in its Europe, Middle East, and Africa segment, a 3% year-over-year decline in NIKE Digital revenue, and scant quarterly revenue growth of approximately 0.4% year-over-year in NIKE Direct. On the related investor earnings call held that same day, Defendant Donahoe admitted that "NIKE is not performing [to

11

its] potential" even though moments earlier he claimed that "Q3 performed in line with our expectations." Moreover, Defendant Donahoe revealed the Company's decision to reduce reliance on its direct-to-consumer strategy and "lean in with our wholesale partners to elevate our brand and grow the total marketplace." According to Defendant Donahoe, NIKE made a "reinvestment with our wholesale partners, so we bring a more holistic offense that grows the market and gets in the path of our consumer." Furthermore, Defendant Friend revealed that NIKE was "prudently planning for revenue in the first half of the fiscal year [2025] to be down low single digits" as Defendants "shift our product portfolio toward newness and innovation." On this news, the price of NIKE Class B common stock declined $6.96 per share, or nearly 7%, from a close of $100.82 per share on March 21, 2024, to close at $93.86 per share on March 22, 2024.

On June 27, 2024, NIKE announced its fourth quarter and full year 2024 financial results. The Company revealed a 2% year-over-year quarterly revenue decrease, including, *inter alia*, an 8% year-over-year quarterly revenue decline in NIKE Direct and a 10% year-over-year quarterly revenue decline in NIKE Digital. Defendant Donahoe later explained to investors that Defendants are taking "strategic shifts . . . including leadership and organization changes" to "position [NIKE] to compete and win." Nevertheless, Defendant Friend disclosed that NIKE was expected to face significant headwinds through fiscal year 2025 which would cause NIKE's full year 2025 revenue "to be down mid-single digits with the first half down high single digits." Critically, Defendants further retreated from NIKE's direct-to-consumer strategy by "reducing what we're offering to consumers through our digital channel." Given NIKE's substandard financial performance and Defendants' disparaging commentary about the Company's financial outlook, market analysts at Barclays questioned the "long-term health of the Nike brand" as

12

"[NIKE]'s strategy continues to increase in uncertainty." Moreover, Neil Saunders, the managing director at GlobalData, also expressed an unsettled view of the Company, noting that NIKE's "[m]anagement has tried to sell a story of improvement to investors, but is not prepared to back it up with positive forecasts." On this news, the price of NIKE Class B common stock declined $18.82 per share, or approximately 20%, from a close of $94.19 per share on June 27, 2024, to close at $75.37 per share on June 28, 2024. This stock drop represented the largest decline in the price of NIKE Class B common stock since 2001.

The Complaints allege that, throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts, about the Company's business and operations. Specifically, Defendants misrepresented and/or failed to disclose that: (1) NIKE's direct-to-consumer strategy was unable to generate sustainable revenue growth; (2) NIKE's purported competitive advantages were unable to protect the Company from intense competitive pressures after NIKE largely disengaged from many of its wholesale and retail partners to focus on the Company's direct-to-consumer strategy; and (3) as a result, Defendants' representations about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's shares, the Funds and other class members have suffered significant losses and damages.

## ARGUMENT

### A.    THE FUNDS SHOULD BE APPOINTED LEAD PLAINTIFFS

The Funds should be appointed Lead Plaintiffs because, to their counsel's knowledge, they have the largest financial interest in the Consolidated Action and otherwise meet the

13

requirements of Rule 23. Section 21D(a)(3)(B) of the PSLRA sets forth procedures for the selection of lead plaintiff in class actions brought under the Exchange Act. The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of the class action by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) &(ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any such notice. Under this section, the Court "shall" appoint "the presumptively most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, the Funds satisfy all three of these criteria and thus are entitled to the presumption that they are the most adequate plaintiffs of the Class and, therefore, should be appointed Lead Plaintiffs for the Class.

### 1. The Funds Are Willing to Serve as Class Representatives

On June 20, 2024, counsel for plaintiff in the *Pembroke Pines* Action caused a notice to be published over *Business Wire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA (the "Notice"), which announced that a securities class action had been filed against Defendants, and

14

advised investors in NIKE Class B common stock that they had until August 19, 2024—*i.e.*, 60 days—to file a motion to be appointed as Lead Plaintiff. *See* Lieberman Decl., Ex. B.

