Gregory P. Fry, OSB #052583
**WELSH, WALES & FRY, PLC**
650 NE Holladay Street, Suite 1600
Portland, OR 97232
Tel: 503-444-3355
gfry@wwf-law.com

*Local Counsel for the*
*Institutional Investor Funds*

[Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| IN RE NIKE, INC. SECURITIES LITIGATION | Case No.: 3:24-cv-00974-AN |
| | INSTITUTIONAL INVESTOR FUNDS' MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF THEIR SELECTION OF LEAD COUNSEL; MEMORANDUM OF LAW IN SUPPORT THEREOF |
| This Document Relates to:  All Actions | Judge: Hon. Adrienne Nelson |
| | Request for Oral Argument |

## L.R. 7-1(a) CERTIFICATION

Counsel for movants herein are aware of this Court's rule requiring that the parties' counsel make a good faith effort through personal or telephone conferences to resolve any dispute before filing a motion. This motion, however, is made pursuant to a federal statute requiring any class member wishing to move for lead plaintiff appointment, regardless of whether they filed a complaint, to file a motion for appointment as lead plaintiff no later than 60 days after publication of notice of the first-filed action. Here, that notice was published on June 20, 2024, requiring class members to file lead plaintiff motions by August 19, 2024. Because this motion is required by statute, and counsel for movants herein will not know all the relevant parties until after August 19, 2024, counsel respectfully requests waiver of compliance with L.R. 7-1(a) certification.

## MOTION

Pursuant to the lead plaintiff appointment provisions set forth in the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4(a)(3), C+F S.A. and Universal Invest[1] (together, the "Institutional Investor Funds"), move this Court for an Order: (1) appointing the Institutional Investor Funds as lead plaintiff in the above-referenced consolidated action; (2) approving their selection of DiCello Levitt LLP ("DiCello Levitt") as lead counsel; and (3) granting such other further relief as the Court may deem just and proper. This motion is made on the grounds that the Institutional Investor Funds satisfy the PSLRA's lead plaintiff requirements, specifically, they possess the largest financial interest in the relief sought by the class of any lead plaintiff movant before the Court, and they also meet the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure.

---

[1] The Institutional Investor Funds are comprised of the following related funds: C+F Global, C+F Global Route, C+F Very Low, and C+F World Equities, Universal Invest Dynamic, Universal Invest High, and Universal Invest Medium. *See* Declaration of Gregory P. Fry in Support of the Institutional Investor Funds' Motion for Appointment as Lead Plaintiff and Approval of Their Selection of Lead Counsel ("Fry Decl."), Exs. B, D, E, filed concurrently herewith. Capfi/Cadelam and Cadelux are the related management companies of the respective and related SICAVs, all of which are under common ownership and control, and in the execution of their functions as management company under the UCITS/AIFMD legislation they direct the activities of the related SICAVs.

Institutional Investor Funds' Motion for Appointment as Lead Plaintiff and Approval of Their Selection of Lead Counsel; Memorandum of Law in Support Thereof

# TABLE OF CONTENTS

I.    BACKGROUND AND INTRODUCTION ...........................................................................1

II.   STATEMENT OF FACTS ..............................................................................................2

III.  ARGUMENT..................................................................................................................4

      A.    The Institutional Investor Funds Should Be Appointed Lead Plaintiff ...................4

          1.    The Institutional Investor Funds' Motion Is Timely....................................4

          2.    The Institutional Investor Funds Possess the Largest Financial in the Relief Sought by the Class....................................................................5

          3.    The Institutional Investor Funds Satisfy Rule 23's Typicality and Adequacy Requirements .............................................................................6

      B.    The Institutional Investor Funds' Selection of Counsel Should Be Approved...............................................................................................................9

IV.   CONCLUSION...............................................................................................................11

Institutional Investor Funds' Motion for Appointment as Lead Plaintiff and Approval of Their Selection of Lead Counsel; Memorandum of Law in Support Thereof

i

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    BACKGROUND AND INTRODUCTION

