Jennifer S. Wagner, OSB No. 024470
Keil M. Mueller, OSB No. 085535
**KELLER ROHRBACK L.L.P.**
601 SW Second Avenue, Suite 1900
Portland, OR 97204
jwagner@kellerrohrback.com
kmueller@kellerrohrback.com
Telephone: (971) 253-4600

Michael B. Eisenkraft (*pro hac vice* forthcoming)
Benjamin F. Jackson (*pro hac vice* forthcoming)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, 14th Floor
New York, NY 10005
Tel.: (212) 838-7797
Fax: (212) 838-7745
meisenkraft@cohenmilstein.com
bjackson@cohenmilstein.com

*Attorneys for Movant*
[Additional Counsel listed on Signature Page]

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

|  |  |
|---|---|
| IN RE NIKE, INC. SECURITIES LITIGATION | Case No.: 3:24-cv-00974-AN |
|  | **MOVANT STATE OF WISCONSIN INVESTMENT BOARD'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL, AND MEMORANDUM IN SUPPORT THEREOF** |
| This Document Relates to: All Actions | Pursuant to 15 U.S.C. § 78u-4(a)(3)(B) |

## TABLE OF CONTENTS

LR 7-1 CERTIFICATION ............................................................................................................1

I.    PRELIMINARY STATEMENT........................................................................................2

II.   SUMMARY OF THE ACTION .......................................................................................4

III.  ARGUMENT ...................................................................................................................8

      A.   SWIB SHOULD BE APPOINTED LEAD PLAINTIFF.......................................8

            1.   The PSLRA's Standard for Appointing Lead Plaintiff .............................8

            2.   SWIB Is the "Most Adequate Plaintiff" ......................................................9

                  a.   The PSLRA's Notice Requirement Was Met and SWIB's Motion Is Timely................................................................9

                  b.   SWIB Has the Largest Financial Interest.......................................9

                  c.   SWIB Satisfies Rule 23's Requirements.....................................10

                  d.   SWIB Is Precisely the Type of Lead Plaintiff Envisioned by the PSLRA............................................................12

      B.   THE COURT SHOULD APPROVE SWIB'S SELECTION OF COUNSEL...........................................................................................................13

IV.   CONCLUSION ..............................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barry v. Colony NorthStar, Inc.*,
No. 18-cv-2888-GW(MRWX), 2018 WL 11459916 (C.D. Cal. July 16, 2018) ...................10

*Bruce v. Suntech Power Holdings Co.*,
No. 12-cv-04061-RS, 2012 WL 5927985 (N.D. Cal. Nov. 13, 2012) .................................14

*In re Calpine Corp. Sec. Litig.*,
No. 02-cv-1200-SBA, 2004 WL 3316309 (N.D. Cal. Feb. 5, 2004) .............................. 12, 13

*Cannataro v. Portland Gen. Elec. Co.*,
No. 20-cv-1583-SI, 2020 WL 12800744 (D. Or. Nov. 10, 2010) ........................................11

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ................................................................................................ 8, 10

*Deinnocentis v. Dropbox, Inc.*,
No. 19-cv-06348-BLF, 2020 WL 264408 (N.D. Cal. Jan. 16, 2020) ...................................10

*GGCC, LLC v. Dynamic Ledger Sols., Inc.*,
No. 17-cv-06779-RS, 2018 WL 1388488 (N.D. Cal. Mar. 16, 2018) ..................................10

*Hoang v. ContextLogic, Inc.*,
No. 21-cv-03930-BLF, 2022 WL 1539533 (N.D. Cal. May 16, 2022) ................................10

*Hodges v. Akeena Solar, Inc.*,
263 F.R.D. 528 (N.D. Cal. 2009) ..........................................................................................10

*Inchen Huang v. Depomed, Inc.*,
289 F. Supp. 3d 1050 (N.D. Cal. 2017) ..................................................................................3

*In re LDK Solar Sec. Litig.*,
No. 3:07-cv-05182-WHA, Dkt. 575 (N.D. Cal. June 22, 2010) ...........................................14

