STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
Timothy S. DeJong, OSB No. 940662
tdejong@stollberne.com
Keith A. Ketterling, OSB No. 913368
kketterling@stollberne.com
Cody Berne, OSB No. 142797
cberne@stollberne.com
209 Southwest Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600
Facsimile: (503) 227-6840

*Liaison Counsel for Proposed Lead Plaintiff*

*Additional Counsel on Signature Page*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| IN RE NIKE, INC. SECURITIES LITIGATION | Case No. 3:24-cv-00974-AN |
| | CLASS ACTION ALLEGATION |
| | REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL |
| | Judge: Hon. Adrienne Nelson |
| | Request for Oral Argument |

## TABLE OF CONTENTS

Table of Authorities ....................................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................... 1

ARGUMENT .................................................................................................................. 4

    A.    CDPQ And DEKA Are The Presumptive Lead Plaintiff........................................ 4

    B.    The Israeli Funds Fail To Provide "Proof" To Rebut This Presumption................ 5

        1.    Immaterial Arguments As To CDPQ's And DEKA's Filings Do Not Rebut The Presumption............................................................................... 5

        2.    DEKA's Standing Is A Settled Matter Of Law ...................................... 10

    C.    Limited Discovery Is Not Warranted................................................................... 15

CONCLUSION............................................................................................................. 15

i

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL Case No. 3:24-cv-00974-AN

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Apple Inc. Sec. Litig.*,
   2022 WL 354785 (N.D. Cal. Feb. 4, 2022) ................................................................7

*Blake v. Canoo Inc.*,
   2022 WL 599504 (C.D. Cal. Feb. 18, 2022)...............................................................6

*In re Boeing Co. Aircraft Sec. Litig.*,
   2020 WL 476658 (N.D. Ill. Jan. 28, 2020)...............................................................10

*Boynton Beach Firefighters' Pension Fund v. HCP, Inc.*,
   2017 WL 5759361 (N.D. Ohio Nov. 28, 2017)....................................................12, 13

*Bricklayers' & Allied Craftworkers Loc. #2 Albany, NY Pension Fund v. New
   Oriental Educ. & Tech. Grp. Inc.*,
   2022 WL 1515451 (S.D.N.Y. May 13, 2022) .....................................................12, 13

*Byrd v. ViSalus, Inc.*,
   2018 WL 1637948 (E.D. Mich. Apr. 5, 2018)............................................................6

*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002) ..............................................................................1, 5

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001)................................................................................15

*Chao Lu v. Jumei Intern. Holding Ltd.*,
   2015 WL 4104570 (S.D.N.Y. June 22, 2015) ..........................................................15

*City of Taylor Police & Fire Ret. Sys. v. The W. Union Co.*,
   2014 WL 4799659 (D. Colo. Sept. 26, 2014)......................................................11, 12

*Cohen v. Luckin Coffee Inc.*,
   2020 WL 3127808 (S.D.N.Y. June 12, 2020) ..........................................................13

*Gross v. AT&T Inc.*,
   2019 WL 3500496 (S.D.N.Y. July 31, 2019)...........................................................13

*Huang v. Depomed, Inc.*,
   289 F. Supp. 3d 1050 (N.D. Cal. 2017) ...................................................................5

*In re Initial Pub. Offering Sec. Litig.*,
   227 F.R.D. 65 (S.D.N.Y. 2004) .............................................................................9

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR APPOINTMENT AS LEAD
PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL Case No. 3:24-cv-00974-AN

*In re KIT Digital, Inc. Sec. Litig.*,
 293 F.R.D. 441 (S.D.N.Y. 2013) ...............................................................................15

*Kusen v. Herbert*,
 2023 WL 8171736 (N.D. Cal. Nov. 24, 2023) .............................................................7

*In re Lyft Sec. Litig.*,
 2020 WL 1043628 (N.D. Cal. Mar. 4, 2020)...............................................................8

*Maeshiro v. Yatsen Holding Ltd.*,
 2023 WL 4684106 (S.D.N.Y. July 21, 2023) ..............................................................8

*Malriat v. QuantumScape Corp.*,
 2021 WL 1550454 (N.D. Cal. Apr. 20, 2021) .............................................................6

*In re Mersho*,
 6 F.4th 891 (9th Cir. 2021) ............................................................................... *passim*

*OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*,
 63 F. Supp. 3d 394 (D. Del. 2014).........................................................................4, 13

*Ohio Pub. Emps. Ret. Sys. v. Meta Platforms, Inc.*,
 2022 WL 3571995 (N.D. Cal. July 26, 2022)................................................1, 2, 7, 9

*Patel v. Coinbase Global, Inc.*,
 2022 WL 17582549 (D.N.J. 2022) ...........................................................................13

*Plaut v. Goldman Sachs Grp., Inc.*,
 2019 WL 4512774 (S.D.N.Y. Sept. 19, 2019)......................................................10, 14

*Rodriguez v. DraftKings Inc.*,
 2021 WL 5282006 (S.D.N.Y. Nov. 12, 2021)..............................................................9

