RANSOM, GILBERTSON, MARTIN &
RATLIFF, LLP
Jeffrey S. Ratliff
5441 S. Macadam Avenue, Suite 301
Portland, OR 97239
T: 503-226-3664

*Liaison Counsel for Meitav Provident and
Pension Funds Ltd., the Teachers Funds,
and the Menora Funds and Proposed
Liaison Counsel for the Class*

[Additional counsel on signature page.]

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON

| | |
|---|---|
| IN RE NIKE, INC. SECURITIES LITIGATION | **CASE No.: 3:24-cv-00974-AN**<br><br>**CLASS ACTION**<br><br>**REPLY MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF MEITAV PROVIDENT AND PENSION FUNDS LTD., THE TEACHERS FUNDS, AND THE MENORA FUNDS FOR APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS** |
| This Document Relates to: All Actions | |
| | **ORAL ARGUMENT REQUESTED** |

Lead Plaintiff Movants the Funds[1] respectfully submit this Reply Memorandum of Law in further support of their motion for appointment as Lead Plaintiffs and approval of Pomerantz and Ransom as, respectively, Lead Counsel and Liaison Counsel for the Class (Dkt. No. 16[2]) for the Class in this Consolidated Action; and in opposition to the competing motion of the Deka-CDPQ Group (Dkt. No. 18).[3]

## PRELIMINARY STATEMENT

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class" ***and*** has made a *prima facie* showing of typicality and adequacy within the meaning of Rule 23.  15 U.S.C. § 78u-4(a)(3)(B)(iii).  This presumption can only be rebutted upon proof that the presumptive "most adequate plaintiff" is atypical or inadequate.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Of the two competing Lead Plaintiff movants still before the Court, only the Funds satisfy the PSLRA's criteria for the "most adequate plaintiff" presumption.  First, the Funds incurred a significant investment loss of $26.58 million as a result of Defendants' alleged malfeasance.  No movant has disputed the quantum of the Funds' investment loss, nor has any movant eligible for

---

[1] All capitalized terms herein are defined in the Funds' moving or opposition briefs, unless otherwise indicated. *See* Dkt. Nos. 16, 31.

[2] All references to "Dkt. No. __" herein refer to the docket numbers as stamped on the parties' pleadings, which differ from the numbers of the corresponding entries as they appear on the Court's docket sheet.  For example, the document stamped as "Document 16" is listed as entry number 17 on the docket sheet.

[3] Initially two other movants filed competing lead plaintiff motions: (1) SWIB (Dkt. No. 22); and (2) the SICAV Group (Dkt. No. 20).  On September 3, 2024, in lieu of an opposition brief, the SICAV Group simply filed a short response acknowledging "that another movant claims to have suffered larger losses" than the SICAV Group, seemingly abandoning its motion.  Dkt. No. 29.  Also on September 3, 2024, SWIB filed a similar response, acknowledging that it "does not possess the 'largest financial interest in the relief sought by the class,' as required by the [PSLRA]."  Dkt. No. 32.

1

appointment as Lead Plaintiff claimed a larger financial interest than the Funds.  Although the only competing movant, the Deka-CDPQ Group, claims to have incurred a larger loss than the Funds, the group's members are variously inadequate under Rule 23 and subject to disqualifying unique defenses (as discussed at length in the Funds' opposition brief (*see* Dkt. No. 31 at 11-14, 19-24) and below), and thus cannot satisfy the PSLRA's criteria for appointment as Lead Plaintiff.

Second, as discussed in greater detail in their moving and opposition briefs, the Funds have made the requisite *prima facie* showings of adequacy and typicality under Rule 23.  *See* Dkt. No. 16 at 17-22; Dkt. No. 31 at 7-10.  No competing movant has argued otherwise.

