Keil M. Mueller, OSB No. 085535
Jennifer S. Wagner, OSB No. 024470
**KELLER ROHRBACK L.L.P.**
601 SW Second Avenue, Suite 1900
Portland, OR 97204
Tel.: (971) 253-4600
Fax: (206) 623-3384
kmueller@kellerrohrback.com
jwagner@kellerrohrback.com

Michael B. Eisenkraft (*pro hac vice* forthcoming)
Benjamin F. Jackson (*pro hac vice* forthcoming)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, 14th Floor
New York, NY 10005
Tel.: (212) 838-7797
Fax: (212) 838-7745
meisenkraft@cohenmilstein.com
bjackson@cohenmilstein.com

*Attorneys for Movant*
[Additional Counsel listed on Signature Page]

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| | Case No.: 3:24-cv-00974-AN |
| IN RE NIKE, INC. SECURITIES LITIGATION | <u>CLASS ACTION</u> |
| | **MOVANT STATE OF WISCONSIN INVESTMENT BOARD'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF** |
| This Document Relates to: All Actions | |

STATE OF WISCONSIN INVESTMENT
BOARD'S REPLY BRIEF REGARDING ITS
MOTION FOR APPOINTMENT AS LEAD
PLAINTIFF

**MEMORANDUM IN FURTHER SUPPORT OF THE MOTION**

The Meitav group[1] claims the State of Wisconsin Investment Board ("SWIB"), one of the largest state retirement systems in the country, would be an inadequate class representative for three reasons: (1) a purported error in SWIB's papers; (2) because SWIB, along with its many purchases of Nike stock, also sold short Nike stock during the class period; and (3) SWIB may have multiple different investment managers. Meitav's first argument is completely wrong and untrue; Meitav's second argument flies in the face of foundational Supreme Court decisions and other precedent; and its third argument makes no sense and is unsupported by case law.

### 1.   Meitav's Claim That SWIB Made An Error Is Demonstrably Wrong

First, Meitav claims that "[b]oth SWIB and Deka submitted papers containing demonstrable errors, a fact that calls their adequacy into question." ECF No. 32 ("Meitav Br.") at 3. In that very same paragraph, however, when it explains what those these errors were, Meitav makes it clear that it is ***CDPQ (Quebec)***, *not* SWIB, who it is accusing of making an error:

> Specifically, Deka's motion papers indicate that a total 10,000 shares of Nike stock were transferred into three Deka accounts during the Class Period, yet Deka provides no information regarding the dates on which these shares were originally purchased, or at what prices, making it impossible to assess the accuracy of Deka's submissions.    Meanwhile, ***CDPQ***'s motion papers inconsistently record a transaction involving 100,000 shares of Nike stock as a sale in its Certification (Dkt. No. 19-1 at *7) and as a transfer in its damages analysis (Dkt. No. 19-2 at *5). Obviously at least one of these filings must be incorrect.

Meitav Br. at 3 (emphasis added).

Later in the brief, Meitav ***confirms*** it is accusing ***CDPQ (Quebec)***, ***not*** SWIB of making

---

[1] This group consists of Meitav Provident and Pension Funds Ltd., Kranot Hishtalmut Le Morim Tichoniim Morey Seminarim Ve Mefakhim Hevra Menahelet Ltd. and Kranot Hishtalmut Le Morim Ve Gananot Hevra Menahelet Ltd., and Menora Mivtachim Insurance Ltd. and Menora Mivtachim Pensions and Gemel Ltd. *See* ECF No. 17 at 5.

STATE OF WISCONSIN INVESTMENT                    1
BOARD'S REPLY BRIEF REGARDING ITS
MOTION FOR APPOINTMENT AS LEAD
PLAINTIFF

an error. *See, e.g.*, Meitav Br. at 14-15 (describing the alleged error in CDPQ's papers). In other words, Meitav's assertion that SWIB made an error is itself an error: what Meitav meant to write is that CDPQ, not SWIB, made an error. Since Meitav did not actually identify even an alleged error by SWIB, this cannot interfere with SWIB's adequacy and, by Meitav's own logic, this error "raise[s] questions regarding [Meitav's] fitness to supervise a complex securities class action." Meitav Br. at 3.

### 2. Meitav's Argument that SWIB's Trading Makes It Inadequate Flies in the Face of Supreme Court and On Point Precedent

Meitav also argues that SWIB's trading strategy—specifically that, along with purchasing massive amounts of Nike stock, SWIB also sold short some shares of Nike during the class period—renders it an inadequate Lead Plaintiff. Meitav's argument that SWIB's trading strategy is relevant to its ability to represent the class files in the face of fundamental (indeed, *basic*) Supreme Court case law on securities class actions. Investors purchase securities for any number of reasons: to diversify their portfolio; because they believe in a company's potential; because they want dividends; because it is part of a complex hedging strategy; because they like  a company's products or its logo; etc. But ***regardless*** of why they purchased a share of stock, if that share of stock was artificially inflated due to fraudulent statements, that investor suffered harm just like the rest of the class.