The Funds have filed the instant motion pursuant to the Notice and have submitted Certifications, respectively signed by representatives duly authorized to bind Meitav, the Teachers Funds, and the Menora Funds and enter into litigation on their behalf, attesting that they are willing to serve as representatives for the Class, and to provide testimony at deposition and trial, if necessary. *See* Lieberman Decl., Ex. C. Accordingly, the Funds satisfy the first requirement to serve as Lead Plaintiffs of the Class.

The Funds are, in every respect, exactly the sort of well-managed, sophisticated institutional investors that Congress intended to fulfill the lead plaintiff role created by the PSLRA. Meitav is an affiliate of Meitav Investment House, an Israeli investment house currently managing more than $80 billion. Meitav is currently serving or has recently served as Lead Plaintiff or Co-Lead Plaintiff in the PSLRA actions *Arora v. HDFC Bank Ltd.*, 2:20-cv-04140 (E.D.N.Y.), *Meitav Dash Provident Funds and Pension Ltd. v. Spirit Aerosystems Holdings, Inc.*, 4:20-cv-00054 (N.D. Okla.), *In re Mylan N.V. Securities Litigation*, 1:16-cv-07926 (S.D.N.Y.) ("*Mylan*"), and *Roofer's Pension Fund v. Papa*, 2:16-cv-02805 (D.N.J.). The Teachers Funds are institutional investors that manage various funds for the benefit of educators in Israel and are currently serving as Co-Lead Plaintiffs along with other institutional investors in the PSLRA action *Genesee County Employees Retirement System v. Kornit Digital Ltd. et al.*, 2:23-cv-00888 (D.N.J.). The Menora Funds are affiliates of Menora Mivtachim Holdings Ltd., a holding company based in Ramat Gan, Israel, which is among Israel's largest insurance and finance groups, with more than $70 billion in assets under management. The Menora Funds are currently serving or has recently served as Lead Plaintiff or Co-Lead Plaintiff in the PSLRA

15

actions *Mylan*, *Plumbers and Steamfitters Local 60 Pension Trust v. Meta Platforms, Inc. et al*, 4:22-cv-01470 (N.D. Cal.), *AMI - Government Employees Provident Fund Management Company Ltd. v. Alphabet Inc. et al.*, 3:23-cv-01186 (N.D. Cal.), *In re Adobe Inc. Securities Litigation*, 1:23-cv-09260 (S.D.N.Y.), and *In re Perion Network Ltd. Sec. Litig.*, 1:24-cv-2860 (S.D.N.Y.). Previously, the Menora Funds served as Lead Plaintiffs in the PSLRA action *In re Comverse Tech. Inc. Sec. Litig.*, 06-cv-1825 (E.D.NY.), where they achieved a $225 million settlement on behalf of the Class.

### 2.     The Funds Have the "Largest Financial Interest"

The PSLRA requires a court to adopt a presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). To the best of their knowledge, the Funds have the largest financial interest of any NIKE investor or investor group seeking to serve as Lead Plaintiff based on the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased; (2) the number of net shares purchased (also referred to as "retained shares"); (3) the total net funds expended; and (4) the approximate losses suffered. Nos. 97 C 2715 *et al.*, 1997 U.S. Dist. LEXIS 11866, at *17-*18 (N.D. Ill. Aug. 6, 1997). In accord with courts nationwide, these so-called *Lax* factors have been adopted by courts in the Ninth Circuit. *See, e.g.*, *Nicolow v. Hewlett Packard Co.*, Nos. 12-05980 CRB *et al.*, 2013 U.S. Dist. LEXIS 29876, at *18 (N.D. Cal. Mar. 4, 2013) ("District courts commonly refer to the four-factor [*Lax*] test, which considers (1) total shares purchased, (2) net shares purchased, (3) net funds expended, and (4) approximate losses suffered."); *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, No. 11-CV-04003-LHK, 2012 U.S. Dist. LEXIS 2776, at

*10-*11 (N.D. Cal. Jan. 9, 2012) (same); *Knox v. Yingli Green Energy Holding Co.*, 136 F. Supp. 3d 1159, 1163 (C.D. Cal. 2015) (same).