On June 20, 2024, a federal securities class action was filed on behalf of all those who purchased or acquired Nike, Inc. ("Nike" or the "Company") Class B common stock between March 19, 2021 and March 21, 2024, inclusive (the "Class Period"), the case being *City Pension Fund for Firefighters & Police Officers in the City of Pembroke Pines v. Nike, Inc., et al.*, Case No. 3:24-cv-00974-AN.  The action alleges that the Company and two senior officers violated §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Securities and Exchange Commission Rule 10b-5 promulgated thereunder.  On July 15, 2024, a second action was filed on behalf of a slightly larger class, all those who purchased or acquired Nike Class B common stock between March 19, 2021 and June 27, 2024, alleging the same federal securities violations as the first action, the case being *Mehta v. Nike, Inc., et al.*, Case No. 3:24-cv-01150-AN.  On August 8, 2024, the Court consolidated the two class actions for all purposes.  ECF No. 11.[2]  These consolidated actions are captioned *In re Nike, Inc. Securities Litigation*, Case No. 3:24-cv-00974-AN.

In securities class actions such as the above-captioned action, the PSLRA requires the Court to appoint as lead plaintiff the "most adequate plaintiff" to represent the class.  *In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002).  The "most adequate plaintiff" is the person or group of persons which possess the largest financial interest in the relief sought by the class and satisfy the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure.  *Id.* at 730.  Here, the Institutional Investor Funds are the "most adequate plaintiff"

---

[2] "For purposes of appointing a lead plaintiff, the longest class period governs." *Miami Police Relief & Pension Fund v. Fusion-io, Inc.*, No. 13-CV-05368, 2014 WL 2604991, at *1 n.3 (N.D. Cal. June 10, 2014).

Institutional Investor Funds' Motion for Appointment as Lead Plaintiff and Approval of Their Selection of Lead Counsel; Memorandum of Law in Support Thereof

because they purchased 708,535 shares of Nike Class B common stock during the Class Period, suffering losses of over $23.2 million. Fry Decl., Exs. B, C. In addition, the Institutional Investor Funds' claims are typical of the claims of the class, and the Institutional Investor Funds will fairly and adequately represent the interests of the class. Accordingly, the Institutional Investor Funds submit that they should be appointed as lead plaintiff, and they respectfully request that the Court approve their selection of lead counsel.

## II.    STATEMENT OF FACTS

Nike, an Oregon corporation with its principal executive offices in Beaverton, Oregon, is a global athletic footwear and apparel company. The consolidated Nike securities action alleges that Defendants misrepresented and/or failed to disclose that: (1) Nike's direct-to-consumer strategy was unable to generate sustainable revenue growth; (2) Nike's purported competitive advantages were unable to protect the Company from intense competitive pressures after Nike largely disengaged from many of its wholesale and retail partners to focus on the Company's direct-to-consumer strategy; and (3) as a result, Defendants' representations about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis.

The truth about Nike's financial outlook was revealed through a series of partial disclosures. On June 27, 2022, Nike announced its fourth quarter and full year 2022 financial results after market close. Nike announced that quarterly revenues declined 1% year-over-year and quarterly wholesale revenues declined 7% year-over-year. On this news, the price of Nike Class B common stock fell $7.72 per share, or nearly 7%, to close at $102.78 per share on June 28, 2022.

Institutional Investor Funds' Motion for Appointment as Lead Plaintiff and Approval of Their Selection of Lead Counsel; Memorandum of Law in Support Thereof

2

Then, on September 29, 2022, Nike reported its first quarter fiscal year 2023 financial results. Nike reported that its net income declined 22% year-over-year and that diluted earnings per share similarly declined 20% year-over-year. Nike also reported a significant reduction in gross margin (down 220 basis points year-over-year) driven by the disposal of excess inventory – which was 44% higher than in the first quarter of 2022. On this news, the price of Nike Class B common stock fell $12.21 per share, or nearly 13%, to close at $83.12 per share on September 30, 2022.