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
Nos. 2:12-cv-05122-MRP-MAN, 2:12-cv-05125-MRP-MAN (C.D. Cal.) ..........................13

*Mulligan v. Impax Labs., Inc.*,
No. 13-cv-1037-EMC, 2013 WL 3354420 (N.D. Cal. July 2, 2013) ...................................14

*In re NVIDIA Corp. Sec. Litig.*,
No. 18-cv-07669-HSG, 2019 WL 1960341 (N.D. Cal. May 2, 2019) ....................................9

*Sheet Metal Workers' National Pension Fund v. Bayer AG*,
  No. 20-cv-04737, Dkt. 44 (N.D. Cal. Oct. 21, 2020)..............................................................13

*In re Wells Fargo & Co. Sec. Litig.*,
  No. 1:20-cv-04494-JLR-SN (S.D.N.Y.)................................................................................13

## LR 7-1 CERTIFICATION

Counsel for Movant is aware of this Court's rule requiring that parties' counsel make a good faith effort through personal or telephone conferences to resolve the dispute. This motion, however, is made pursuant to the PSLRA, which requires any class member, regardless of whether they filed a complaint, to file a motion no later than 60 days after publication of notice. *See* 15 U.S.C. § 78u-4(a)(3)(A). The notice was published when the instant action was filed on June 20, 2024, and all motions are statutorily due by August 19, 2024. In this limited circumstance, Movant's counsel respectfully requests a waiver of the conferral requirement.

## MOTION

Pursuant to the lead plaintiff provisions of the Private Securities Litigation Reform Act of 1995, codified as Section 27(a)(3) of the Securities Act of 1933, 15 U.S.C. § 77z-1(a)(3) (2013), and/or Section 21D(a)(3) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(3) ("PSLRA"), State of Wisconsin Investment Board ("Movant" or "SWIB") moves this Court for an Order: (1) appointing Movant as Lead Plaintiff in the above-referenced action; (2) approving Movant's selection of Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") as Lead Counsel and Keller Rohrback L.L.P. ("Keller Rohrback") as Liaison Counsel for the Class; and (3) granting such other and further relief as the Court may deem just and proper.

Movant's motion is based on this motion, the memorandum of points and authorities in support thereof, the declaration of Michael B. Eisenkraft in support of this motion ("Eisenkraft Decl."), the pleadings on file in this action, oral argument and such other matters as the Court may consider in hearing this motion.

Movant's motion for appointment as Lead Plaintiff is made on the grounds that Movant believes that it is the "most adequate plaintiff" as defined in the PSLRA because it has the largest known financial interest in the relief sought by the Class and incurred substantial losses as a result

MOT. FOR APPOINTMENT AS LEAD PL. AND APPROVAL OF SELECTION OF COUNSEL - 1

of its purchase and/or acquisition of shares of Nike, Inc. ("Nike" or the "Company"). Further, Movant satisfies the typicality and adequacy requirements of Federal Rule of Civil Procedure 23.

Movant's motion for appointment for Lead Counsel and Liaison Counsel is made on the grounds that, as illustrated by the firm résumés attached to the Eisenkraft Declaration, both firms are adequate and qualified counsel.

**MEMORANDUM IN SUPPORT**

## I.     PRELIMINARY STATEMENT

SWIB, a sophisticated institutional investor with over $150 billion in assets under management, respectfully submits it should be appointed Lead Plaintiff on behalf of itself and all other persons or entities that purchased or otherwise acquired Nike common stock between March 19, 2021, and June 27, 2024, both dates inclusive (the "Class Period"). The above-captioned consolidated action (the "Action") brought against Nike, CEO John J. Donahoe II, and CFO Matthew Friend (collectively, "Defendants"), alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder. Specifically, the Action alleges that Defendants misrepresented and omitted information concerning the failure of Nike's direct-to-consumer strategy amidst rising competitive pressures. Nike investors—including SWIB—incurred significant losses after Nike's disclosure that it would be pulling back from the direct-to-consumer strategy it had previously extolled in multiple public statements and that Fiscal Year ("FY") 2025 would be a "transition year" with "strategic shifts . . . including leadership and organization changes."