*S. Ferry LP #2 v. Killinger*,
 271 F.R.D. 653 (W.D. Wash. 2011) ...........................................................................9

*In re SLM Corp. Sec. Litig.*,
 2012 WL 209095 (S.D.N.Y. Jan. 24, 2012) ...............................................................8

*In re Solar City Corp. Sec. Litig.*,
 2017 WL 363274 (N.D. Cal. Jan. 25, 2017).............................................................3, 8

*Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*,
 554 U.S. 269 (2008).................................................................................................11

*United Union of Roofers, Waterproofers & Allied Workers Local Union No. 8 v.
 Ocwen Fin. Corp.*,
 2014 WL 7236985 (S.D. Fla. Nov. 7, 2014).........................................................11, 13

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR APPOINTMENT AS LEAD
PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL Case No. 3:24-cv-00974-AN

*In re Vivendi Universal, S.A. Sec. Litig.*,
    605 F. Supp. 2d 570 (S.D.N.Y. 2009).................................................................. *passim*

*In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*,
    2007 WL 2683636 (D.N.J. Sept. 7, 2007) ...............................................................9

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
    549 F.3d 100 (2d Cir. 2008)..............................................................3, 11, 12, 13

*Weston v. DocuSign, Inc.*,
    2022 WL 1301770 (N.D. Cal. Apr. 18, 2022) ....................................................7, 13

*Weston v. DocuSign, Inc.*,
    2024 WL 2925979 (N.D. Cal. June 10, 2024) .........................................................14

*Zhu v. UCBH Holdings, Inc.*,
    682 F. Supp. 2d 1049 (N.D. Cal. 2010) ..................................................................15

**Rules & Statutes**

Fed. R.Civ. P. 23 ................................................................................................ *passim*

15 U.S.C. § 78u–4 *et seq*................................................................................... *passim*

**Docketed Cases**

*Coan v. B. Riley Fin., Inc.*,
    No. 24-cv-00662 (C.D. Cal.) ...................................................................................6

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR APPOINTMENT AS LEAD
PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL Case No. 3:24-cv-00974-AN

## PRELIMINARY STATEMENT

CDPQ and DEKA have the "largest financial interest" and have made a *prima facie* showing of their adequacy and typicality, and are thus entitled to the PSLRA's presumption. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002).[1] In addition to CDPQ and DEKA, three other movants initially filed motions seeking Lead Plaintiff appointment in this case. Two of those movants have since filed notices acknowledging CDPQ's and DEKA's superior financial interest. *See* ECF Nos. 30 & 33. Only the Israeli Funds oppose CDPQ's and DEKA's appointment. ECF No. 32.

Under the PSLRA, CDPQ and DEKA must be appointed. The PSLRA provides a straightforward and sequential three-step process establishing a presumption that the most adequate plaintiff is the "person or group of persons" with "largest financial interest" that has made a preliminary showing of the typicality and adequacy requirements of Rule 23. *See In re Mersho*, 6 F.4th 891, 899 (9th Cir. 2021) (determination of which movant receives the presumption is sequential and "should be based on only the movant's pleadings and declarations"). Only after the presumption attaches does the process "turn[] adversarial" and, even then, the presumption may only be rebutted "***upon proof***" of inadequacy or atypicality. *Id.*

CDPQ and DEKA are the presumptive "most adequate plaintiff" under the PSLRA based on their superior financial interest—having suffered losses ***over three times larger*** than the losses claimed by the Israeli Funds. *See* ECF Nos. 18 & 20. CDPQ alone has far larger losses than the Israeli Funds, *id.*, which courts in this Circuit and elsewhere have found dispositive in appointing lead plaintiff groups. *See Ohio Pub. Emps. Ret. Sys. v. Meta Platforms, Inc.*, 2022 WL 3571995,

---

[1] Unless otherwise noted, all defined terms and abbreviations remain unchanged from CDPQ's and DEKA's initial motion and opposition. *See* ECF Nos. 19-20 & 31. All citations are omitted and emphasis added, unless noted.

at *4 (N.D. Cal. July 26, 2022) (appointing group of institutional investors lead plaintiff where one group member "has the largest financial interest standing alone, and it would have achieved lead plaintiff status alone had it sought such appointment").  CDPQ and DEKA have provided detailed evidence regarding their origins, cohesiveness, motivations, and ability to oversee counsel and the litigation, which satisfies the typicality and adequacy requirements of Rule 23.  CDPQ and DEKA are therefore the presumptive Lead Plaintiff.

Once the presumption attaches, the "burden" shifts to any movant opposing the presumptive lead plaintiff's appointment to "show inadequacy," *Mersho*, 6 F.4th at 901, which requires "***proof***."  *Id.* at 899.  Offering no such proof, the Israeli Funds instead resort to trivial and unsubstantiated arguments related to (1) the classification of certain transactions listed in CDPQ's and DEKA's initial motion papers, and (2) DEKA's standing.  These challenges contort the factual record, ignore settled law, and in any event, are not the type of proof required to rebut the presumption in favor of CDPQ and DEKA.