In stark contrast, the Deka-CDPQ Group's two members are inadequate and subject to disqualifying unique defenses.  Both Deka and CDPQ filed papers containing significant errors— in CDPQ's case, inconsistently recording a transaction of 10,000 shares as a sale in its Certification (Dkt. No. 19-1 at *7) and as a transfer in its damages analysis (Dkt. No. 19-2 at *5); and in Deka's case, providing no information whatsoever about the original purchase price or dates for a total of 11,778 shares transferred between various Deka Fund accounts during the Class Period.  The presence of such errors in their papers calls into question whether Deka and CDPQ are sufficiently prepared to supervise a complex securities class action, thereby rendering them inadequate under Rule 23.  *See*, *e.g.*, *Rodriguez v. DraftKings Inc.*, 21 Civ. 5739 (PAE) *et al.*, 2021 WL 5282006, at *9 (S.D.N.Y. Nov. 12, 2021); *In re Boeing Co. Aircraft Sec. Litig.*, No. 19-cv-02394, 2020 U.S. Dist. LEXIS 15012, at *16-17 (N.D. Ill. Jan. 28, 2020).  Further, Deka is subject to a significant unique defense regarding its standing to pursue fraud claims against the Defendants in this litigation.  Although Deka readily acknowledges that it is ***not*** the beneficial owner of the Nike securities at issue, which are in fact owned by 42 funds under its management, Deka has not established the purported basis on which it pursues fraud claims on behalf of those funds herein.

2

Having failed to establish its standing at the outset, Deka may not cure its failure in subsequent pleadings. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000) (a plaintiff's standing is assessed "at the outset of the litigation.").

Accordingly, the Funds respectfully submit that the Court should grant their motion in full and deny the Deka-CDPQ Group's competing motion.

## ARGUMENT

### A. THE DEKA-CDPQ GROUP'S MOTION SHOULD BE DENIED

#### 1. Errors in the Deka-CDPQ Group's Motion Papers Render the Group Inadequate

The Deka-CDPQ Group is inadequate under Rule 23 because significant errors in the group's motion papers raise legitimate questions about its members' preparedness to supervise counsel in the litigation of a complex securities class action. Courts routinely disqualify lead plaintiff movants for such errors, finding that they "call[] into doubt [a movant's] adequacy to be lead plaintiff." *DraftKings*, 2021 WL 5282006, at *9 (quoting *Plaut v. Goldman Sachs Grp., Inc.*, No. 18 Civ. 12084 (VSB), 2019 WL 4512774, at *5 (S.D.N.Y. Sept. 19, 2019)). *See also In re Vonage Initial Pub. Offering Secs. Litig.*, 2007 U.S. Dist. LEXIS 66258, at *23, *28 n.8 (D.N.J. Sep. 7, 2007) (denying motion by movant whose certification "contained incorrect trading data and loss calculations," finding it to be "plagued with misinformation"); *Boeing*, 2020 U.S. Dist. LEXIS 15012, at *16-17 (denying motion where errors in loss calculations demonstrated that movants either knowingly submitted incorrect information or failed to review their submissions before filing).

Here, each of the two members of the Deka-CDPQ Group submitted papers containing significant errors. Deka's submission contains errors relating to its accounting for certain shares that were purportedly ***transferred*** into certain of its accounts during the Class Period in a total of

3

four separate transactions involving different accounts.  Specifically, Deka has provided no information whatsoever as to the date or dates on which these shares were *purchased*—yet for each of these transactions, it records a purchase price that, conspicuously, falls within the ranges of prices within which Nike shares traded on the NYSE on the purported transfer date.  The most reasonable inference is that Deka's papers do not reflect the prices at which these shares were actually acquired, but rather the use of some unspecified methodology that values the transferred shares at market prices as of the date of transfer.  Meanwhile, CDPQ's papers reflect a demonstrable error in the classification of at least one transaction.  CDPQ's schedule of Class Period transactions records a sale of 10,000 shares on November 17, 2022 at a price of $105.36 per share (s*ee* Dkt. No. 19-1 at *7), while its CDPQ's damages analysis records this same transaction as a *transfer* (*see* Dkt. No. 19-2 at *5).  Obviously at least one of these recorded classifications is erroneous.  The presence of such identifiable errors in the Deka-CDPQ Group's motion papers raises the question: what further errors—unidentifiable as such at this stage of the proceedings—are lurking in the group's papers?  As such, the inescapable conclusion is that the Deka-CDPQ Group submitted false Certifications and incorrect loss calculations to the Court in support of their Lead Plaintiff motion.