Indeed, the Supreme Court has said as much, first in the foundational case of *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), when it affirmed a presumption that "persons who had traded … shares had done so in reliance on the integrity of the price set by the market…" *Id.* at 245. The Supreme Court elaborated on this further in *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014), when it rejected the argument that the strategies of different investors when they made

STATE OF WISCONSIN INVESTMENT          2
BOARD'S REPLY BRIEF REGARDING ITS
MOTION FOR APPOINTMENT AS LEAD
PLAINTIFF

their purchase is relevant to their securities fraud claims. *Id.* at 273-74. Specifically, the Supreme Court looked at the trading habits of a wide range of investors, including day traders, volatility arbitragers and value investors (*i.e.*, those who believe the market is under/overvaluing a stock) and considered the claim that investors who follow some of these strategies are "indifferent to prices" and that there therefore "courts should not presume that investors rely on the integrity of those prices and any misrepresentations incorporated into them." *Id.* The Supreme Court said the strategy of the investor—*i.e.*, why they made the purchase—is irrelevant because all investors "rel[y] on the fact that a stock's market price will eventually reflect material information." *Id.*[2]

Similarly, SWIB's trading in Nike shares during the class period – the purchase of massive amounts of Nike stock at artificially inflated prices along with the shorting of a limited number of shares of Nike stock during the class period – is not relevant to its ability to serve as a Lead Plaintiff. SWIB's short-selling is only relevant in that the short sales are netted against the long purchases for the LIFO and FIFO calculations in this case, which SWIB properly did in its certification. Even after accounting for its short selling, however, SWIB had $37 million in LIFO losses and $87 million in FIFO losses during the Class Period. These losses—not why SWIB made its purchases—are what matter because, as the Supreme Court has repeatedly held, it is the payment of the artificial price that matters, not why the purchase was made.

Courts have repeatedly recognized this in analogous situations, holding repeatedly that short sellers can be appointed Lead Plaintiff and certifying classes with short sellers as class

---

[2] The only exception to this rule is a showing "that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price...," *Basic*, 485 U.S. at 248–49, *i.e.*, if a showing could be made that an investor knew about the misrepresentation at issue or the artificial price when they made the purchase. There is, of course, no evidence or allegation of that here at all with respect to SWIB or any member of the Class, and Meitav does not suggest otherwise.

STATE OF WISCONSIN INVESTMENT
BOARD'S REPLY BRIEF REGARDING ITS
MOTION FOR APPOINTMENT AS LEAD
PLAINTIFF

3

representatives.  For instance, in *Crossen v. CV Therapeutics*, the Court held that "***[s]hort sales do not in and of themselves render a lead plaintiff's claims atypical.***"  No. 03-CV-03709-SI, 2005 WL 1910928, at *5 (N.D. Cal. Aug. 10, 2005) (emphasis added).  *See also In re Eastman Kodak Co. Sec. Litig.*, No. 6:21-CV-06418-EAW, 2021 WL 3361162, at *5 (W.D.N.Y. Aug. 2, 2021) (appointing lead plaintiff with both short and long interests, noting that "[c]ourts have rejected the argument that the use of sophisticated investment strategies disqualifies a party from serving as lead plaintiff or necessarily undermines reliance, particularly at this stage of the litigation."); *In re Ocwen Fin. Corp. Sec. Litig.*, No. 14-CV-81057-WPD, 2016 WL 11783386, at *4 (S.D. Fla. Nov. 18, 2016) ("The Court finds that Plaintiffs' position as a short seller does not prevent a finding of typicality."); *Montoya v. Herley Indus. Inc.*, No. 06-CV-2596, 2006 WL 3337485, at *1 (E.D. Pa. Nov. 14, 2006) (appointing lead plaintiff investor who engaged in short sales as part of a broader investment strategy in which it sold the relevant stock short to hedge against a possible decline in the stock price); *Fields v. Biomatrix, Inc.*, 198 F.R.D. 451, 461 (D.N.J. 2000) ("the Court finds that the fact that Group One may have made some short sales does not render its claims atypical of the other plaintiffs in the putative class or subject to unique defenses such that it is incapable of adequately representing the case."); *Danis v. USN Commc'ns, Inc.*, 189 F.R.D. 391, 396 (N.D. Ill. 1999) (investor is typical of class members despite making initial short sales followed by ordinary purchases).