Of the *Lax* factors, courts in this Circuit, including this Judicial District, tend to emphasize approximate loss in assessing a lead plaintiff movant's financial interest within the meaning of the PSLRA. *See, e.g., Deering v. Galena Biopharma, Inc.*, No. 3:14-cv-00367-SI, 2014 U.S. Dist. LEXIS 140766, at *23 (D. Or. Oct. 3, 2014) (finding "[d]istrict courts have generally equated financial interest with actual economic losses suffered," and determining presumptive lead plaintiff by comparing losses); *Brown v. Computerized Thermal Imaging, Inc.*, Civil No. 02-611-KI, 2002 U.S. Dist. LEXIS 18515, at *2 (D. Or. Sep. 24, 2002) (finding "the court is to compare the financial stakes of the various candidates for lead plaintiff . . . and decide who has the most to gain from the lawsuit," and determining presumptive lead plaintiff by comparing movants' damages); *Nicolow*, 2013 U.S. Dist. LEXIS 29876, at *18-*19; *Knox*, 136 F. Supp. 3d. at 1163.

During the Class Period, the Funds collectively: (1) purchased 1,649,496 shares of NIKE Class B common stock; (2) expended $178,515,137 on their purchases of NIKE Class B common stock; (3) retained 1,239,864 of their shares of NIKE Class B common stock; and (4) as a result of the disclosures of the fraud, suffered a loss of $26,575,298 in connection with their Class Period purchases of NIKE Class B common stock. *See* Lieberman Decl., Ex. A. Because the Funds possess the largest financial interest in the outcome of this litigation, they may be presumed to be the "most adequate" plaintiffs. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### 3. The Funds Otherwise Satisfy the Requirements of Rule 23 of the Federal Rules of Civil Procedure

For a lead plaintiff movant to secure the PSLRA's rebuttable presumption that the movant is the "most adequate plaintiff," the movant must also demonstrate that the movant

17

"otherwise satisfies the requirements of Rule 23." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). A *prima facie* showing suffices for this determination. *Hessefort v. Super Micro Comput., Inc.*, 317 F. Supp. 3d 1056, 1060-01 (N.D. Cal. 2018); *Bao v. SolarCity Corp.*, No. 14-cv-01435-BLF, 2014 U.S. Dist. LEXIS 111869, at *9 (N.D. Cal. Aug. 11, 2014); *see also Deering*, 2014 U.S. Dist. LEXIS 140766, at *29 ("[P]laintiffs . . . present evidence that disputes the lead plaintiff's prima facie showing of typicality and adequacy."). "This showing need not be as thorough as what would be required on a class certification motion and only needs to satisfy typicality and adequacy." *In re SolarCity Corp. Sec. Litig.*, No. 16-CV-04686-LHK, 2017 U.S. Dist. LEXIS 11553, at *13 (N.D. Cal. Jan. 25, 2017); *see also Herrgott v. United States Dist. Court for the N. Dist. of Cal. (In re Cavanaugh)*, 306 F.3d 726, 732 (9th Cir. 2002) ("So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job."); *Deering*, 2014 U.S. Dist. LEXIS 140766, at *27-29 (evaluating only typicality and adequacy for Rule 23 purposes); *Brown*, 2002 U.S. Dist. LEXIS 18515, at *4-5 (same). The Funds readily pass muster.

The Funds satisfy the threshold for Rule 23(a)(3) typicality. "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Richardson v. TVIA, Inc.*, 2007 U.S. Dist. LEXIS 28406, at *16 (N.D. Cal. Apr. 16, 2007) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). The Funds' claims are typical of those of the Class members. Like all Class members, the Funds allege that: (1) Defendants violated the Exchange Act by making false or misleading statements of material facts and/or omitting to disclose material facts concerning

18

NIKE; (2) the Funds and the Class members purchased NIKE Class B common stock during the Class Period at prices artificially inflated by Defendants' misrepresentations or omissions, and were damaged upon the disclosure of those misrepresentations and/or omissions; and (3) the Funds and the Class members were damaged upon the revelation of Defendants' alleged misrepresentations or omissions through corrective disclosures that drove NIKE's share price downward. These shared claims, which are based on the same legal theories and arise from the same underlying facts and course of conduct, demonstrate the Funds' typicality under Rule 23(a)(3). *See, e.g., Brown*, 2002 U.S. Dist. LEXIS 18515, at *4-5 (holding that, because a movant "purchased [defendant company's] shares of stock" during the relevant period of time, movant's "injury, alleged[ly] caused by defendants' misrepresentations, is typical of the injury alleged on behalf of the proposed class").