On December 21, 2023, Nike reported its second quarter fiscal year 2024 financial results and held its related investor earnings call after market close, revealing sales that fell short of expectations and adjusting the Company's growth plans. On this news, the price of Nike Class B common stock fell $14.49 per share, or nearly 12%, to close at $108.04 per share on December 22, 2023.

On March 21, 2024, Nike announced its third quarter fiscal year 2024 financial results, revealing a 3% year-over-year decline in revenue in its Europe, Middle East, and Africa segment, a 3% year-over-year decline in Nike Digital revenue, and scant quarterly revenue growth of approximately 0.4% year-over-year in Nike Direct. On this news, the price of Nike Class B common stock fell $6.96 per share, or nearly 7%, to close at $93.86 per share on March 22, 2024.

Finally, on June 27, 2024, Nike announced its fourth quarter and full year 2024 financial results. The Company revealed a 2% year-over-year quarterly revenue decrease, including, *inter alia*, an 8% year-over-year quarterly revenue decline in Nike Direct and a 10% year-over-year quarterly revenue decline in Nike Digital. On this news, the price of Nike Class B common stock declined approximately 20% to close at $75.37 per share on June 28, 2024.

Institutional Investor Funds' Motion for Appointment as Lead Plaintiff and Approval of Their Selection of Lead Counsel; Memorandum of Law in Support Thereof

3

III.    ARGUMENT

A.    **The Institutional Investor Funds Should Be Appointed Lead Plaintiff**

The PSLRA establishes a procedure for the appointment of a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  15 U.S.C. §78u-4(a)(1); *Cavanaugh*, 306 F.3d at 729.  First, the pendency of the first-filed action must be publicized in a widely circulated national business-oriented publication or wire service not later than 20 days after filing of the first complaint.  15 U.S.C. §78u-4(a)(3)(A)(i); *Cavanaugh*, 206 F.3d at 729.  Among other things, the notice of the first-filed action must advise members of the putative class "of the pendency of the action, the claims asserted therein, and the purported class period."  15 U.S.C. §78u-4(a)(3)(A)(i)(I).  Next, the PSLRA provides that the Court "shall consider any motion made by a purported class member in response to the notice" (15 U.S.C. §78u-4(a)(3)(B)(i)) and adopt a presumption that the most adequate plaintiff is the "person or group of persons that – (aa) has either filed the complaint or made a motion in response to a notice . . .; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(aaa)-(ccc); *see also Cavanaugh*, 306 F.3d at 729.  The Institutional Investor Funds meet each of these requirements and should be appointed as Lead Plaintiff.

1.    **The Institutional Investor Funds' Motion Is Timely**

The PSLRA requires that the "plaintiff or plaintiffs in the first filed action" publish notice to the class within 20 days of the filing of the first-filed complaint, advising members of the purported class of the pendency of the action, the claims asserted therein, and the purported class period, in addition to notifying the purported class members of their right to move for lead plaintiff appointment within 60 days of the date of the publication of the notice.  15 U.S.C. §78u-

Institutional Investor Funds' Motion for Appointment as Lead Plaintiff and Approval of Their Selection of Lead Counsel; Memorandum of Law in Support Thereof

4

4(a)(3)(A)(ii). The PSLRA also provides that if, as here, "more than one action on behalf of a class asserting substantially the same claim or claims arising under [the Exchange Act] is filed, only the plaintiff or plaintiffs in the first filed action shall be required to cause notice to be published." *Id.*

On June 20, 2024, the named plaintiff in the first-filed action published notice on *BusinessWire*, a widely circulated national business-oriented wire service, alerting investors that this class action had been filed against Nike and certain executive officers for violations of the Exchange Act. *See* Fry Decl., Ex. A. The notice published in connection with the first-filed action advised putative class members of the pendency of the action, the alleged claims, the proposed class period, and the right to move the Court to be appointed as lead plaintiff within 60 days, or by August 19, 2024. This motion is therefore timely filed, and the Institutional Investor Funds are entitled to have the Court consider their motion for appointment as lead plaintiff. 15 U.S.C. §78u-4(a)(3)(A)(i)(II) (providing that any class member may move for appointment as lead plaintiff within 60 days of publication of the notice of the filing of the first-filed action).