The PSLRA governs the appointment of lead plaintiffs in class action lawsuits asserting violations of the federal securities laws and directs courts to appoint the "most adequate plaintiff" to serve as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA requires the Court to identify the movant that asserts the "largest financial interest" in the relief sought by the Class in this

MOT. FOR APPOINTMENT AS LEAD PL. AND APPROVAL OF SELECTION OF COUNSEL - 2

litigation, and to determine whether such movant has made a *prima facie* showing that it is a typical and adequate class representative under Rule 23.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *Inchen Huang v. Depomed, Inc.*, 289 F. Supp. 3d 1050, 1054 (N.D. Cal. 2017) ("Once a movant has demonstrated that it has the largest financial interest, it need only make a *prima facie* showing of its typicality and adequacy.").  As explained further below, SWIB is the "most adequate plaintiff" given that it has suffered nearly $38 million in last in, first out ("LIFO") losses and nearly $89 million in first in, first out ("FIFO") losses as a result of purchases of over 4 million shares of Nike common stock during the Class Period.  SWIB's certification, as required by the PSLRA, is attached as Exhibit A to the Eisenkraft Declaration.  A chart setting forth calculations of SWIB's losses is attached as Exhibit B to the Eisenkraft Declaration.  To the best of its knowledge, SWIB has sustained the largest loss of any investor or group of investors seeking to be appointed Lead Plaintiff in the Action.

In addition to possessing the largest-known financial interest in the litigation, SWIB also meets Rule 23's typicality and adequacy requirements.  SWIB's claims are typical of the claims of absent Class members, and SWIB will fairly and adequately represent the interests of the Class.  Further, SWIB is the type of sophisticated institutional investor that Congress intended to empower to lead securities class actions.  SWIB has the ability, resources, and experience to oversee this complex litigation and ensure that it is prosecuted vigorously and efficiently.

Finally, SWIB requests that the Court approve its choice of Cohen Milstein as Lead Counsel and Keller Rohrback as Liaison Counsel.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v) ("[T]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class.").  As described in the firm résumés attached as Exhibits D ("Cohen Milstein Firm Résumé") and E ("Keller Rohrback Firm Résumé") to the Eisenkraft Declaration, Cohen Milstein

is a nationally recognized law firm that has recovered billions of dollars for defrauded investors in securities class actions, and the attorneys in Keller Rohrback's Oregon office have deep experience representing plaintiffs in complex cases.

For these reasons, SWIB respectfully requests that the Court appoint it as Lead Plaintiff and approve its selection of Cohen Milstein as Lead Counsel and Keller Rohrback as Liaison Counsel for the Class.

## II.    SUMMARY OF THE ACTION

Nike is a global athletic footwear and apparel company whose brands include Nike, Jordan, and Converse. Nike sells its branded products through its retail stores, Nike Digital (comprising Nike.com and digital application Nike+), wholesale partners (Footlocker, Zappos, department stores, etc.), distributors, and licensees. In 2017, Nike began a "consumer direct offense" strategy of increasing its focus on direct connections with consumers, primarily through Nike Digital and its branded retail stores. On June 25, 2020, Nike announced a new phase of its consumer direct offense strategy called "consumer direct acceleration" ("CDA"). The focus of this phase was to give customers a "consistent, seamless physical and digital experience." As a result of its CDA strategy, by late 2020, Nike had significantly reduced sales to its wholesale partners, distributors, and licensees.

On March 19, 2021, Nike announced its third quarter FY 2021 financial results. The Company reported a 59 percent increase in Nike Brand digital sales. Nike further highlighted its "strong competitive advantages," noting that its "brand momentum is as strong as ever, and we are driving focused growth against our largest opportunities." Highlighting the CDA strategy, Nike assured investors that "[o]ur strategy is working, as we accelerate innovation and create the seamless, premium marketplace of the future." During its earnings call, Nike continued to

emphasize that it had a "unique advantage" to fortify its global brand from its "tremendous success in digital" and "digital transformation."