***First***, the Israeli Funds claim "DEKA submitted papers containing demonstrable errors" while CDPQ's motion papers "inconsistently record a transaction involving 100,000 shares."  ECF No. 32 at 3.  Notwithstanding the trivial nature of the complained transactions compared to CDPQ's and DEKA's total Class Period purchases (the transactions in question involve 111,778 shares, or only ***1.6%*** of the ***6,812,360*** total Class Period purchases of NIKE stock), these complaints are off base.  The actual evidence in the record establishes that DEKA accurately identified the date for each transfer in the filing documents and properly treated such transfers as purchases in the loss analysis at the market price on the date of the transfer (*see* ECF No. 20-1 at 12, 18, & 19; ECF No. 20-2 at 8, 10, & 11).  The Israeli Funds' attempt to contort sworn evidence

2

with unsupported concerns is exactly what the Ninth Circuit rejected in *Mersho*. *See* 6 F.4th at 901 ("[m]isgivings are not evidence" sufficient to rebut presumptive status).

As to CDPQ, the inconsistency in the reported transaction between the certification and loss analysis was the product of a transposition error when the trading data was migrated from CDPQ's custodial records to the filing documents. As it turns out, those 100,000 shares were, in fact, not sold on November 17, 2022 and remain on CDPQ's balance sheet. *See* Supplemental Declaration in Further Support of Motion for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel ("Supplemental Declaration"), attached as Ex. A to the Reply Declaration of Timothy S. DeJong ("DeJong Decl."), ¶ 14. Once rectified, CDPQ's total financial interest in the Action ***actually increases*** given the continued retention of the aforementioned 100,000 NIKE shares. *See* Revised Loss Chart, Ex. B to the DeJong Decl. (calculating CDPQ's total loss at ***$81,047,953***)[2]; Revised CDPQ Certification, Ex. C to the DeJong Decl. (eliminating November 17, 2022 sale of 100,000 NIKE shares). Courts find similar errors in certifications and claimed losses relevant only if there is "evidence of bad faith or intent to deceive the court or the parties." *See In re Solar City Corp. Sec. Litig.*, 2017 WL 363274, at \*6 (N.D. Cal. Jan. 25, 2017). The opposite is true here since the discrepancy was caused by a minor error which ***reduced*** CDPQ's loss. This challenge similarly lacks merit.

***Second***, the Israeli Funds incorrectly contend that DEKA failed to establish standing. *See* ECF No. 32 at 5. This argument is legally wrong and ignores the record before the Court. DEKA clearly has standing under the third-party "prudential exception" as outlined in *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 108-09 (2d Cir. 2008), to assert all

---

[2] For comparison, CDPQ's total loss as reported in the initial loss chart, which treated the 100,000 share transfer as a sale, was ***$77,972,203***. *See* ECF No. 20-2 at 8.

3

claims in this litigation.  *See* Joint Declaration, ECF No. 20-4 ¶ 2; *see also* Supplemental Declaration ¶¶ 9-13.  DEKA's standing was solidified in *In re Vivendi Universal, S.A. Securities Litigation*, 605 F. Supp. 2d 570, 579-80 (S.D.N.Y. 2009), wherein the court rejected virtually identical challenges to DEKA's standing raised by defendants at the far more stringent summary judgement stage.  *See id*. at 577-78 (specifically concluding that DEKA has standing to bring securities claims in its own name under the "prudential exception").  DEKA's standing is a settled matter of law and the Israeli Funds' musings are insufficient to rebut DEKA's presumptive status. *See OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*, 63 F. Supp. 3d 394, 403 (D. Del. 2014) (concluding that standing challenges require "more than speculation to rebut the presumption").

Accordingly, these challenges ring hollow and hardly rise to the level of "proof" that the presumptive Lead Plaintiff "will not fairly and adequately represent the interests of the class."  *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II).  No such proof exists here to rebut the presumption in favor of appointing CDPQ and DEKA as Lead Plaintiff.  For these reasons, the Israeli Funds' motion, along with its extraordinary request for limited discovery, should be rejected.

## ARGUMENT

### A.    CDPQ And DEKA Are The Presumptive Lead Plaintiff

CDPQ and DEKA have the "largest financial interest" and have made a *prima facie* showing of their adequacy and typicality, and are thus entitled to the PSLRA's presumption. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *Mersho*, 6 F.4th at 899 ("[T]he district court must 'adopt a presumption that the most adequate plaintiff' is the movant with the largest financial interest who 'otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.'").

CDPQ's and DEKA's loss is over ***$70 million larger*** than the Israeli Funds' loss, and CDPQ alone possesses an individual loss ***over three times larger*** than the Israeli Funds.  *Compare*

4

ECF No. 18 *with* Revised Loss Chart, Ex. B; *see also Huang v. Depomed, Inc.*, 289 F. Supp. 3d 1050, 1053 (N.D. Cal. 2017) (appointing group of investors because one member alone "has the largest [financial] interest of any movant").  Accordingly, CDPQ and DEKA are the presumptive Lead Plaintiff under step two of the PSLRA's three-step process.