Compounding the concerns about the Deka-CDPQ Group's adequacy is the fact that the group's opposition papers, filed 15 days after the group's initial motion papers, neither acknowledged nor corrected either of the foregoing errors.  Had the Deka-CDPQ Group been aware of such errors, presumably they would have corrected them at the earliest opportunity.  Accordingly, every indication is that the Deka-CDPQ Group remained unaware of these errors until the Funds identified them in their own opposition brief.  That the Deka-CDPQ Group "had to . . . be[] alerted to these basic errors in the first place" does not reflect well on its readiness to

thoroughly review the significant pleadings in this litigation, which will of course be a core responsibility of the Lead Plaintiff in this Consolidated Action. *DraftKings*, 2021 WL 5282006, at *9.

### 2. Deka Is Subject to a Disqualifying Unique Defense Related to Its Standing

In addition to being inadequate under Rule 23, Deka is further disqualified because it "is subject to unique defenses"—specifically, regarding its standing to pursue fraud claims in this litigation—"that render [Deka] incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb). "The PSLRA . . . provides that we ask simply whether [a movant] is likely to be 'subject to' the unique defense . . . ; we do not have to determine that the defense is likely to succeed." *In re Bally Total Fitness Sec. Litig.*, 2005 U.S. Dist. LEXIS 6243, at *19 (N.D. Ill. Mar. 15, 2005). *See also In re Surebeam Corp. Secs. Litig.*, No. 03 CV 1721 JM (POR), 2003 U.S. Dist. LEXIS 25022, at *22 (S.D. Cal. Jan. 5, 2004) (denying lead plaintiff motion upon "find[ing] that there is at least a potential that [movant] will be subject to unique defenses and will not fairly and adequately protect the interests of the class.").

It is axiomatic that under Article III of the U.S. Constitution, "standing requires that the plaintiff 'personally has suffered some actual or threatened injury.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2015) (quoting *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982)). "[T]he injury must affect the plaintiff in a personal and individual way." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n. 1 (1992). For Exchange Act fraud claims under Section 10(b) (*i.e.*, the claims alleged in this litigation), the injury-in-fact requirement is satisfied when the plaintiff was a beneficial owner of the securities at issue, and engaged in a purchase or sale, during the relevant period during which

misconduct allegedly occurred.  *See, e.g.*, *In re Bank of America Corp. Sec., Derivative and ERISA Litig.*, No. 09-MD-2058, 2011 WL 3211472, at \*12 (S.D.N.Y. 2011).

Here, Deka has acknowledged that it is merely the investment manager for the 42 Deka Funds described in its Certification, who are the actual beneficial owners of the securities at issue and thus the parties injured by the fraud alleged in this litigation.  It is thus undisputed that Deka itself has ***not*** suffered any injury whatsoever.  Accordingly, Deka's ability to pursue fraud claims on behalf of these 42 funds would appear to depend entirely on the narrow prudential exception to Article III's injury-in-fact requirement.  Given that third-party standing is strongly disfavored, this exception is narrowly construed and applied.  *See*, *e.g.*, *Green v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 56-57 (E.D.N.Y. 2017) ("[T]he Supreme Court has made clear that it does 'not look favorably upon third-party standing' except in certain circumstances." (quoting *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004)).  Yet Deka has not even invoked the prudential exception, let alone established that it applies here.  Rather, for these 42 funds, Deka's standing proffer consists of a bare three conclusory sentences in its Joint Declaration, by individuals whose qualifications to offer such conclusions are not provided.  *See* Dkt. No. 19-4 ¶ 2.  This is plainly far too thin a reed to establish that Deka may pursue claims on behalf of the Deka Funds in this litigation, particularly under a doctrine as disfavored as the prudential exception.  What, precisely, are the Deka Funds?  Why do they lack legal authority to bring fraud claims in their own name?  What specifically gives Deka "the right and obligation to bring claims in its own name to recover" the Deka Funds' losses?  One formerly competing Lead Plaintiff movant, the SICAV Group, considered it necessary to submit detailed Declarations by two different European lawyers, including detailed explanations of the law of Luxembourg and Belgium with citations to specific statutory provisions, in order to establish its members' own standing to bring claims on behalf of