Meitav ignored all of this case law in lobbing their baseless attacks against SWIB.  Instead, Meitav focused on a handful of inapposite cases.  *Isaacs v. Musk* involved an investor who was ***only*** a short seller.  *See* No. 18-CV-04865-EMC, 2018 WL 6182753, at *2 (N.D. Cal. Nov. 27, 2018).  And *In re Critical Path, Inc. Sec. Litig.* is a twenty-three year old case, the holding of

which is directly contradicted by the more recent *Crossen* from the same District. 156 F. Supp. 2d 1102, 1109 (N.D. Cal. 2001).  The *Crossen* court specifically considered *Critical Path* just before it issued its declaration that "[s]hort sales do not in and of themselves render a lead plaintiff's claims atypical."  And subsequent opinions have recognized that *Crossen* overwrote *Critical Path*. *See, e.g.*, *Nursing Home Pension Fund v. Oracle Corp.*, No. 01-CV-00988 MJJ, 2006 WL 8071391, at *8 (N.D. Cal. Dec. 20, 2006) (responding to *Critical Path* by invoking *Crossen* for the proposition that "while the motivations behind short selling may be inconsistent with the assumptions underlying the fraud on the market theory, a plaintiff may still be entitled to the presumption of reliance if he makes ordinary purchases of common stock and sustains losses on these holdings.").  Indeed, no court—including the other Northern District of California case Meitav cites, *Isaacs v. Musk*—has relied on *Critical Path* for its holding regarding short sellers since *Crossen* was decided.  *See also In re Sci.-Atlanta, Inc. Sec. Litig.*, 571 F. Supp. 2d 1315, 1332 (N.D. Ga. 2007) (considering *Critical Path* but declining to find representative inadequate); *Schaeffer v. Depaolo*, No. 23-CV-1921-FB-JRC, 2023 WL 5153481, at *7 (E.D.N.Y. Aug. 10, 2023) (same); *Rodriguez v. DraftKings Inc.*, No. 21-CV-5739 (PAE), 2021 WL 5282006, at *8 (S.D.N.Y. Nov. 12, 2021) ("[T]he Court cannot find that Kaintz's short selling would make him an atypical class representative.").  *Weisz v. Calpine Corp.*, a twenty-two year old case also pre-dating *Crossen*, solely relied on *Critical Path* and thus is inapposite for the same reason.  No. 4:02-CV-1200, 2002 WL 32818827, at *8 (N.D. Cal. Aug. 19, 2002).

Finally, in *Marcus v. J.C. Penney Co.*, the movant's status as a short seller was only one of several factors that gave the court concerns regarding its typicality.  *See* No. 6:13-CV-736, 2014 WL 11394911, at *7 (E.D. Tex. Feb. 28, 2014) ("Ifantides bought and sold his entire JCP portfolio on the same or next trading day on at least ten different instances over the course of the Long Class

Period. Such active trading practices relies more on speculation rather than investing. This activity would not be typical of the class because the proposed class's damages stem from reliance on Defendant's financial statements."); *id.* ("It is unclear why [Ifantides] would argue for a shorter class period, unless it was in the best interest of that particular plaintiff. This self-serving behavior is precisely the type of rebuttable evidence provided in the PSLRA that would prohibit this Court from appointing Ifantides lead plaintiff.").

Meitav's suggestion that there be further discovery into SWIB's trading strategy should be swiftly rejected as Meitav has demonstrated no reasonable basis for finding that SWIB was incapable of adequately representing the class. *See Montoya v. Herley Indus. Inc.*, No. 06-CV-2596, 2006 WL 3337485, at *2 (E.D. Pa. Nov. 14, 2006) (rejecting attempt to probe short selling with limited discovery at lead plaintiff stage because competing movant "failed to demonstrate a reasonable basis for finding Galleon is incapable of adequately representing the class").

### 3. Meitav's Claim That An Institutional Investor Using Multiple Investment Managers Interferes with Its Adequacy to Serve as Lead Plaintiff Is Specious

Meitav argues, without citing a single case or secondary authority, that "the fact that SWIB appears to have two separate investment managers with conflicting views on the Company's prospects will raise a plethora of questions regarding its reliance on the Company's Class Period statements." Meitav Br. at 19. Aside from being a purely speculative assertion, Meitav's purported concern has no basis in the case law and, in fact, contradicts one of the purposes of the PSLRA which strongly encourages institutional investors to serve as Lead Plaintiffs in securities class actions. *See* H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995) ("The Conference Committee believes that increasing the role of institutional investors . . . will ultimately benefit shareholders and assist courts by improving the quality of