The Funds also satisfy the Rule 23(a)(4) adequacy requirement. In determining whether that requirement is met, courts in the Ninth Circuit consider whether "the representative plaintiffs and their counsel have any conflicts of interest with other class members" and ask "will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (citations omitted). Here, the Funds have submitted signed Certifications declaring their commitment to protect the interests of the Class. *See* Lieberman Decl., Ex. C. The Funds' significant losses from their purchases of NIKE Class B common stock during the Class Period demonstrate that they have a sufficient interest in the outcome of this litigation that aligns with the interests of Class members. Indeed, the Funds have already demonstrated their ability to pursue securities claims through their choice of counsel, Pomerantz. Pomerantz is one of the nation's leading plaintiff-side securities litigation firms, as discussed in greater detail in Section B., *infra*. The Funds' and Pomerantz's

19

willingness and ability to zealously litigate the claims in this Consolidated Action on behalf of the Class cannot reasonably be questioned.

As noted above, the Funds are sophisticated institutional investors. As such, their appointment would be consistent with the PSLRA's preference for the appointment of institutional investors as class representatives in securities class actions. *See* H.R. Conf. Rep. No. 104-369, at 34 ("increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"). Indeed, courts in this Circuit strongly prefer appointment of institutional investors to lead complex securities class actions. *See, e.g., Novatel Wireless*, 2008 U.S. Dist. LEXIS 100622, at *12 (noting that movant was "the sort of lead plaintiff envisioned by Congress in the enactment of the PSLRA--a sophisticated institutional investor with a real financial interest in the litigation"); *Yuhe Int'l*, 2012 U.S. Dist. LEXIS 28040, at *8 (appointing institutional investor as lead plaintiff, finding it to be "'exactly the type of sophisticated market participant[] Congress intended to take on the role of lead plaintiff following the PSLRA's reforms'") (quoting *Regions Morgan Keegan*, 2010 U.S. Dist. LEXIS 132902, at *8); *AudioEye*, 2015 U.S. Dist. LEXIS 193348, at *13 (appointing as lead plaintiff "an institutional investor, which is precisely the kind of investor that Congress sought to encourage to assume a more prominent role in securities litigation with the enactment of the PSLRA's lead plaintiff provisions").

Consisting of likeminded institutional investors, the Funds constitute an appropriate group of the type expressly permitted by the PSLRA and routinely appointed to serve as lead plaintiff in PSLRA actions. In *China Agritech, Inc. v. Resh*, _ U.S. _, 138 S. Ct. 1800, 1807 n.3 (2018), the Supreme Court affirmed the propriety of appointing such groups as lead plaintiff,

20

finding that "[d]istrict courts often permit aggregation of plaintiffs into plaintiff groups." More recently, in *Mersho v. United States Dist. Court*, 6 F.4th 891, 899 (9th Cir. 2021), the Ninth Circuit Court of Appeals likewise held that "the [PSLRA] expressly allows a 'group of persons' to move for appointment" as lead plaintiff. *See also Miami Police Relief & Pension Fund v. Fusion-io, Inc.*, No. 13-CV-05368-LHK, 2014 U.S. Dist. LEXIS 80141, at \*20 (N.D. Cal. June 10, 2014) ("Small, cohesive groups . . . are routinely appointed as lead plaintiff in securities actions when they have shown their ability to manage the litigation effective in the interests of the class without undue influence of counsel.").

Here, demonstrating their fitness to serve jointly as Lead Plaintiffs as well as their adequacy more generally, the Funds have submitted a Joint Declaration attesting to, *inter alia*, their backgrounds, their experience serving as Lead Plaintiff in prior PSLRA actions, their understanding of the responsibilities of a lead plaintiff pursuant to the PSLRA, their decision to seek appointment jointly as Lead Plaintiffs, and the steps that they are prepared to take to cooperatively prosecute this litigation on behalf of the class. *See generally* Lieberman Decl., Ex. D. Courts routinely appoint investor groups as lead plaintiff under such circumstances. *See, e.g., Xu v. FibroGen, Inc.*, No. 21-cv-02623-EMC, 2021 U.S. Dist. LEXIS 164034, at \*23-24 (N.D. Cal. Aug. 30, 2021) (appointing group of sophisticated institutional investors as lead plaintiff, considering *inter alia* group's submission of detailed Joint Declaration in assessing adequacy); *McCracken v. Edwards Lifesciences Corp.*, No. 8:13-CV-1463-JLS (RNBx), 2014 U.S. Dist. LEXIS 2147, at \*12-13 (C.D. Cal. Jan. 8, 2014) (same).