### 2. The Institutional Investor Funds Possess the Largest Financial Interest in the Relief Sought by the Class

Under the PSLRA, determining which movant possesses the largest financial interest in the relief sought by the class is the most significant factor in determining who is the "most adequate" lead plaintiff. *See In re Mersho*, 6 F.4th 891, 899 (9th Cir. 2021) ("the district court must identify which movant has the largest alleged losses and then determine whether that movant has made a prima facie showing of adequacy and typicality").[3]

---

[3] All footnotes and citations are omitted and emphasis is added unless otherwise noted.

Institutional Investor Funds' Motion for Appointment as Lead Plaintiff and Approval of Their Selection of Lead Counsel; Memorandum of Law in Support Thereof

Here, the Institutional Investor Funds purchased 708,535 shares of Nike Class B common stock during the Class Period and suffered more than $23.2 million in losses as a result of Defendants' alleged fraud. *See* Fry Decl., Exs. B, C. To the best of their knowledge, there are no other applicants who have sought, or are seeking, appointment as lead plaintiff that have a larger financial interest in the relief sought by the class who also satisfy Rule 23's typicality and adequacy requirements. Therefore, the Institutional Investor Funds satisfy the PSLRA's prerequisite of having the largest financial interest.

### 3. The Institutional Investor Funds Satisfy Rule 23's Typicality and Adequacy Requirements

In addition to possessing the largest financial interest, a lead plaintiff must also "satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u4(a)(3)(B)(iii)(I)(cc). Rule 23 requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class; and [that] the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3)-(4); *Cavanaugh*, 306 F.3d at 730 (focusing "in particular" on typicality and adequacy at the lead plaintiff stage). The test of typicality "'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). The adequacy requirement is met if no conflicts exist between the representative and class interests and the representative's attorneys are qualified, experienced, and generally able to conduct the litigation. Fed. R. Civ. P. 23(a)(4); *see also Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). The Institutional Investor Funds satisfy each of these requirements.

Institutional Investor Funds' Motion for Appointment as Lead Plaintiff and Approval of Their Selection of Lead Counsel; Memorandum of Law in Support Thereof

6

The Institutional Investor Funds' claims are typical because, like all class members, they purchased Nike Class B common stock during the Class Period at prices artificially inflated by Defendants' fraud and suffered significant damages when the price of these shares declined after the truth was revealed to the market. *See* Fry Decl., Exs. B, C. Their claims, therefore, arise from the same course of events as all class members and will require similar (if not identical) legal arguments in order to prove Defendants' liability. Thus, the Institutional Investor Funds' claims are typical of the claims of the class, and they satisfy the typicality requirements of Rule 23(a)(3).

The Institutional Investor Funds are also adequate representatives. Rule 23(a)(4) provides that a representative party must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In determining whether a proposed class representative meets this "adequacy" requirement, courts consider "two questions: (1) do the movant and its 'counsel have any conflicts of interest with other class members' and (2) will the movant and its 'counsel prosecute the action vigorously on behalf of the class?'" *Mersho*, 6 F.4th at 899-900.