On June 24, 2021, Nike announced fourth quarter and full fiscal year 2021 financial results, stating that its "strong results this quarter and full fiscal year demonstrate NIKE's unique competitive advantage and deep connection with consumers all over the world." The Company also touted its CDA strategy, particularly the digital aspect, explaining that through its "consumer-led digital transformation, we are building a new financial model that will continue to fuel long-term sustainable, profitable growth for NIKE."

Throughout the remainder of 2021 and into 2022, Nike continued to promote its CDA and digital strategy. However, on June 27, 2022, Nike announced that fourth quarter FY 2022 revenue fell 1 percent while quarterly wholesale revenue fell 7 percent. Nike attributed the disappointing results to Covid-19-related disruptions in China as well as "ongoing supply chain disruptions" that had elevated inventories 23 percent. Nevertheless, the Company was optimistic about FY 2023, stating that its "competitive advantages, including our pipeline of innovative product and expanding digital leadership, prove that our strategy is working as we create value through our relentless drive to serve the future of sport." On this news Nike shares fell from $110.50 on June 27, 2022, to $102.78 on June 28, 2022, representing a decline of more than 6.9 percent.

On September 29, 2022, Nike announced first quarter FY 2023 financial results, reporting large year-over-year declines in net income, diluted EPS, and gross margin. Quarterly revenue grew only 4 percent and gross margin was negatively affected by the disposal of excess inventory, which had grown 44 percent from the prior year. Nike admitted that it was forced to "take that inventory and more aggressively liquidate it." Nike further admitted that it was in a "period of

turbulence," but assured investors that it would "leverage our strengths to emerge in a stronger position than our competition at the other end of it."

Nike also told investors that retail conditions were shifting in North America, leading retailers to overstock delivery to combat supply chain and delivery issues, causing store inventory to grow 65 percent and in-transit inventory to grow 85 percent. At the same time, however, "consumers are facing greater economic uncertainty, and promotional activity across the marketplace is accelerating, especially in apparel." On this news, Nike shares fell from $95.22 on September 29 to $83.12 on September 30, 2022, representing a decline of more than 12 percent.

However, Nike then saw improved financial results in late 2022 through mid-2023. The Company cited its "expanding digital leadership and brand growth" as factors for its success. Providing its FY 2024 outlook on June 29, 2023, Nike explained that its expected revenue and margin growth was based on "clear advantages, strong consumer momentum, a robust product innovation pipeline, healthy inventory and a normalized flow of supply."

Then, on December 21, 2023, Nike announced second quarter FY 2024 financial growth, reporting only 1 percent revenue growth due to quarterly revenue declines in both North America as well as Europe, the Middle East, and Africa ("EMEA"). Nike acknowledged that "retail sales across the marketplace fell short of expectations." More alarmingly, Nike saw "softness in digital traffic and higher levels of promotional activity across the marketplace." As a result, Nike would be "adjusting . . . channel growth plans for the remainder of the year" as well as "identifying opportunities across the company to deliver up to $2 billion in cumulative cost savings over the next 3 years." On this news, Nike shares fell from $122.53 on December 21, 2023, to $108.04 on December 22, 2023, representing a decline of more than 11 percent.

On March 21, 2024, Nike announced third quarter FY 2024 financial results, reporting a 3 percent decline in EMEA revenue and a 3 percent decline in Nike Digital. Further, Nike had only 0.4 percent Nike Direct growth.  Admitting that the Company was "not performing in our potential," Nike announced a series of "adjustments," including re-engaging with "wholesale partners to elevate our brand and grow the total marketplace."  According to Nike, "reinvestment with our wholesale partners," was necessary to "bring a more holistic offense that grows the market and gets in the path of our consumer."  On this news, Nike shares fell from $100.82 on March 21 to $93.86 on March 22, 2024, representing a decline of more than 6.9 percent.