### B.    The Israeli Funds Fail To Provide "Proof" To Rebut This Presumption

Once the presumption attaches, "[t]he next step in the process is for the district court to give the other plaintiffs an opportunity to present evidence rebutting the presumption. . . ." *Cavanaugh*, 306 F.3d at 739.  To overcome the strong presumption in favor of appointing CDPQ and DEKA as Lead Plaintiff, the Israeli Funds must offer "***proof***," not mere speculation, that CDPQ and DEKA are atypical, inadequate, or subject to unique defenses.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also Mersho*, 6 F.4th at 899 ("The statute requires proof that the presumptive lead plaintiff is not adequate.").  The Israeli Funds' speculative challenges fall well short of the proof necessary to rebut the presumption, and in any event are refuted by evidence already in the record.

### 1.    Immaterial Arguments As To CDPQ's And DEKA's Filings Do Not Rebut The Presumption

The Israeli Funds incorrectly assert that CDPQ and DEKA "submitted papers containing errors that call their readiness to serve as Class representatives into question."  ECF No. 32 at 11. Not so.  DEKA correctly identified the transactions in their filings and accurately calculated its loss total and the transposition error by CDPQ actually decreased CDPQ's losses, eliminating any evidence of bad faith or intent to deceive.  Regardless, the total impacted shares from the complained transactions amount to no more than 111,778 of CDPQ's and DEKA's Class Period transactions in Nike common stock, or ***1.6%*** of their total purchases.  Courts routinely find such "minor or inadvertent" errors in lead plaintiff filings "do not strike at the heart of Rule 23's

5

adequacy requirement." *See Blake v. Canoo Inc.*, 2022 WL 599504, at *6-7 (C.D. Cal. Feb. 18, 2022); *Malriat v. QuantumScape Corp.*, 2021 WL 1550454, at *5 (N.D. Cal. Apr. 20, 2021) ("[C]ourts generally do not find that immaterial or clerical mistakes render a movant inadequate without more.").

As stated, DEKA accurately identified each of the four transactions the Israeli Funds complain about as a "transfer in" throughout its filing documents and accounted for those acquisitions at the market price on the date of each transfer. *See* ECF No. 20-1 at 12, 18, & 19. The Israeli Funds seem to contend that these transfers cannot also be treated as traditional purchases under the securities laws at the market price on the date of the transfer. *See* ECF No. 32 at 12-13. The Israeli Funds are wrong. Under the federal securities laws, where, as here, an investing party (1) acquires an asset via transfer, and (2) assumes control of that asset from the transferor, such transfer can and should be treated as a purchase by the transferee and recorded at fair market value. *See* ASC 860-10-40-5 (describing when the transfer of a financial asset should be accounted for as a purchase and sale); 860-20-25-3; ASC 860-20-30-2 (instructing that transferee shall measure assets received at fair value).[3] Indeed, the federal securities laws contemplate such an acquisition in the definition of "purchase" under the Securities Exchange Act of 1934 (the "Exchange Act") (15 U.S.C. § 78c(a)(13)) and PSLRA jurisprudence correspondingly treats such transfers as purchases. *See Coan v. B. Riley Fin., Inc.*, No. 24-cv-00662 (C.D. Cal.), ECF No. 44 at 12 (finding that a transfer of securities established standing for a lead plaintiff movant and noting that the "decision to accept and retain the [relevant securities] is sufficient to allege that [the movant] suffered losses traceable to Defendants' conduct"); *Byrd v. ViSalus, Inc.*,

---

[3] The Financial Accounting Standards Board establishes financial accounting and reporting standards codified in the Accounting Standards Codification ("ASC").

6

2018 WL 1637948, at *6-7 (E.D. Mich. Apr. 5, 2018) (finding that equity in exchange for labor was a securities purchase under the Exchange Act.).

In this case, during the Class Period, the decision to transfer a fund from one investment managing company to another or to merge funds within the investment managing company led to the transfer of NIKE shares to the DEKA Funds. *See* Supplemental Declaration ¶ 7. These mergers resulted in the acquisition and control of NIKE shares by the DEKA Funds on the dates listed in DEKA's certification and loss analysis. *Id.* ¶ 8. While the trading data lists each transaction as a "transfer in," for all intents and purposes, these transfers operated as a purchase and were therefore treated as a purchase in DEKA's loss analysis. In short, the DEKA Funds provided accurate and complete data for the Court and competing movants to properly assess its loss exposure. Nothing more is required. *See Kusen v. Herbert*, 2023 WL 8171736, at *9 (N.D. Cal. Nov. 24, 2023) (crediting movant certifications and declarations over opposing party's speculative challenges); *Meta Platforms, Inc.*, 2022 WL 3571995, at *3 (same). And while the Israeli Funds may disagree with the classification of a transfer as a purchase (for which they would be wrong), unintentionally mislabeling transactions is simply not the type of serious error that could render a potential lead plaintiff inadequate. *See In re Apple Inc. Sec. Litig.*, 2022 WL 354785, at *4 (N.D. Cal. Feb. 4, 2022) (finding class representative adequate at more stringent class certification stage despite listing certain transfers of securities between accounts as purchases).[4]