only *seven* affiliated sub-funds. *See generally* Dkt. Nos. 21-4, 21-5. Deka, by contrast, moving on behalf of *42* different funds, has given the Court a bare three sentences by individuals who are not even identified as lawyers. Deka might have offered constitutional documents or management agreements establishing its relationship with the Deka Funds, or, like the SICAV Funds, a more detailed declaration by an individual qualified to speak on the subject, but it did neither of these things. Deka's casual approach to an issue as consequential as its own Article III standing raises legitimate questions as to whether it will take an equally casual approach with respect to the Class's fraud claims.

Deka will presumably direct the Court's attention to previous securities class actions in which other courts have seen fit to appoint Deka as Lead Plaintiff—*i.e.*, to argue that such appointments such assuage any concerns regarding Deka's standing to pursue claims here. Indeed, Deka appears to have previously been appointed Lead Plaintiff at least four other PSLRA actions: (1) *Selbst v. The Coca-Cola Company*, 1:05-cv-01226 (N.D. Ga.) ("*Coca-Cola*"); (2) *Weston v. DocuSign, Inc.*, 3:22-cv-00824 (N.D. Cal.) ("*DocuSign*"); (3) *Steck v. Santander Consumer USA Holdings Inc.*, 3:15-cv-02129 (N.D. Tex.) ("*Santander*"); and (4) *In re General Motors Securities Litigation*, 1:05-cv-08088 (S.D.N.Y.) ("*GM*"). However, none of these cases involved a rigorous analysis of Deka's standing to pursue claims on behalf of the funds at issue. In *Coca-Cola*, Deka and the other members of its co-movant group filed the only motion for appointment as lead plaintiff, meaning that Deka's motion faced no opposition whatsoever. *See Coca-Cola*, Dkt. Nos. 7, 17. In *Santander*, a competing movant initially opposed Deka's appointment, citing the same Article III standing defenses at issue here. *See Santander*, Dkt. No. 28 at 3-6. However, Deka and the competing movant ultimately stipulated to appointment as Co-Lead Plaintiffs before the *Santander* court could address the questions surrounding Deka's standing, leaving those issues

7

unresolved. *See* Santander Dkt. No. 99. Meanwhile, in *GM*, one competing movant group opposed Deka's appointment as Lead Plaintiff, but never questioned its standing—presumably because the competing movant group itself included European asset managers that were potentially subject to the same types of issues as Deka. *See GM*, Dkt. No. 28 at 2-6. Accordingly, Deka was appointed as Lead Plaintiff in *Coca-Cola, Santander,* and *GM* without any judicial evaluation of its Article III standing. *See Coca-Cola*, Dkt. No. 17; *Santander*, Dkt. No. 99; *GM*, Dkt. No. 63. Finally, in *DocuSign*, the question of Deka's standing was not vigorously litigated. Rather, a competing movant devoted approximately one page each of its opposition and reply briefs to the issue. *See DocuSign*, Dkt. No. 28 at 5-6, Dkt. No. 30 at 4-5. Given the relative superficiality of these arguments as presented by the competing movant, the *DocuSign* court's own analysis of Deka's standing was only cursory, devoting a bare five sentences to the issue. *See DocuSign*, Dkt. No. 42 at 8-9. Accordingly, given that Deka's standing to serve as a Lead Plaintiff in a PSLRA action has yet to withstand rigorous scrutiny by either courts or fellow class members, the fact that Deka has previously been appointed Lead Plaintiff in other PSLRA actions carries little weight at best.