STATE OF WISCONSIN INVESTMENT        6
BOARD'S REPLY BRIEF REGARDING ITS
MOTION FOR APPOINTMENT AS LEAD
PLAINTIFF

representation in securities class actions."). The vast majority of large institutional investors employ multiple investment managers to manage their funds. *See, e.g.*, *Middlesex Ret. Sys. v. Quest Software, Inc.*, No. 06-CV-6863-DOC-RNBx, 2009 WL 10669638, at *5 (C.D. Cal. Sept. 8, 2009) ("[I]nstitutional investors such as pension funds necessarily rely on investment managers[.]"); *In re Accredo Health, Inc. Sec. Litig.*, No. 03-CV-2216-DP, 2006 WL 1716910, at *4 (W.D. Tenn. Apr. 19, 2006) ("[I]nstitutional investors are likely to use investment managers, and reliance on these managers does not disqualify an institutional investor from serving as lead plaintiff."). Accordingly, courts regularly appoint as lead plaintiff and class representative institutional investors who employ multiple investment managers. *See, e.g.*, *Norfolk Cnty. Ret. Sys. v. Cmty. Health Sys., Inc.*, 332 F.R.D. 556, 563 (M.D. Tenn. 2019) (granting class certification for institutional investor with multiple investment managers); *New Jersey Carpenters Health Fund v. DLJ Mortg. Cap., Inc.*, No. 08-CV-5653-PAC, 2011 WL 3874821, at *4 (S.D.N.Y. Aug. 16, 2011) (same); *In re Under Armour Sec. Litig.*, 631 F. Supp. 3d 285, 306 (D. Md. 2022) (rejecting argument that institutional investor was not typical because of reliance on outside investment managers); *City of Livonia Employees' Ret. Sys. v. Wyeth*, 284 F.R.D. 173, 179 (S.D.N.Y. 2012) (same); *In re Teva Sec. Litig.*, No. 3:17-CV-558-SRU, 2021 WL 868847, at *4 (D. Conn. Mar. 9, 2021) ("The fact that the Plaintiffs used investment managers to help manage their money is not suspect and does not suggest that the Plaintiffs fail to satisfy Rule 23(a)'s typicality and adequacy requirements.").

As this argument by Meitav has no support in any case law and, in fact, is contradicted by a well-established body of case law, it should be rejected.

## CONCLUSION

For all the above reasons, Meitav's arguments should be summarily rejected and this Court should recognize that SWIB would be an adequate representative for the class. Meitav attacks not only SWIB, but also movants CDPQ Quebec and Deka Investment Gmbh ("Deka") on various grounds. SWIB recognizes that CDPQ Quebec and Deka appear to have the largest financial interests and should be appointed Lead Plaintiffs. If, however, the Court were to disqualify those movants, based on Meitav's attacks or otherwise, SWIB—not Meitav—should be appointed as Lead Plaintiff because it has the second largest losses and is an adequate representative for the class.

Dated: September 17, 2024

**KELLER ROHRBACK L.L.P.**

By: */s/ Keil M. Mueller*
Keil M. Mueller, OSB No. 085535
Jennifer S. Wagner, OSB No. 024470
601 SW Second Avenue Suite #1900
Portland, OR 97204
Tel.: (971) 253-4600
Fax: (206) 623-3384
kmueller@kellerrohrback.com
jwagner@kellerrohrback.com

*Proposed Liaison Counsel for SWIB and the Class*

Michael B. Eisenkraft (*pro hac vice* forthcoming)
Benjamin F. Jackson (*pro hac vice* forthcoming)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, 14th Floor
New York, NY 10005
Tel.: (212) 838-7797
Fax: (212) 838-7745
meisenkraft@cohenmilstein.com
bjackson@cohenmilstein.com

Steven J. Toll (*pro hac vice* forthcoming)
Brendan R. Schneiderman (*pro hac vice* forthcoming)
**COHEN MILSTEIN SELLERS & TOLL PLLC**

STATE OF WISCONSIN INVESTMENT
BOARD'S REPLY BRIEF REGARDING ITS
MOTION FOR APPOINTMENT AS LEAD
PLAINTIFF

8

1100 New York Ave. N.W., Suite 500
Washington, DC 20005
Tel.: (202) 408-4600
Fax: (202) 408-4699
stoll@cohenmilstein.com
bschneiderman@cohenmilstein.com

***Attorneys for SWIB and Proposed Lead Counsel for the Class***

STATE OF WISCONSIN INVESTMENT
BOARD'S REPLY BRIEF REGARDING ITS
MOTION FOR APPOINTMENT AS LEAD
PLAINTIFF

9

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 17, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

*/s/ Keil M. Mueller*_____
Keil M. Mueller

STATE OF WISCONSIN INVESTMENT          10
BOARD'S REPLY BRIEF REGARDING ITS
MOTION FOR APPOINTMENT AS LEAD
PLAINTIFF