As part of the Funds' efforts to formalize the leadership of this action and to demonstrate their commitment to jointly prosecute the action, their representatives participated in a conference call to discuss, among other things: the strength of the claims against Defendants; a

21

strategy for prosecuting these actions; the benefits that the class would receive from the leadership of a coordinated group of institutional investors with prior experience serving as Lead Plaintiffs under the PSLRA; the shared desire of the Funds to achieve the best possible result for the class; the interests in prosecuting the case in a collaborative, likeminded manner; and the actions that the Funds will each take to continue to ensure that the class's claims will be zealously and efficiently litigated. *See generally* Lieberman Decl., Ex. D.

### 4. The Funds Will Fairly and Adequately Represent the Interests of the Class and Are Not Subject to Unique Defenses

The presumption in favor of appointing the Funds as Lead Plaintiffs may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

> (aa)    will not fairly and adequately protect the interests of the class; or
>
> (bb)   is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(b)(iii)(II).

The ability and desire of the Funds to fairly and adequately represent the Class has been discussed above. The Funds are not aware of any unique defenses Defendants could raise that would render them inadequate to represent the Class. Accordingly, the Funds should be appointed Lead Plaintiffs for the Class.

### B. LEAD PLAINTIFFS' SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in a lead plaintiff to select and retain lead counsel, subject to the approval of the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Deering*, 2014 U.S. Dist. LEXIS 140766, at *8; *Osher v. Guess?, Inc.*, No. CV 01-00871 LGB (RNBx), 2001 U.S. Dist. LEXIS 6057, at *15 (C.D. Cal. Apr. 26, 2001). The Court should not interfere with Lead Plaintiff's

22

selection unless it is necessary to do so to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Deering*, 2014 U.S. Dist. LEXIS 140766, at \*8.

Here, the Funds have selected Pomerantz as Lead Counsel and Ransom as Liaison Counsel for the Class. These firms are highly experienced in the area of securities litigation and class actions, and have successfully prosecuted numerous securities litigations and securities class actions on behalf of investors. Pomerantz recently secured a recovery of \$3 billion on behalf of investors in the securities of Petróleo Brasileiro S.A. — Petrobras, the largest class action settlement in a decade and the largest settlement ever in a class action involving a foreign issuer. *See* Lieberman Decl., Ex. E. The Funds' selection of Liaison Counsel, Ransom, have significant experience in securities litigation, and its attorneys have extensive familiarity with the Local Civil Rules of this Judicial District. *See* Lieberman Decl., Ex. F.

As a result of these firms' extensive experience in litigation involving issues similar to those raised in the Consolidated Action, the Funds' counsel have the skill and knowledge which will enable them to prosecute the Consolidated Action effectively and expeditiously. Thus, the Court may be assured that by approving the selection of Lead Counsel and Liaison Counsel by the Funds, the members of the class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, the Funds respectfully request that the Court issue an Order: (1) appointing the Funds as Lead Plaintiffs for the Class; and (2) approving Pomerantz as Lead Counsel and Ransom as Liaison Counsel for the Class.

Dated: August 19, 2024

Respectfully submitted,

**RANSOM, GILBERTSON, MARTIN & RATLIFF, LLP**

23

By: */s/ Jeffrey S. Ratliff*
Jeffrey S. Ratliff
5441 S. Macadam Avenue, Suite 301
Portland, OR 97239
T: 503-226-3664
Email: RGMR1500@gmail.com

*Liaison Counsel for Lead Plaintiff Movants*
*Meitav Provident and Pension Funds Ltd., the*
*Teachers Funds, and the Menora Funds and*
*[Proposed] Liaison Counsel for the Class*

**POMERANTZ LLP**
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

*Counsel for Lead Plaintiff Movants Meitav*
*Provident and Pension Funds Ltd., the*
*Teachers Funds, and the Menora Funds and*
*[Proposed] Lead Counsel for the Class*