The Institutional Investor Funds have no interests that are antagonistic to the interests of the other class members. Rather, their substantial financial interest in the outcome of the action will compel them to vigorously advocate on behalf of all class members. In addition, the Institutional Investor Funds submitted sworn certifications confirming their understanding of the requirements of a lead plaintiff, as well as their desire, willingness, and ability to serve in that role. *See* Fry Decl., Ex. B.[4]

---

[4] The Institutional Investor Funds have also submitted declarations from Johan Verbist and Cathy Arendt explaining that the Institutional Investor Funds are the proper legal entities to be named a plaintiff in this action and have standing to bring the securities fraud claims in this action. *See* Fry Decl., Exs. D, E.

Institutional Investor Funds' Motion for Appointment as Lead Plaintiff and Approval of Their Selection of Lead Counsel; Memorandum of Law in Support Thereof

The Institutional Investor Funds are precisely the type of investors that Congress, in passing the PSLRA, intended to encourage to serve as lead plaintiff in securities fraud class actions. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 320-21 (2007) ("Notably, Congress prescribed new procedures for the appointment of lead plaintiffs and lead counsel. This innovation aimed to increase the likelihood that institutional investors . . . would serve as lead plaintiffs."); *see also* H.R. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 733 ("The Conference Committee believes that increasing the role of institutional investors . . . will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."). C+F S.A. is a public limited company SICAV located in Antwerp, Belgium, and Universal Invest is a Luxembourg SICAV. As sophisticated institutional investors, appointment of the Institutional Investor Funds furthers the PSLRA's goal of involving institutional investors in securities class actions. *See Hufnagle v. Rino Int'l Corp.*, No. CV 10-8695, 2011 WL 710704, at *6 (C.D. Cal. Feb. 14, 2011) (appointing Luxembourg SICAV as lead plaintiff); *In re Vivendi Universal, S.A. Sec. Litig.*, 605 F. Supp. 2d 570, 579 (S.D.N.Y. 2009) (finding SICAVs have standing to sue for securities fraud violations, and that "SICAVs appear to be sufficiently similar to corporations and limited partnerships to justify allowing them to bring suit").

Finally, the Institutional Investor Funds have selected highly experienced counsel committed to vigorously prosecuting this action to a successful conclusion. Fry Decl., Ex. F. Thus, the Institutional Investor Funds satisfy the adequacy requirements of Rule 23(a)(4). Because the Institutional Investor Funds have the largest financial interest in the relief sought by the class, and because they meet Rule 23's requirements, they are "the most adequate plaintiff" and should be appointed lead plaintiff.

Institutional Investor Funds' Motion for Appointment as Lead Plaintiff and Approval of Their Selection of Lead Counsel; Memorandum of Law in Support Thereof

**B.    The Institutional Investor Funds' Selection of Counsel Should Be Approved**

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to this Court's approval.  *See* 15 U.S.C. §78u-4(a)(3)(B)(v).  This Court should not disturb the lead plaintiff's selection of counsel unless it is necessary to "protect the interests of the class."  15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa); *see also Cavanaugh*, 306 F.3d at 732-33; *In re Cohen*, 586 F.3d 703 (9th Cir. 2009).  Here, the Institutional Investor Funds have selected DiCello Levitt to serve as lead counsel for the putative class.  Fry Decl., Ex. F.

DiCello Levitt is an esteemed plaintiffs' firm that is highly experienced in litigating complex class actions.  As further expanded upon in its firm résumé submitted with this motion, DiCello Levitt inarguably has the subject-matter experience, personnel, and financial resources to effectively prosecute this action and obtain the best outcome for the class.  *See id.* (DiCello Levitt Firm Résumé).  Among its approximately 66 attorneys across seven offices are dozens with, collectively, more than 200 years of experience litigating and leading securities fraud and complex financial instruments class actions.  DiCello Levitt's highly experienced securities attorneys have played leading roles in some of the most significant securities cases since the enactment of the PSLRA, litigated some of the largest securities class actions in the United States, and prosecuted shareholder actions all over the world.  Further, DiCello Levitt attorneys have significant experience investigating, identifying, and successfully litigating complex accounting fraud actions.  The firm's attorneys have garnered national recognition, including top ratings by *Chambers*, *Benchmark*, and *Lawdragon*.  Moreover, DiCello Levitt was recently named Plaintiffs Firm of the Year by *ALM* and the *National Law Journal*.  DiCello Levitt partners and associates have led or played a critical role in securing billions of dollars in recoveries in securities fraud class and individual actions, including in the following cases:

Institutional Investor Funds' Motion for Appointment as Lead Plaintiff and Approval of Their Selection of Lead Counsel; Memorandum of Law in Support Thereof

- *In re Enron Corp. Securities Litigation*, No. H-01-3624 (S.D. Tex.). Current DiCello Levitt partners were among the more than 70 attorneys who led this action that obtained $7.2 billion for investors, primarily from Wall Street's largest banks and the company's auditor Arthur Andersen.

- *National Credit Union Administration Residential Mortgage-Backed Securities Actions*. A current DiCello Levitt partner served as lead counsel in more than a dozen high-profile securities actions that National Credit Union Administration brought against investment banks for alleged misrepresentations made to investors in connection with the sub-prime-backed residential mortgage securities. Those actions were resolved through settlements totaling more than $4.5 billion.

- *The Regents of the University of California v. Parsons*, JCCP Nos. 4322 & 4325 (Ca. Super. Ct., Los Angeles Cnty.), *Ohio Public Employees Retirement System v. Parsons*, No. 03-CVH07-7932 (Oh. Ct. of Common Pleas, Franklin Cnty.). Current DiCello Levitt partners prosecuted an institutional group action to recover losses resulting from the disastrous merger of AOL and Time Warner. The group action for dozens of institutional investors, including state and local pension funds and multiemployer funds, recovered $629 million for investors in the group.

- *In re Merck & Co., Inc. Securities, Derivative & "ERISA" Litigation*, No. 2:05-cv-02367 (D.N.J.). A current DiCello Levitt partner was an integral member of the co-lead counsel team which: (1) secured a unanimous decision from the U.S. Supreme Court in favor of shareholders with respect to the statute of limitations for securities fraud claims (559 U.S. 633 (2010)); and (2) ultimately secured, on behalf of lead plaintiffs and the class, a settlement for more than $1 billion.

- *In re Cardinal Health, Inc. Securities Litigation*, No. 2:04-cv-00575 (S.D. Ohio). Current DiCello Levitt partners were integral members of the team that ultimately obtained a $600 million recovery for investors in Cardinal Health, one of the largest drug distributors in Ohio.

- *In re Dynegy, Inc. Securities Litigation*, No. 4:02-cv-01571 (S.D. Tex.). A current DiCello Levitt partner was one of the lead lawyers prosecuting Dynegy and its executives for a secret financing scheme for a series of natural gas trades that overstated the power generator's cash flow for over a year. Ultimately, the investors' claims were resolved for $475 million.

- *Jones, et al. v. Pfizer Inc., et al.*, No. 1:10-cv-03864 (S.D.N.Y.). DiCello Levitt partners were integral members of the team that prosecuted investors' claims resulting from losses due to an off-label marketing scheme perpetrated by Pfizer. The team ultimately recovered $400 million for the class.

DiCello Levitt has also been recognized by courts for its advocacy for and commitment to

providing opportunities to attorneys from historically underrepresented groups. *See* Fry Decl., Ex.

Institutional Investor Funds' Motion for Appointment as Lead Plaintiff and Approval of Their Selection of Lead Counsel; Memorandum of Law in Support Thereof

F.  Also, significantly, unlike many "litigation" firms, DiCello Levitt is a trial firm.  The firm regularly tries cases to verdict – most recently achieving a $102.6 million jury verdict in a class action in late 2022.  *See Siqueiros v. Gen. Motors LLC*, Case No. 16-cv-07244-EMC (N.D. Cal.).  The trial team is supported by an in-house focus group and mock trial program led by firm partners designed to develop cases for trial from the outset, including focusing discovery on evidence that juries will actually need as part of their deliberative process.