Finally, on June 27, 2024, Nike announced fourth quarter and annual FY 2024 financial results.  Fourth quarter revenue fell 2 percent while annual revenue grew only 0.3 percent.  Nike stated that FY 2025 would now be a "transition year" with "strategic shifts . . . including leadership and organization changes" and "a series of adjustments to position us to compete and win."  On this news, Nike shares fell from $94.19 on June 27 to $75.37 on June 28, 2024, representing a decline of more than 19.9 percent.

As a result of Defendants' false and misleading statements and omissions and the dramatic decline in the price of Nike stock as the truth was revealed, Defendants caused SWIB and other Class members to suffer significant losses and damages.

The first of two related actions against Defendants alleging these particular facts was filed in this Court on June 20, 2024.  *See* Case No. 3:24-cv-00974-AN, ECF No. 1.  That same day, counsel for the plaintiffs in the first-filed action published in *Business Wire* a press release announcing the pendency of the case, the claims asserted therein, the purported class period, and the lead plaintiff deadline.  *See* Eisenkraft Decl. Ex. C ("PSLRA Notice").  The two related actions

were later consolidated on August 8, 2024.  *See* Case No. 3:24-cv-00974-AN, ECF No. 11; Case No. 3:24-cv-01150-AN, ECF No. 10.

## III.    ARGUMENT

### A.    SWIB SHOULD BE APPOINTED LEAD PLAINTIFF

SWIB respectfully submits that it should be appointed Lead Plaintiff because it timely filed the instant motion, believes it has the largest financial interest in the litigation of any qualified movant, satisfies Rule 23's typicality and adequacy requirements, and is a sophisticated institutional investor with the experience, skills, and resources to oversee counsel and vigorously and efficiently prosecute this litigation.

#### 1.    The PSLRA's Standard for Appointing Lead Plaintiff

The PSLRA sets forth the procedure for selecting a lead plaintiff in "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(1); *see also id.* § 78u-4(a)(3)(B).  The Ninth Circuit has set forth a three-part test for determining whether a movant meets the PSLRA's criteria for lead plaintiff.  *In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002).

First, a court must determine whether the plaintiff or plaintiffs in the first-filed action issued a notice publicizing the pendency of the lawsuit.  15 U.S.C. § 78u-4(a)(3)(A).  Second, a court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members."  *Id.* § 78u-4(a)(3)(B)(i).  The most adequate plaintiff is presumed to be the "person or group" that has the largest financial interest in the litigation and satisfies Rule 23's adequacy and typicality requirements.  *Id.* § 78u-4(a)(3)(B)(iii)(I).

Third, a court must determine whether the presumption in favor of the most adequate plaintiff was rebutted, which can occur only through the presentation of "proof" that the

presumptively most adequate plaintiff or plaintiffs "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

### 2. SWIB Is the "Most Adequate Plaintiff"

#### a. The PSLRA's Notice Requirement Was Met and SWIB's Motion Is Timely

Under the PSLRA, any Class member may move for appointment as Lead Plaintiff within sixty days of the publication of notice that the first action asserting substantially the same claims has been filed. *See* 15 U.S.C. § 78u-4(a)(3)(A). On June 20, 2024, plaintiff City Pension Fund for Firefighters and Police Officers in the City of Pembroke Pines ("Pembroke Pines") filed the first of the related actions against Defendants. *See* Case No. 3:24-cv-00974-AN, ECF No. 1. That same day, counsel for Pembroke Pines published in *Business Wire* a press release announcing the pendency of the action, the claims asserted therein, the purported class period, and the lead plaintiff deadline. *See* PSLRA Notice. Thus, the PSLRA's notice requirement was satisfied. *See, e.g., In re NVIDIA Corp. Sec. Litig.*, No. 18-cv-07669-HSG, 2019 WL 1960341, at *2 (N.D. Cal. May 2, 2019) (publication of notice in *PR Newswire* on same day complaint was filed satisfies PSLRA's 20-day filing deadline).