---

[4] This is especially true where, as here, the 11,778 DEKA transfer shares amount to ***less than one percent*** of the total Class Period purchases between CDPQ and DEKA. *See* Revised Loss Chart, Ex. B (listing CDPQ's and DEKA's total Class Period acquisitions of NIKE stock at ***6,812,360***, of which the 11,778 DEKA transfers account for just ***0.17%***). *See Weston v. DocuSign, Inc.*, 2022 WL 1301770, at *5 (N.D. Cal. Apr. 18, 2022) (rejecting atypical trading argument where the subject shares "constitute[d] a relatively small percentage of [movant]'s alleged losses).

As for CDPQ, the certification inadvertently labels the November 17, 2022 transaction as a sale. *See* ECF No. 20-1 at 6. While the loss chart listed the "Transaction Type" as a "Transfer Out" (ECF No. 20-2 at 4), further investigation indicates this inconsistency was the product of transposition error when migrating CDPQ's custodial records to the filing documents. Once rectified, CDPQ's total class period loss ***actually increases*** from ***$77,972,203*** to ***$81,047,953***, since the shares were never sold and remain on CDPQ's balance sheet. *See* Supplemental Declaration ¶ 14.[5] The Israeli Funds argue this minor oversight militates against CDPQ's appointment. *See* ECF No. 32 at 14-15. Incorrect. Courts generally hold that errors in claimed losses may render a movant inadequate ***only if*** there is "evidence of bad faith or intent to deceive." *In re SLM Corp. Sec. Litig.*, 2012 WL 209095, at *8 (S.D.N.Y. Jan. 24, 2012). The opposite is true here. The error in this case actually reduced CDPQ's claimed loss, nullifying any evidence of "bad faith" or "intent to deceive". This type of nit-picking plainly falls short of the evidence required to rebut CDPQ's presumptive status. *See In re Lyft Sec. Litig.*, 2020 WL 1043628, at *6 (N.D. Cal. Mar. 4, 2020) ("The Court further disregards as trivial movants' arguments that typographical errors in their competit[ors'] motions or certificates are meaningfully indicative of inadequacy."); *Solar City*, 2017 WL 363274, at *6 (finding "minor or inadvertent mistakes" did not prevent movant from being appointed); *Maeshiro v. Yatsen Holding Ltd.*, 2023 WL 4684106, at *9 (S.D.N.Y. July 21, 2023) ("Courts 'routinely reject criticisms based on errors in

---

[5] It is important to note the distinction between the treatment of DEKA's "transfer in" and CDPQ's November 17, 2022 transaction. In DEKA's case, the DEKA Funds assumed full control of the NIKE shares on the date of the transfer. *See* Supplemental Declaration ¶ 8. As such, these transfers must be treated as a purchase and/or sale under relevant accounting principles since the transferor "surrenders control over those financial assets." *See* ASC 860-10-40-5. Conversely, CDPQ retains full control of the NIKE shares notwithstanding the free of payment movement of shares by the custodian. *See* Supplemental Declaration ¶ 14. Accordingly, those shares remain on CDPQ's balance sheet and must be incorporated in their loss analysis in this Action.

certifications, particularly where there is no evidence of bad faith or intent to deceive the court or the parties.'").[6]

Critically, outside of this minor inconsistency between the certification and loss chart, the Israeli Funds **have not even attempted** to rebut CDPQ's presumptive status under any other aspect of the adequacy and typicality requirements of Rule 23. For this reason alone, the Israeli Funds' objection to CDPQ's and DEKA's motion must be denied. *Meta Platforms, Inc.*, 2022 WL 3571995, at *4 (appointing group where one member, standing alone, had the largest financial interest while also satisfying the requirements of Rule 23).

To support their misguided argument, the Israeli Funds rely on a series of inapt cases, each of which include evasive conduct and a series of unexplained omissions and errors which led courts to find a proposed lead plaintiff inadequate. *See* ECF No. 32 at 11. For example, in *Rodriguez v. DraftKings Inc.*, 2021 WL 5282006 (S.D.N.Y. Nov. 12, 2021), the court rejected a movant which overstated its losses by "omitting (1) profits from options transactions, (2) millions of dollars' worth of [relevant security] trades, and (3) short selling activity." *Id.* at *5. In *In re Vonage Initial Pub. Offering (IPO) Securities Litigation*, 2007 WL 2683636 (D.N.J. Sept. 7, 2007), the court found that a lead plaintiff movant signed a certification based on direct solicitation from a law firm without ever speaking to lawyers, while also filing a facially incorrect certification with several serious errors including falsely stating the movant had reviewed the relevant complaint. *Id.* at *8