It was incumbent upon Deka to establish, in its initial motion papers, that it has standing to pursue claims on behalf of all 42 Deka Funds involved in ***this*** litigation. This Deka has failed to do, and its failure virtually ensures that, if it is appointed Lead Plaintiff, Deka will eventually be forced to spend time litigating esoteric issues regarding its various relationships with ***no fewer than 42 different investment funds***—issues that are unique to Deka and utterly irrelevant to the Class members that it seeks to represent—thereby distracting it from its litigation of the Class's fraud claims. The Court, in turn, will be required to spend its own time and resources adjudicating such issues. There is simply no reason to appoint a Lead Plaintiff as problematic as Deka, when the Funds stand ready to prosecute the Class's fraud claims, unencumbered by such distractions.

## B. THE COURT SHOULD GRANT DISCOVERY INTO DEKA'S STANDING AND THE ERRORS IN THE DEKA-CDPQ GROUP'S MOTION PAPERS

As set forth above and at length in the Funds' opposition brief (*see generally* Dkt. No. 31), the errors in the Deka-CDPQ Group's motion papers and Deka's failure to establish its standing to pursue claims in this litigation more than suffice to disqualify the group from appointment as Lead Plaintiff under the PSLRA. To the extent the Court considers that additional information on these points would assists its inquiry into the Deka-CDPQ Group's adequacy and typicality, and/or whether it is subject to unique defenses, the Funds respectfully reiterate their request for limited discovery into the foregoing issues, as contemplated by the PSLRA. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iv) (permitting courts to order "discovery relating to whether [a movant] is the most adequate plaintiff" if another lead plaintiff movant has demonstrated "a reasonable basis for a finding that [a movant is] incapable of adequately representing the class.").

### CONCLUSION

Although it claims the largest financial interest in the relief sought by the Class in this litigation, the Deka-CDPQ Group is plainly disqualified from consideration for the reasons set forth above. With the Deka-CDPQ Group out of the running, the PSLRA directs the Court to inquire whether the movant with the next-largest financial—namely, the Funds—satisfies the PSLRA's criteria for appointment as Lead Plaintiff. Unlike the Deka-CDPQ Group, the Funds readily pass muster. No movant has disputed the quantum of the Funds' claimed investment losses, which, as the only remaining movant, by default qualifies as the largest financial interest in the relief sought by the Class in this litigation. Likewise, it is uncontested that the Funds have *prima facie* demonstrated their adequacy and typicality under Rule 23. Nor has any movant so much as suggested that the Funds are subject to any unique defenses that would make them unsuitable Class representatives.

9

Accordingly, for the foregoing reasons, the Funds respectfully request that the Court issue an Order granting the Funds' motion (Dkt. No. 16) in full and denying the competing motion of the Deka-CDPQ Group (Dkt. No. 18).

Dated: September 17, 2024

Respectfully submitted,

**RANSOM, GILBERTSON, MARTIN & RATLIFF, LLP**

By: */s/ Jeffrey S. Ratliff*
Jeffrey S. Ratliff
5441 S. Macadam Avenue, Suite 301
Portland, OR 97239
T: 503-226-3664
Email: RGMR1500@gmail.com

*Liaison Counsel for Lead Plaintiff Movants Meitav Provident and Pension Funds Ltd., the Teachers Funds, and the Menora Funds and [Proposed] Liaison Counsel for the Class*

**POMERANTZ LLP**
Jeremy A. Lieberman
(admitted *pro hac vice*)
J. Alexander Hood II
(admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

*Counsel for Lead Plaintiff Movants Meitav Provident and Pension Funds Ltd., the Teachers Funds, and the Menora Funds and [Proposed] Lead Counsel for the Class*

10