Based on the foregoing, the Institutional Investor Funds respectfully submit that they, and the other members of the proposed Class, will be well-served by DiCello Levitt leading this litigation and respectfully request that the Court approve their selection of DiCello Levitt as lead counsel in this case.  *See United Ass'n of Plumbers & Pipefitters, Journeymen, Loc. #38 Defined Benefit Pension Plan v. Syneos Health, Inc.*, No. 23-cv-6548, 2023 WL 6622547, at *2 (S.D.N.Y. Oct. 11, 2023) (finding that DiCello Levitt "has the knowledge, experience, and resources to serve as lead counsel here").

## IV.    CONCLUSION

The Institutional Investor Funds (i) timely moved for appointment as lead plaintiff, (ii) have the largest financial interest in this litigation, and (iii) satisfy both the typicality and adequacy requirements of Rule 23.  Moreover, the Institutional Investor Funds have retained counsel with the requisite experience and resources to adequately represent the interests of all class members.  For these reasons, the Institutional Investor Funds respectfully request that this Court grant their motion, appoint them as Lead Plaintiff, and approve their selection of DiCello Levitt as Lead Counsel.

DATED:  August 19, 2024

_s/_ Gregory P. Fry
_____
GREGORY P. FRY

Institutional Investor Funds' Motion for Appointment as Lead Plaintiff and Approval of Their Selection of Lead Counsel; Memorandum of Law in Support Thereof

Gregory P. Fry, OSB #052583
**WELSH, WALES & FRY, PLC**
650 NE Holladay Street, Suite 1600
Portland, OR  97232
Tel: 503-444-3355
gfry@wwf-law.com

*Local Counsel for the Institutional Investor
Funds*

Henry Rosen (*pro hac vice* forthcoming)
Patrick W. Daniels (*pro hac vice* forthcoming)
Brian O. O'Mara (*pro hac vice* forthcoming)
Steven M. Jodlowski (*pro hac vice* forthcoming)
Caroline Robert (*pro hac vice* forthcoming)
Hani Y. Farah (*pro hac vice* forthcoming)
Ruben Peña (*pro hac vice* forthcoming)
**DiCELLO LEVITT LLP**
4747 Executive Drive, Suite 240
San Diego, CA  92121
Tel.:  619-923-3939
hrosen@dicellolevitt.com
pwdaniels@dicellolevitt.com
briano@dicellolevitt.com
stevej@dicellolevitt.com
cmrobert@dicellolevitt.com
hfarah@dicellolevitt.com
rpena@dicellolevitt.com

Adam J. Levitt
**DiCELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, IL  60602
Tel.:  312-214-7900
alevitt@dicellolevitt.com

Institutional Investor Funds' Motion for Appointment as Lead Plaintiff and Approval of Their Selection
of Lead Counsel; Memorandum of Law in Support Thereof

12

Roxana Pierce
**DiCELLO LEVITT LLP**
1101 17th Street, NW, Suite 1000
Washington, DC  20036
Tel.:  202-975-2288
rpierce@dicellolevitt.com

*Counsel for Proposed Lead Plaintiff the*
*Institutional Investor Funds, and Proposed Lead*
*Counsel for Lead Plaintiff and the Class*

Institutional Investor Funds' Motion for Appointment as Lead Plaintiff and Approval of Their Selection
of Lead Counsel; Memorandum of Law in Support Thereof

13

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on August 19, 2024, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

S/ Gregory P. Fry
GREGORY P. FRY

**WELSH, WALES & FRY, PLC**
650 NE Holladay Street, Suite. 1600
Portland, OR 97232
Tel: 503-444-3355
gfry@wwf-law.com

Institutional Investor Funds' Motion for Appointment as Lead Plaintiff and Approval of Their Selection of Lead Counsel; Memorandum of Law in Support Thereof

14