Accordingly, the deadline for moving for appointment as Lead Plaintiff here is August 19, 2024. SWIB's motion for appointment as Lead Plaintiff, dated August 19, 2024, is thus timely.

#### b. SWIB Has the Largest Financial Interest

The PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the movant with the largest financial interest in the relief sought by the class, so long as that movant also satisfies Rule 23's adequacy and typicality requirements. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I);

MOT. FOR APPOINTMENT AS LEAD PL. AND APPROVAL OF SELECTION OF COUNSEL - 9

*see also In re Cavanaugh*, 306 F.3d at 729-30.  The Court "must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit."  *Id.* at 730.

As evidenced by the accompanying signed certification and loss chart, SWIB incurred substantial losses of nearly $38 million on a LIFO basis or $89 million on a FIFO basis on their purchases of over 4 million shares of Nike common stock during the Class Period.  *See* Eisenkraft Decl. Exs. A, B. *See also Hodges v. Akeena Solar, Inc.*, 263 F.R.D. 528, 532 (N.D. Cal. 2009) ("A court may also look to the 'first-in, first-out' ('FIFO') method, which measures loss by treating the first share purchased as the first share sold."); *Barry v. Colony NorthStar, Inc.*, No. CV 18-2888-GW(MRWX), 2018 WL 11459916, at *3 (C.D. Cal. July 16, 2018) (considering LIFO and FIFO losses); *Hoang v. ContextLogic, Inc.*, No. 21-cv-03930-BLF, 2022 WL 1539533, at *6 (N.D. Cal. May 16, 2022) ("Methods for calculating actual economic losses suffered include the first-in-first-out ('FIFO') method and the last-in-first-out ('LIFO') method.").  SWIB is unaware of any other movant with a larger financial interest in the outcome of this litigation.

### c.    SWIB Satisfies Rule 23's Requirements

The movant with the largest financial interest—SWIB—is considered the most adequate plaintiff so long as it also "satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *see also GGCC, LLC v. Dynamic Ledger Sols., Inc.*, No. 17-cv-06779-RS, 2018 WL 1388488, at *3 (N.D. Cal. Mar. 16, 2018) ("As long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he or she is entitled to lead plaintiff status.").  On a motion for appointment as Lead Plaintiff, a movant needs only make a preliminary showing that the adequacy and typicality requirements have been met.  *See Deinnocentis v. Dropbox, Inc.*, No. 19-cv-06348-BLF, 2020 WL 264408, at *4 (N.D. Cal. Jan. 16, 2020).  Here, SWIB satisfies both requirements.

Rule 23's typicality requirement is satisfied when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3); *see Cannataro v. Portland Gen. Elec. Co.,* No. 20-cv-1583-SI, 2020 WL 12800744, at \*5 (D. Or. Nov. 10, 2010). "[W]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is met." *Id.* (citing 7 Herbert Newberg & Alba Conte, Newberg on Class Actions § 22:24, at 107-108 (4th ed. 2002)). Like all Class members, SWIB purchased Nike common stock during the Class Period at prices artificially inflated by Defendants' materially false and misleading statements and omissions, and suffered damages when the truth was revealed. As such, SWIB satisfies Rule 23's typicality requirement.

Rule 23's "adequacy" requirement is satisfied when the proposed class representative "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This is established "by not having any apparent conflicts of interest with the class members and by timely moving to be appointed as lead plaintiff, timely filing the requisite certifications, and selecting qualified proposed lead and liaison counsel who appear to have the requisite skills, experience, and competence to prosecute the claims vigorously and efficiently in the best interests of the class." *Cannataro*, 2020 WL 12800744, at \*5. SWIB has no conflict with other Class members; its interests are aligned with the other members of the Class. In addition, because of SWIB's substantial financial interest in this litigation, Class members can be assured it has the incentive to vigorously represent the Class's interests. Further, as discussed herein, SWIB has demonstrated its adequacy through this timely filing and its selection of highly qualified and experienced counsel in Cohen Milstein to serve as Lead Counsel and in Keller Rohrback to serve as Liaison Counsel.