---

[6] *See also In re Initial Pub. Offering Sec. Litig.*, 227 F.R.D. 65, 98 (S.D.N.Y. 2004)*, vacated and remanded,* 471 F.3d 24 (2d Cir. 2006) (in a complex securities action, "minor testimonial inconsistencies and omissions are likely to occur" and the "temporary omission of certain transactions from class representatives' disclosures does not call into question the overall validity" of their claims); *S. Ferry LP #2 v. Killinger*, 271 F.R.D. 653, 660 (W.D. Wash. 2011) (rejecting claim of inadequacy based on errors in PSLRA certification and certifying class where plaintiff "corrected the errors as soon as they were brought to his attention" and errors were "harmless").

n.8. Similarly, the rejected movant in *In re Boeing Co. Aircraft Securities Litigation*, 2020 WL 476658 (N.D. Ill. Jan. 28, 2020) filed initial motion papers with several significant errors, including failing to disclose the relevant securities were bought on margin and failing to disclose $7.5 million in relevant sales. *Id.* at *3. Finally, in *Plaut v. Goldman Sachs Group, Inc.*, 2019 WL 4512774 (S.D.N.Y. Sept. 19, 2019), Meitav, one of the Israeli Funds in this Action, repeatedly omitted relevant transaction data from its motion papers. *Id.* at *5. Meitav's motion in that case was rejected based, in part, on this obvious "gamesmanship." *Id.*

None of the misleading characteristics in those cases are present here, and the Israeli Funds never assert that CDPQ or DEKA engaged in such bad faith to inflate their loss exposure. Nor could they. Any inconsistencies and/or typographical errors in the filed documents are inconsequential and did not, and will not, have any impact on CDPQ's and DEKA's ability to serve as Lead Plaintiff. These trivial complaints fall well short of the proof required to rebut CDPQ's and DEKA's presumptive status. *See Mersho*, 6 F.4th at 899.

### 2. DEKA's Standing Is A Settled Matter Of Law

DEKA's standing is a settled matter of law, *see Vivendi*, 605 F. Supp. 2d at 577-78, and the Israeli Funds have not presented any evidence, let alone "proof," sufficient to rebut the presumptive status. *See Mersho*, 6 F.4th at 902 (confirming the PSLRA requires courts to "articulate how the ***evidence***" presented by competing movants "***proves***" the presumptive lead plaintiff's inadequacy).

As background, DEKA is an investment managing company known under German law as a Kapitalverwaltungsgesellschaft ("KVG"). Supplemental Declaration ¶ 10. DEKA creates and manages investments for numerous entities including the DEKA Funds. *Id.* ¶¶ 10-11. These funds are not legal entities and are separate estates from DEKA. *Id.* In this case, the DEKA Funds

suffered losses due to the fraud alleged in the Action. Under German law, such funds have no legal authority to pursue claims of their own and therefore rely exclusively on DEKA to assert claims on their behalf. *Id.* ¶¶ 12-13. DEKA must act on their behalf. *Id.*

While a party typically establishes standing by showing that it suffered an "injury-in-fact," a party may alternatively establish standing through the "well-recognized prudential exception." *Huff*, 549 F.3d at 109-10. To qualify for the "prudential exception," a plaintiff need only demonstrate "(1) a close relationship to the injured party and (2) a barrier to the injured party's ability to assert its own interests." *Id.* at 109. A party qualifies for the prudential exception where "the law grants [that party] the right—if not imposes on them the duty—to bring these claims." *Vivendi*, 605 F. Supp. 2d at 576. The prudential exception is routinely recognized in lead plaintiff appointment under the PSLRA. *Id.* at 578 (concluding DEKA had standing to bring suit on behalf of their managed funds under *Huff* exception); *see also City of Taylor Police & Fire Ret. Sys. v. The W. Union Co.*, 2014 WL 4799659, at *5 (D. Colo. Sept. 26, 2014) (Swedish asset manager has standing under prudential exception); *United Union of Roofers, Waterproofers & Allied Workers Local Union No. 8 v. Ocwen Fin. Corp.*, 2014 WL 7236985, at *3 (S.D. Fla. Nov. 7, 2014) (same); *cf. Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 287-88 (2008) (third party standing "routinely" used in federal courts). DEKA fits squarely within this exception.

As to the first prong, "the material issue" is whether the "special relationship . . . is such that the right to bring the claims inures to the plaintiff by operation of law." *Vivendi*, 605 F. Supp. 2d at 576. DEKA and the DEKA Funds undoubtedly have such a special relationship because the DEKA Funds are not legal entities and cannot themselves control investments and therefore depend on DEKA to act as their alter ego for all transactional purposes, including investing the assets in the funds and asserting legal claims arising from those investments. *See* Supplemental

11

Declaration ¶¶ 10-13.  This is exactly the type of "close" or "special" relationship that satisfies the first prong of the prudential exception.  *See Boynton Beach Firefighters' Pension Fund v. HCP, Inc.*, 2017 WL 5759361, at *4 (N.D. Ohio Nov. 28, 2017) (finding a "close relationship" between German asset manager and its funds where the funds were "not considered legal entities and so cannot bring suit on their own behalf" and "[m]anagement of the funds is left to the investment companies"); *W. Union Co.*, 2014 WL 4799659, at *3 (finding "close relationship" between Swedish asset manager and its funds where "for all transactional purposes" the asset manager was "the funds' alter ego").