MOT. FOR APPOINTMENT AS LEAD PL. AND APPROVAL OF SELECTION OF COUNSEL - 11

SWIB is a sophisticated institutional investor with its own in-house counsel. It has assets under management exceeding $150 billion. SWIB satisfies Rule 23's adequacy requirement.

### d. SWIB Is Precisely the Type of Lead Plaintiff Envisioned by the PSLRA

In addition to possessing the largest financial interest and satisfying the requirements of Rule 23, SWIB is precisely the type of investor Congress sought through the enactment of the PSLRA to encourage to lead securities class actions. *See* H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995) ("The Conference Committee believes that increasing the role of institutional investors . . . will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions.").

Created in 1951, SWIB is the independent state agency responsible for managing the assets of the Wisconsin Retirement System ("WRS"), the State Investment Fund, and other state trust funds. As of December 31, 2023, SWIB managed more than $156 billion in assets. SWIB's strong management of the WRS trust funds on behalf of 678,000 current and former employees of state agencies, the university system, school districts and most local governments has helped the WRS remain one of the country's only fully funded pension plans. SWIB provides a strong and steady economic pillar for the state of Wisconsin by growing the trust funds under its management, managing risk, and optimizing costs over the long term. In 2023 alone, the economic value added in Wisconsin because of pension payments was $8.2 billion.

Courts in this Circuit recognize the value of sophisticated investors leading securities class actions and regularly appoint institutional investors to that role. *See In re Calpine Corp. Sec. Litig.*, No. 02-cv-1200-SBA, 2004 WL 3316309, at *3 (N.D. Cal. Feb. 5, 2004) ("The PSLRA generally favors institutional investors over individual investors because institutional investors are presumed

to be sophisticated, experienced in the securities business, and enjoy greater resources (such as an in-house legal team).").

**B.    THE COURT SHOULD APPROVE SWIB'S SELECTION OF COUNSEL**

The PSLRA states that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."  15 U.S.C. § 78u-4(a)(3)(B)(v).  The Court may disturb a proposed lead plaintiff's choice of counsel only if "necessary to protect the interests of the plaintiff class."  *Id.* § 78u-4(a)(3)(B)(iii)(II)(aa).  The Court should approve Cohen Milstein as SWIB's selection for Lead Counsel and Keller Rohrback as Liaison Counsel.

As detailed further in its firm résumé, Cohen Milstein is a nationally renowned class action firm with deep experience successfully serving as lead counsel in securities class actions, including in this Circuit.  *See* Cohen Milstein Firm Résumé.  Notable recoveries as lead or co-lead counsel include a $1 billion recovery last year in a securities class action against Wells Fargo & Co., the seventeenth largest securities class action recovery in U.S. history (*In re Wells Fargo & Co. Sec. Litig.*, No. 1:20-cv-04494-JLR-SN (S.D.N.Y.)); a $500 million settlement in a mortgage-backed securities class action against Countrywide Financial Corp. and others (*Maine State Ret. Sys. v. Countrywide Fin. Corp.*, Nos. 2:12-cv-05122-MRP-MAN, 2:12-cv-05125-MRP-MAN (C.D. Cal.)); $335 million in settlements in a class action against Residential Accredit Loans, Inc. and various investment banks (*New Jersey Carpenters Health Fund v. Residential Capital, LLC*, No. 08-cv-8781-HB (S.D.N.Y.)); and a $275 million settlement in a mortgage-backed securities class action against the Royal Bank of Scotland (*New Jersey Carpenters Health Fund v. The Royal Bank of Scotland Grp., plc*, No. 08-cv-05310-DAB-HBP (S.D.N.Y.)).