There is also an unsurmountable barrier to the DEKA Funds' ability to assert these claims themselves.  As explained, the DEKA Funds "are not legal entities" and therefore "have no legal authority under German law to pursue such claims on their own."  Supplemental Declaration ¶¶ 11-12.  Instead, DEKA is vested with the exclusive legal authority to bring claims on the DEKA Funds' behalf.  *Id.* ¶ 13.  Given this dynamic, there can be no rational dispute that these funds are legally incapable of acting in any capacity and therefore reliant on DEKA to act on their behalf.  *See Huff*, 549 F.3d at 109-10.  DEKA therefore "comfortably fits within *Huff*'s 'prudential exception.'"  *W. Union Co.*, 2014 WL 4799659, at *5; *see also Bricklayers' & Allied Craftworkers Loc. #2 Albany, NY Pension Fund v. New Oriental Educ. & Tech. Grp. Inc.*, 2022 WL 1515451, at *4 (S.D.N.Y. May 13, 2022) (rejecting standing challenge to German fund manager where its fund "lacks authority to sue on its own").[7]

---

[7] The Israeli Funds' reliance on the four lead plaintiff movants providing "constitutional documents or management documents" to describe the purported "relationship" between funds (*see* ECF No. 32 at 22-23) is irrelevant.  In each of those instances, including the three more recent securities class actions *Archer-Daniels-Midland Company*, *Globe Life Inc.*, and *Discover Financial Services* involving the same exact moving party, KBC Asset Management NV ("KBC"),
*(footnote continued on next page…)*

12

*HCP* is instructive.  In that case, the court appointed as lead plaintiff a German asset management company, taking the same legal structure as DEKA, after finding the asset manager qualified for the prudential exception.  *See HCP*, 2017 WL 5759361, at \*4.  The court concluded that the asset manager qualified for the prudential exception because it had "a close relationship with its funds" and that there was a "barrier to the funds and investors bringing suit."  *Id.*  This conclusion accords with a litany of other cases applying the prudential exception to European fund managers asserting claims on behalf of their funds.  *See, e.g., Patel v. Coinbase Global, Inc.*, 2022 WL 17582549, at \*5 (D.N.J. 2022) (applying prudential exception over speculative attacks that "defendants will exploit [movant]'s standing defects"); *DocuSign*, 2022 WL 1301770, at \*5 (concluding related DEKA entities incorporated in Luxembourg had standing where its "funds have no legal authority"); *Cohen v. Luckin Coffee Inc.*, 2020 WL 3127808, at \*7 (S.D.N.Y. June 12, 2020) (finding Swedish asset manager qualified for prudential exception because it was the "only party able to pursue claims on behalf of its fund"); *OFI*, 63 F. Supp. 3d at 403 (affirming European fund manager's standing under prudential exception); *Ocwen*, 2014 WL 7236985, at \*3 (rejecting standing challenge as "not grounded in evidence").[8]

---

standing was established via assignment of claim from the investing fund to the moving party. However, unlike KBC in those matters, DEKA requires no assignment (and could not obtain one given the funds' legal incapacity) to bring claims on behalf of their managed funds.  KBC's inclusion of "constitutional" or "management" documents therefore has no bearing on DEKA's standing.  *See Vivendi*, 605 F. Supp. 2d at 577-79 (concluding several European fund managers, including DEKA, had prudential standing without assignment or "constitutional" documents); *see also New Oriental Educ. & Tech. Grp.*, 2022 WL 1515451, at \*4 ("even when faced with a standing challenge from another hopeful lead plaintiff, 'a prospective lead plaintiff need only make a preliminary, *prima facie* showing that his or her claims satisfy the requirements of Rule 23'").

[8] Because this body of caselaw overwhelmingly recognizes third party standing for European asset managers satisfying the two-pronged *Huff* prudential exception, the Israeli Funds' dismissal of DEKA's assertions under German law (*see* ECF No. 32 at 21 and 22) misses the point.  DEKA's standing under the prudential exception is a settled matter of **U.S. federal law**, and the Court need