Courts in this Circuit regularly recognize Cohen Milstein as adequate and qualified class counsel in securities class actions, including *Sheet Metal Workers' National Pension Fund v. Bayer AG,* No. 20-cv-04737, Dkt. 44 at 3 (N.D. Cal. Oct. 21, 2020) (appointing Cohen Milstein lead

MOT. FOR APPOINTMENT AS LEAD PL. AND APPROVAL OF SELECTION OF COUNSEL - 13

counsel in light of "firm[']s significant experience litigating securities fraud actions"); *Mulligan v. Impax Labs., Inc.*, No. 13-cv-1037-EMC, 2013 WL 3354420, at *9 (N.D. Cal. July 2, 2013) (appointing Cohen Milstein to serve as co-lead counsel and noting the firm's "extensive experience in securities class action cases"); *Bruce v. Suntech Power Holdings Co.*, No. 12-cv-04061-RS, 2012 WL 5927985, at *3 (N.D. Cal. Nov. 13, 2012) (appointing Cohen Milstein to serve as co-lead counsel); *In re LDK Solar Sec. Litig.*, No. 3:07-cv-05182-WHA, Dkt. 575 at 1 (N.D. Cal. June 22, 2010) (appointing Cohen Milstein to serve as lead counsel).

As detailed further in its firm résumé, Keller Rohrback has extensive experience representing plaintiffs in complex litigation in this Circuit and nationwide. *See* Keller Rohrback Firm Résumé. Keller Rohrback is currently co-lead counsel in data breach cases in the Northern District of California and Western District of Missouri. Partners Keil Mueller and Jennifer Wagner, based out of Portland and admitted to practice both in this Court and in the Ninth Circuit Court of Appeals, were both members of the team that represented the State of Oregon in toxic tort litigation against Monsanto, which Monsanto recently agreed to settle for $698 million, the largest environmental settlement in Oregon's history.

Thus, the Court should approve SWIB's selection of Cohen Milstein as Lead Counsel for the Class and Keller Rohrback as Liaison Counsel for the Class.

## IV.    CONCLUSION

For the foregoing reasons, SWIB respectfully requests that the Court enter an Order: (i) appointing it as Lead Plaintiff; (ii) approving its selection of Cohen Milstein as Lead Counsel

for the Class and Keller Rohrback as Liaison Counsel; and (iii) granting such other and further

relief as the Court may deem just and proper.

Dated: August 19, 2024                              **KELLER ROHRBACK L.L.P.**


By:  */s/ Keil M. Mueller*
                            Keil M. Mueller, OSB No. 085535
                            Jennifer S. Wagner, OSB No. 024470
                            601 SW Second Avenue Suite #1900
                            Portland, OR 97204
                            Tel.: (971) 253-4600
                            kmueller@kellerrohrback.com
                            jwagner@kellerrohrback.com

                            ***Proposed Liaison Counsel for SWIB and the Class***

                            Michael B. Eisenkraft (*pro hac vice* forthcoming)
                            Benjamin F. Jackson (*pro hac vice* forthcoming)
                            **COHEN MILSTEIN SELLERS & TOLL PLLC**
                            88 Pine Street, 14th Floor
                            New York, NY 10005
                            Tel.: (212) 838-7797
                            Fax: (212) 838-7745
                            meisenkraft@cohenmilstein.com
                            bjackson@cohenmilstein.com

                            Steven J. Toll (*pro hac vice* forthcoming)
                            Brendan R. Schneiderman (*pro hac vice*
                            forthcoming)
                            **COHEN MILSTEIN SELLERS & TOLL PLLC**
                            1100 New York Ave. N.W., Suite 500
                            Washington, DC 20005
                            Tel.: (202) 408-4600
                            Fax: (202) 408-4699
                            stoll@cohenmilstein.com
                            bschneiderman@cohenmilstein.com

                            ***Attorneys for SWIB and Proposed Lead Counsel for
                            the Class***

MOT. FOR APPOINTMENT AS LEAD PL. AND APPROVAL OF SELECTION OF COUNSEL - 15

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 19, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

*/s/ Keil M. Mueller*
Keil M. Mueller