*(footnote continued on next page…)*

13

Rather than engage with the caselaw directly addressing DEKA's standing (which clearly recognizes DEKA's prudential status), the Israeli Funds instead resort to speculation that "the Defendants are virtually guaranteed to demand such proof of Deka's standing . . ."  ECF No. 32 at 23.  Aside from being textbook speculation facially insufficient to rebut DEKA's presumptive status under Ninth Circuit PSLRA lead plaintiff precedent, *see Mersho*, 6 F.4th at 902, the Israeli Funds fail to apprise the Court that ***no opponent has ever*** successfully challenged DEKA's standing, let alone disqualified DEKA at class certification.  *See Goldman Sachs*, 2019 WL 4512774 at *6 n.12 (noting the competing movant "ha[d] not identified a single case in which a defendant has successfully challenged [Swedish asset manager]'s standing").  In fact, earlier this year, related DEKA entities incorporated in Luxembourg successfully certified a class of DocuSign investors utilizing an identical third party prudential standing analysis.  *See Weston v. DocuSign, Inc.*, 2024 WL 2925979, at *7 (N.D. Cal. June 10, 2024) (finding defendants' challenge to DEKA's standing "comes up short").  The Israeli Funds' failure to identify a single recent case rejecting the application of prudential standing to DEKA specifically, or similarly structured European asset managers more generally, exposes the specious nature of their challenge.

Simply put, the PSLRA and the Ninth Circuit require "proof" to rebut the most adequate plaintiff presumption.  The Israeli Funds' musings about DEKA's standing are exactly the type of speculation the Ninth Circuit rejects as insufficient to rebut the presumptive movant's status under the PSLRA.  *See Mersho*, 6 F.4th at 902 (rejecting analysis based "only on speculation").  Their motion should be denied.

---

not make a determination under German law to appoint DEKA.  *See, e.g., Gross v. AT&T Inc.*, 2019 WL 3500496, at *2 (S.D.N.Y. July 31, 2019) (explaining that foreign law "cannot alter the legal standard by which Article III standing is determined" and is "relevant only to establish the existence of the requisite property right").

### C.    Limited Discovery Is Not Warranted

The Israeli Funds' minor complaints pertaining to CDPQ's and DEKA's trading documents, and legally incorrect challenge to DEKA's standing, cannot provide a reasonable basis for granting discovery, or for that matter, "a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class."  15 U.S.C. §78u-4(a)(3)(B)(iv); *see also, e.g., Zhu v. UCBH Holdings, Inc.*, 682 F. Supp. 2d 1049, 1055 n.1 (N.D. Cal. 2010) (concluding discovery should not be granted under the PSLRA without sufficiently "egregious" allegations). As the Third Circuit has cautioned, "[c]ourts must . . . take care to prevent the use of discovery to harass presumptive lead plaintiffs, something that the [PSLRA] was meant to guard against."  *In re Cendant Corp. Litig.*, 264 F.3d 201, 270 n.49 (3d Cir. 2001); *see also In re KIT Digital, Inc. Sec. Litig.*, 293 F.R.D. 441, 448 (S.D.N.Y. 2013) (concluding that the PSLRA provides for discovery "'only if' such reasonable basis is demonstrated by the [sic] another plaintiff").

For the reasons discussed herein, the Israeli Funds have not come close to demonstrating any sort of "reasonable basis" sufficient to grant limited discovery, and any "discovery here 'will only cause unnecessary delay and expense, likely to provide results that are neither helpful nor likely to change the outcome.'"  *Chao Lu v. Jumei Intern. Holding Ltd.*, 2015 WL 4104570, at *3 (S.D.N.Y. June 22, 2015) (quoting *In re Tronox, Inc. Sec. Litig.,* 262 F.R.D. 338, 347 (S.D.N.Y. 2009)).  This extraordinary request should be denied.

## <u>CONCLUSION</u>

For the reasons discussed above and in prior briefs, CDPQ and DEKA respectfully request that the Court grant their Motion and deny the competing motion.

DATED: September 17, 2024                    Respectfully submitted,

/s/ *Timothy S. DeJong*

15

Timothy S. DeJong, OSB No. 940662

STOLL STOLL BERNE LOKTING &
SHLACHTER P.C.
Timothy S. DeJong, OSB No. 940662
tdejong@stollberne.com
Keith A. Ketterling, OSB No. 913368
kketterling@stollberne.com
Cody Berne, OSB No. 142797
cberne@stollberne.com
209 Southwest Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600
Facsimile: (503) 227-6840

*Liaison Counsel for Proposed Lead Plaintiff*

LABATON KELLER SUCHAROW LLP
Eric J. Belfi (*pro hac vice* forthcoming)
ebelfi@labaton.com
Francis P. McConville (admitted *pro hac vice*)
fmcconville@labaton.com
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

LABATON KELLER SUCHAROW LLP
Mark S. Willis (*pro hac vice* forthcoming)
mwillis@labaton.com
1050 Connecticut Avenue NW, Suite 500
Washington, D.C.  20036
Telephone: (212) 907-0855
Facsimile: (212) 818-0477

*Counsel for Proposed Lead Plaintiff and Proposed
Lead Counsel for the Class*

DRRT
Joseph Gulino (*pro hac vice* forthcoming)
jgulino@drrtcom
340 West Flagler Street, 2nd Floor
Miami, Florida 33130
Telephone: (305) 760-8030
Facsimile: (305) 760-8030

*Additional Counsel for DEKA*

16