# EXHIBIT A

RANSOM, GILBERTSON, MARTIN &
RATLIFF, LLP
Jeffrey S. Ratliff
5441 S. Macadam Avenue, Suite 301
Portland, OR 97239
T: 503-226-3664

*Liaison Counsel for Meitav Provident and*
*Pension Funds Ltd., the Teachers Funds,*
*and the Menora Funds and Proposed*
*Liaison Counsel for the Class*

[Additional counsel on signature page.]

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**

| | |
|---|---|
| IN RE NIKE, INC. SECURITIES LITIGATION | **CASE No.: 3:24-cv-00974-AN**<br><br>**CLASS ACTION**<br><br>**CORRECTED MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF MEITAV PROVIDENT AND PENSION FUNDS LTD., THE TEACHERS FUNDS, AND THE MENORA FUNDS FOR APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS**<br><br>**ORAL ARGUMENT REQUESTED** |
| This Document Relates to: All Actions | |

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................................1

ARGUMENT...................................................................................................................................6

     A.     THE COURT SHOULD APPOINT THE FUNDS AS
           LEAD PLAINTIFFS..................................................................................................6

           1.     The Funds Have the Largest Financial Interest of Any
                   Eligible Candidate..........................................................................................6

           2.     The Funds Satisfy the Requirements of Rule 23 ........................................7

     B.     THE COMPETING MOTIONS SHOULD BE DENIED ....................................11

           1.     The Deka-CDPQ Group, SWIB and the SICAV Group Are
                   Inadequate Under Rule 23 ..........................................................................11

                a.     The Deka-CDPQ Group's Motion Papers Contain
                        Significant Errors ........................................................... 11

                b.     The SICAV Group Is an Inadequate Movant Group ..................... 15

            2.     SWIB's Short-Selling of Nike Stock Makes it Atypical Under
                 Rule 23 .......................................................................................................17

           3.     Deka and the SICAV Group Are Subject to Unique Defenses
                 Related to Their Standing ...........................................................................19

     C.     THE COURT SHOULD GRANT DISCOVERY INTO SWIB'S
           SHORT-SELLING, DEKA'S STANDING, AND THE ERRORS
           IN CDPQ'S MOTION PAPERS ........................................................................27

CONCLUSION..............................................................................................................................29

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Afros, S.P.A. v. Krauss-Maffei Corp.*,
  671 F. Supp. 1402 (D. Del. 1987)..............................................................................21

*Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*,
  890 F.3d 445 (3d Cir. 2018)......................................................................................22

*AMI - Government Employees Provident Fund Management Company Ltd. v.
  Alphabet Inc. et al.*,
  3:23-cv-01186 (N.D. Cal.) ...........................................................................................9

*Arora v. HDFC Bank Ltd.*,
  2:20-cv-04140 (E.D.N.Y.) ............................................................................................9

*Bao v. SolarCity Corp.*,
  No. 14-cv-01435-BLF, 2014 U.S. Dist. LEXIS 111869
  (N.D. Cal. Aug. 11, 2014)........................................................................................6, 7

*Broadfoot v. Barrick Gold Corp.*,
  No. 17-cv-3507, 2017 WL 3738444 (S.D.N.Y. Aug. 9, 2017)................................28

*Brown v. Computerized Thermal Imaging, Inc.*,
  No. 02-611-KI, 2002 U.S. Dist. LEXIS 18515 (D. Or. Sep. 24, 2002)................2, 7

*China Agritech, Inc. v. Resh*,
  _ U.S. _, 138 S. Ct. 1800 (2018)...............................................................................8

*Chow v. Archer-Daniels-Midland Company et al*,
  No. 1:24-cv-00634, ECF No. 41 (N.D. Ill. Jan 24, 2024)......................................22

*City of Miami General Employees' & Sanitation Employees' Retirement Trust v.
  Globe Life Inc., et al.*,
  No. 4:24-cv-00376, ECF No. 18 (E.D. Tex. Apr 30, 2024) ....................................22

*CW Capital Asset Mgmt., LLC v. Chicago Properties, LLC*,
  610 F.3d 497 (7th Cir. 2010) ....................................................................................22

*Deering v. Galena Biopharma, Inc.*,
  No. 3:14-cv-00367-SI, 2014 U.S. Dist. LEXIS 140766 (D. Or. Oct. 3, 2014)..................1, 6, 7

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
  528 U.S. 167 (2000)...................................................................................................27

*Genesee County Employees Retirement System v. Kornit Digital Ltd. et al.*,
   2:23-cv-00888 (D.N.J.) ...................................................................................................9

*Green v. Gerber Prods. Co.*,
   262 F. Supp. 3d 38 (E.D.N.Y. 2017) ................................................................................23

*Haideri v. Jumei Int'l Holding Limited*,
   No. 20-cv-02751-EMC, 2020 WL 5291872 (N.D. Cal. Sept. 4, 2020)....................................15

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ........................................................................................17

*Hessefort v. Super Micro Comput., Inc.*,
   317 F. Supp. 3d 1056 (N.D. Cal. 2018) ........................................................................6, 7

*In re Adobe Inc. Securities Litigation*,
   1:23-cv-09260 (S.D.N.Y.) ...............................................................................................9

*In re Bally Total Fitness Sec. Litig.*,
   Nos. 04 C 3530 *et al.*, 2005 U.S. Dist. LEXIS 6243 (N.D. Ill. Mar. 15, 2005)...................5, 20

*In re Bank of America Corp. Sec., Derivative and ERISA Litig.*,
   No. 09-MD-2058, 2011 WL 3211472 (S.D.N.Y. 2011)...........................................................20

*In re Boeing Co. Aircraft Sec. Litig.*,
   19-cv-02394, 2020 U.S. Dist. LEXIS 15012 (N.D. Ill. Jan. 28, 2020)..............................3, 11

*In re Comverse Tech. Inc. Sec. Litig.*,
   06-cv-1825 (E.D.NY.) ...................................................................................................10

*In re Critical Path*,
   156 F. Supp. 2d 1102 (N.D. Cal. 2001) ........................................................................4, 18

*In re Enron Corp., Sec. Litig.*,
   206 F.R.D. 427 (S.D. Tex. 2002)..................................................................................20

*In re Mylan N.V. Securities Litigation*,
   1:16-cv-07926 (S.D.N.Y.) ...............................................................................................9

*In re Netflix, Inc., Sec. Litig.*,
   No. 12-0225 SC, No. 12-1030 LHK, 2012 WL 149617
   (N.D. Cal. Apr. 27, 2012) ...........................................................................................3, 15

*In re Perion Network Ltd. Sec. Litig.*,
   1:24-cv-2860 (S.D.N.Y.) ...............................................................................................9

*In re Surebeam Corp. Secs. Litig.*,
 No. 03 CV 1721 JM (POR), 2003 U.S. Dist. LEXIS 25022
 (S.D. Cal. Jan. 5, 2004)................................................................................................20

*In re Tarragon Corp. Sec. Litig.*,
 2007 WL 4302732 (S.D.N.Y. Dec. 6, 2007) ...............................................................16

*In re Vonage Initial Pub. Offering Secs. Litig.*,
 No. 07-177 (FLW), 2007 U.S. Dist. LEXIS 66258 (D.N.J. Sept. 6, 2007).........................3, 11

*Isaacs v. Musk*,
 Nos. 18-cv-04865-EMC *et al.*, 2018 U.S. Dist. LEXIS 200717
 (N.D. Cal. Nov. 27, 2018)................................................................................................4, 18

*KBC Asset Management NV et al v. Discover Financial Services et al*,
 No. 1:23-cv-06788, ECF No. 61 (N.D. Ill. Sep 01, 2023).........................................22

*Klein v. Altria Group, Inc. et al*,
 No. 3:20-cv-00075 (E.D. Va.) ......................................................................................10

*Knox v. Yingli Green Energy Holding Co.*,
 136 F. Supp. 3d 1159 (C.D. Cal. 2015) ........................................................................7

*Kowalski v. Tesmer*,
 543 U.S. 125 (2004)......................................................................................................23

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992)......................................................................................................20

*Marcus v. J.C. Penney Co.*,
 No. 6:13-CV-736, 2014 U.S. Dist. LEXIS 197529 (E.D. Tex. Feb. 28, 2014)........................18

*McCracken v. Edwards Lifesciences Corp.*,
 Nos. 8:13-CV-1463-JLS (RNBx) *et al.*, 2014 U.S. Dist. LEXIS 2147
 (C.D. Cal. Jan. 8, 2014) .................................................................................................9

*McFalls v. Purdue*,
 No. 3:16-cv-2116-SI, 2018 WL 785866 (D. Or. Feb. 08, 2018) ...............................27

*Meitav Dash Provident Funds and Pension Ltd. v. Spirit Aerosystems Holdings,
 Inc.*,
 4:20-cv-00054 (N.D. Okla.)............................................................................................9

*Mersho v. United States Dist. Court*,
 6 F.4th 891 (9th Cir. 2021) ............................................................................................8

*Miami Police Relief & Pension Fund v. Fusion-io, Inc.*,
No. 13-CV-05368-LHK, 2014 U.S. Dist. LEXIS 80141
(N.D. Cal. June 10, 2014) ...................................................................................................8

*Narra v. Skyhop Techs., Inc.*,
No. 23-cv-01587-PCP, 2023 WL 8108460 (N.D. Cal. Nov. 22, 2023)..................................27

*NextEngine Inc. v. NextEngine, Inc.*,
No. 2:19-CV-00249-AB (MAA), 2021 WL 4026759
(C.D. Cal. Sept. 03, 2021)...........................................................................................21, 25

*Nicolow v. Hewlett Packard Co.*,
Nos. 12-05980 CRB *et al.*, 2013 U.S. Dist. LEXIS 29876
(N.D. Cal. Mar. 4, 2013) ....................................................................................................7

*Niederklein v. PCS Edventures!.com, Inc.*,
No. 1:10-cv-00479-EJL-CWD., 2011 WL 759553 (D. Idaho Feb. 24, 2011)...................15, 16

*Olsen v. New York Cmty. Bancorp. Inc.*,
233 F.R.D. 101 (E.D.N.Y. 2005) .......................................................................................22

*Parallax Grp. Int'l, LLC v. Incstores.com, LLC*,
No. 16-0929, 2017 WL 3017059 (C.D. Cal. Jan. 25, 2017)...................................................21

*Pfizer Inc. v. Elan Pharm. Research Corp.*,
812 F. Supp. 1352 (D. Del. 1993)........................................................................................21

*Plaut v. Goldman Sachs Grp., Inc.*,
No. 18 Civ. 12084 (VSB), 2019 WL 4512774 (S.D.N.Y. Sept. 19, 2019) .............................11

*Plumbers and Steamfitters Local 60 Pension Trust v. Meta Platforms, Inc. et al*,
4:22-cv-01470 (N.D. Cal.) ..................................................................................................9

*Rao v. Quorum Health Corp.*,
221 F. Supp. 3d 987 (M.D. Tenn. 2016)................................................................................28

*Richardson v. TVIA, Inc.*,
No. C-06-06304 RMW, 2007 U.S. Dist. LEXIS 28406
(N.D. Cal. Apr. 16, 2007) ............................................................................................8, 17

*Rodriguez v. DraftKings Inc.*,
21 Civ. 5739 (PAE) *et al.*, 2021 WL 5282006 (S.D.N.Y. Nov. 12, 2021)..............................11

*Roofer's Pension Fund v. Papa*,
2:16-cv-02805 (D.N.J.)........................................................................................................9

*Schaffer v. Horizon Pharma PLC*,
16-CV-1763 (JMF), 2016 U.S. Dist. LEXIS 83175 (S.D.N.Y. June 27, 2016) .......................20

*Schultz v. iGPS Co., LLC,*
   No. 10C71, 2011 WL 3651267 (N.D. Ill. Aug. 16, 2011)..................................................21, 25

*Spokeo, Inc. v. Robins,*
   136 S. Ct. 1540 (2015)...................................................................................................................20

*Staton v. Boeing Co.,*
   327 F.3d 938 (9th Cir. 2003) ................................................................................................2, 8, 11

*Tsirekidze v. Syntax-Brillian Corp.,*
   No. CV-07-2204-PHXFJM, 2008 WL 942273 (D. Ariz. Apr. 7, 2008)..................................16

*Valley Forge Christian College v. Americans United for Separation of Church*
   *and State, Inc.,*
   454 U.S. 464 (1982)......................................................................................................................20

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP,*
   549 F.3d 100 (2d Cir. 2008)....................................................................................................22, 23

*Weisz v. Calpine Corp.,*
   No. C 02-1200 SBA, 2002 U.S. Dist. LEXIS 27831 (N.D. Cal. Aug. 15, 2002)................4, 18

*Xu v. FibroGen, Inc.,*
   No. 21-cv-02623-EMC, 2021 U.S. Dist. LEXIS 164034
   (N.D. Cal. Aug. 30, 2021)..............................................................................................................9

**Statutes**

15 U.S.C. § 78u-4 ................................................................................................. *passim*

Private Securities Litigation Reform Act of 1995 .................................................. *passim*

Securities Exchange Act of 1934...........................................................................................20

**Rules**

Fed. R. Civ. P. 23.................................................................................................. *passim*

Lead Plaintiff Movants the Funds[1] respectfully submit this Memorandum of Law in further support of their motion for appointment as Lead Plaintiffs and approval of Pomerantz and Ransom as, respectively, Lead Counsel and Liaison Counsel for the Class (Dkt. No. 16[2]) for the Class in this Consolidated Action; and in opposition to the competing motions of: (i) Deka Investment GmbH ("Deka") and Caisse de dépôt et placement du Québec ("CDPQ" and, collectively with Deka, the "Deka-CDPQ Group") (Dkt. No. 18); (ii) State of Wisconsin Investment Board ("SWIB") (Dkt. No. 22); and (iii) C+F S.A. ("C+F") and Universal Invest ("Universal" and, collectively with C+F, the "SICAV Group") (Dkt. No. 20).

## PRELIMINARY STATEMENT

The Consolidated Action is a class action securities fraud lawsuit against Nike and certain of the Company's officers. As with all federal class action securities fraud lawsuits, a Lead Plaintiff must be appointed. The PSLRA governs that process and, pursuant to the PSLRA, the Court should appoint as Lead Plaintiff the movant or group of movants with the greatest financial interest in the outcome of the action, *and* who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Here, the Funds are the only movants who satisfy the PSLRA's criteria for appointment as Lead Plaintiff. *First*, having incurred aggregate investment losses of more than *$26.57 million* in connection with Nike's alleged fraud, the Funds are the eligible Lead Plaintiff candidates with the largest financial interest in the relief sought by the Class in this litigation. *See*, *e.g.*, *Deering v.*

---

[1] All capitalized terms herein are defined in the Funds' moving brief, unless otherwise indicated. *See* Dkt. No. 16.

[2] All references to "Dkt. No. __" herein are made to the docket numbers as stamped on the parties' pleadings, which differ from the numbers of the associated entries as listed on the docket sheet. For example, the document stamped as "Document 16" is listed as entry number 17 on the docket sheet.

1

*Galena Biopharma, Inc.*, No. 3:14-cv-00367-SI, 2014 U.S. Dist. LEXIS 140766, at *23 (D. Or. Oct. 3, 2014); *Brown v. Computerized Thermal Imaging, Inc.*, Civil No. 02-611-KI, 2002 U.S. Dist. LEXIS 18515, at *2 (D. Or. Sep. 24, 2002). Although two competing movants or movant groups—(i) CDPQ and Deka, and (ii) SWIB—both claim to have incurred larger investment losses than the Funds, each of these two competing movants/movant groups either fails to satisfy the typicality and adequacy requirements of Rule 23 and/or "is subject to unique defenses that render [it] incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb). As such, these movants are ineligible for appointment as Lead Plaintiff irrespective of their investment losses.

*Second*, in addition to their significant financial interest, the Funds also satisfy the typicality and adequacy requirements of Rule 23. The Funds, like all members of the Class, purchased Nike stock at prices artificially inflated by Defendants' misrepresentations or omissions, and were damaged upon the disclosure of the alleged corrective disclosures. These shared claims, which are based on the same legal theory, and arise from the same events and course of conduct as the Class claims, satisfy the typicality requirement of Rule 23. *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). The Funds are also adequate Class representatives under Rule 23. Their significant financial interest in this litigation ensures that they will vigorously pursue recovery on behalf of the Class. *Id.*

The Funds have further demonstrated their adequacy by submitting a detailed Joint Declaration, attesting to, *inter alia*, their backgrounds, their prior relationships with one another, their prior securities litigation experience, their understanding of this litigation generally and the significance of their motion specifically, their understanding of the responsibilities of lead plaintiffs appointed pursuant to the PSLRA, and their readiness to shoulder these responsibilities,

including by overseeing the efforts of counsel. *See generally* Dkt. No. 17-4. Accordingly, the Funds are highly qualified to serve as class representatives and to supervise Pomerantz, their chosen counsel, to prosecute this action vigorously on behalf of Nike investors.

By contrast, each of the three competing movants/movant groups is inadequate and/or atypical under Rule 23, as well as subject to disqualifying unique defenses. ***First***, all three movants are inadequate under Rule 23. Both CDPQ and Deka submitted papers containing demonstrable errors, a fact that calls their adequacy into question. Courts routinely deny lead plaintiff motions on the basis of such errors, as they raise questions regarding the movant's fitness to supervise a complex securities class action. *See, e.g.*, *In re Vonage Initial Pub. Offering Secs. Litig.*, No. 07-177 (FLW), 2007 U.S. Dist. LEXIS 66258, at *23, *28 n.8 (D.N.J. Sept. 6, 2007); *In re Boeing Co. Aircraft Sec. Litig.*, 19-cv-02394, 2020 U.S. Dist. LEXIS 15012, at *16-17 (N.D. Ill. Jan. 28, 2020). Specifically, Deka's motion papers indicate that a total 10,000 shares of Nike stock were transferred into three Deka accounts during the Class Period, yet Deka provides no information regarding the dates on which these shares were originally purchased, or at what prices, making it impossible to assess the accuracy of Deka's submissions. Meanwhile, CDPQ's motion papers inconsistently record a transaction involving 100,000 shares of Nike stock as a sale in its Certification (Dkt. No. 19-1 at *7) and as a transfer in its damages analysis (Dkt. No. 19-2 at *5). Obviously at least one of these filings must be incorrect.

For its part, the SICAV Group is inadequate under Rule 23 because the funds comprising the group have wholly failed to demonstrate their cohesiveness. Courts generally decline to appoint as co-lead plaintiffs groups of investors who have "made no showing of former ties or current cohesion." *In re Netflix, Inc., Sec. Litig.*, No. 12-0225 SC, No. 12-1030 LHK, 2012 WL 149617, at *4 (N.D. Cal. Apr. 27, 2012). Here, the two SICAVs, which in turn are purportedly

3

composed of a total of seven distinct "compartments" or "sub-funds" (*see generally* Dkt. Nos. 21-4; 21-5), have neither attested to a pre-litigation relationship nor made any showing whatsoever that they are prepared to coordinate their efforts to jointly fulfill their responsibilities as Co-Lead Plaintiffs. Indeed, there is no indication in the SICAV Group's motion papers that the C+F and Universal funds so much as know of one another's existence. In striking contrast, the two other investor groups seeking appointment in this litigation—the Funds and the Deka-CDPQ Group— both submitted robust Joint Declarations demonstrating their cohesiveness and their respective members' willingness to move jointly as lead plaintiff. *See generally* Dkt. No. 17-4; Dkt. No. 19-4. The SICAV Group's conspicuous failure in this regard renders its adequacy proffer virtually nonexistent, thus falling well short of even the *prima facie* adequacy showing that the PSLRA requires at this stage.

**Second**, in addition to being inadequate under Rule 23, SWIB is also atypical because it routinely sold Nike stock short during the Class Period, meaning that it traded in the expectation that Nike shares would decline, rather than appreciate, in value. Courts understandably decline to appoint short sellers as class representatives in PSLRA actions, finding that their bets against the Company generally render them atypical of the classes that they seek to represent. *In re Critical Path*, 156 F. Supp. 2d 1102, 1110 (N.D. Cal. 2001); *Isaacs v. Musk*, Nos. 18-cv-04865-EMC *et al.*, 2018 U.S. Dist. LEXIS 200717, at \*12-13 (N.D. Cal. Nov. 27, 2018); *Weisz v. Calpine Corp.*, No. C 02-1200 SBA, 2002 U.S. Dist. LEXIS 27831, at \*28 (N.D. Cal. Aug. 15, 2002). Here, during the Class Period, SWIB maintained an investment account that ***exclusively*** short sold Nike stock during the Class Period, cumulatively selling short 340,254 shares of Nike stock with a total value of ***$38,647,255***. This unorthodox trading may raise questions as to the recoverability of SWIB's investment losses at a later stage of this litigation.

4

***Third***, both Deka and the SICAV Group are further ineligible for appointment because their failure to establish standing to pursue fraud claims in this litigation subject them to disqualifying unique defenses. "The PSLRA . . . provides that we ask simply whether [a movant] is likely to be 'subject to' the unique defense . . . ; we do not have to determine that the defense is likely to succeed." *In re Bally Total Fitness Sec. Litig.*, Nos. 04 C 3530 *et al.*, 2005 U.S. Dist. LEXIS 6243, at *19 (N.D. Ill. Mar. 15, 2005). Deka acknowledges in its motion papers that it is merely the investment manager for the 42 distinct funds referenced in its Certification (the "Deka Funds") and ***not*** the beneficial owner of the securities at issue in this litigation, yet has failed to submit any management agreement(s) to support its cursory assertion that it is empowered to litigate on behalf of the Deka Funds. Meanwhile, the SICAV Group is a confounding assemblage of seven "compartments or sub-funds" (*see* Dkt. No. 21-4 at 2 ¶ 7; Dkt. No. 21-5 at 1 ¶ 5) that lack legal personality or their own, with two SICAVs who purportedly do have legal personality pursuing claims on their behalf, whose affairs in turn are managed or directed by somewhere between one and three asset management companies whose identities are only referenced in passing in the SICAV Funds' motion papers. The Byzantine composition of the SICAV Group virtually ensures that questions surrounding its standing—that is, questions unique to the SICAV Group and irrelevant to most Class members—will be intensely litigated, at the expense of the SICAV Group's ability to focus on the prosecution of the Class's fraud claims.

The foregoing issues more than suffice to disqualify the competing movants from consideration as Lead Plaintiff in this litigation. To the extent that the Court considers that additional information would be helpful in determining which movant satisfies the PSLRA's "most adequate plaintiff" criteria, then the Funds respectfully request limited discovery into SWIB's short-selling, Deka's standing, and the errors in CDPQ's motion papers, as permitted under the

PSLRA.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iv) (a court may order "discovery relating to whether [a movant] is the most adequate plaintiff" if another lead plaintiff movant has demonstrated "a reasonable basis for a finding that [a movant is] incapable of adequately representing the class.").

Accordingly, for the reasons set forth herein and in its moving brief (Dkt. No. 16), the Funds respectfully submit that the Court should grant their motion in its entirety and deny the competing motions of CDPQ and Deka, the SWIB, and the SICAV Group.

## ARGUMENT

### A.    THE COURT SHOULD APPOINT THE FUNDS AS LEAD PLAINTIFFS

The PSLRA creates a strong presumption that the Lead Plaintiff is the movant or group of movants that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  The movant that has the largest financial interest must make a *prima facie* showing of typicality and adequacy within the meaning of Rule 23.  *Hessefort v. Super Micro Comput., Inc.*, 317 F. Supp. 3d 1056, 1060-01 (N.D. Cal. 2018); *Bao v. SolarCity Corp.*, No. 14-cv-01435-BLF, 2014 U.S. Dist. LEXIS 111869, at *9 (N.D. Cal. Aug. 11, 2014).  Once this presumption is triggered, it may be rebutted only upon proof that the presumptive Lead Plaintiff will not fairly represent the interests of the Class.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  Here, the most adequate class representatives are the Funds.

#### 1.    The Funds Have the Largest Financial Interest of Any Eligible Candidate

The PSLRA requires the court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii).  For the purposes of PSLRA lead plaintiff appointment, courts in this Judicial District and the Ninth Circuit generally equate financial interest with monetary loss.  *See*, *e.g.*, *Deering*, 2014 U.S. Dist. LEXIS 140766, at *23 (finding "[d]istrict

6

courts have generally equated financial interest with actual economic losses suffered," and determining presumptive lead plaintiff by comparing losses); *Computerized Thermal Imaging*, 2002 U.S. Dist. LEXIS 18515, at *2 (finding "the court is to compare the financial stakes of the various candidates for lead plaintiff . . . and decide who has the most to gain from the lawsuit," and determining presumptive lead plaintiff by comparing movants' damages); *Nicolow v. Hewlett Packard Co.*, Nos. 12-05980 CRB *et al.*, 2013 U.S. Dist. LEXIS 29876, at *18-19 (N.D. Cal. Mar. 4, 2013); *Knox v. Yingli Green Energy Holding Co.*, 136 F. Supp. 3d 1159, 1163 (C.D. Cal. 2015).

Here, the Funds have incurred aggregate investment losses of more than ***$26.57 million*** in connection with Nike's alleged fraud.  While both the Deka-CDPQ Group and SWIB claim to have incurred larger investment losses than the Funds, both of these competing movants are inadequate and atypical under Rule 23, as well as subject to disqualifying unique defenses, and thus ineligible for appointment as Lead Plaintiff irrespective of the quantum of their financial interests.  The Funds are the eligible Lead Plaintiff candidates with the largest financial interest in the relief sought by the Class in this litigation.

### 2.     The Funds Satisfy the Requirements of Rule 23

The Funds also readily satisfy the typicality and adequacy requirements of Rule 23.  In appointing a lead plaintiff, the Court must determine whether the movant has made a *prima facie* showing of typicality and adequacy.  *Hessefort*, 317 F. Supp. 3d at 1060-01; *SolarCity Corp.*, 2014 U.S. Dist. LEXIS 111869, at *9; *see also Deering*, 2014 U.S. Dist. LEXIS 140766, at *29 ("[P]laintiffs . . . present evidence that disputes the lead plaintiff's prima facie showing of typicality and adequacy.").

First, the Funds easily satisfy the typicality requirement of Rule 23.  The Funds' claims are typical of those of other Class members because, like other Class members, the Funds purchased

Nike Class B common stock during the Class Period and were harmed by the misrepresentations and/or omissions that form the basis of the fraud alleged in the Consolidated Action.  The Funds' claims are thus typical of the Class.  *Richardson v. TVIA, Inc.*, No. C-06-06304 RMW, 2007 U.S. Dist. LEXIS 28406, at *16 (N.D. Cal. Apr. 16, 2007).

Second, the Funds have also robustly demonstrated their adequacy to serve as Lead Plaintiff in this Consolidated Action.  As set forth *supra*, the Funds have an enormous financial interest in the outcome of this litigation—specifically, their combined loss of more than *$26.57 million* as a result of the alleged fraud—that will ensure their vigorous and adequate prosecution of the Class's claims.  *Staton*, 327 F.3d at 957.  Further, the Funds have no conflicts with other Class members.  To the contrary, the Funds' interests are perfectly aligned with the Class's interest in maximizing a recovery for the Class due to the alleged fraud in this Consolidated Action.  *Id.*

Third, the Funds comprise a small and cohesive investor group of the type expressly permitted by the PSLRA and routinely appointed to serve as lead plaintiff in PSLRA actions.  In *China Agritech, Inc. v. Resh*, _ U.S. _, 138 S. Ct. 1800, 1807 n.3 (2018), the Supreme Court affirmed the propriety of appointing such groups as lead plaintiff, finding that "[d]istrict courts often permit aggregation of plaintiffs into plaintiff groups."  More recently, in *Mersho v. United States Dist. Court*, 6 F.4th 891, 899 (9th Cir. 2021), the Ninth Circuit Court of Appeals likewise held that "the [PSLRA] expressly allows a 'group of persons' to move for appointment" as lead plaintiff.  *See also Miami Police Relief & Pension Fund v. Fusion-io, Inc.*, No. 13-CV-05368-LHK, 2014 U.S. Dist. LEXIS 80141, at *20 (N.D. Cal. June 10, 2014) ("Small, cohesive groups . . . are routinely appointed as lead plaintiff in securities actions when they have shown their ability to manage the litigation effective in the interests of the class without undue influence of counsel.").  The Funds have submitted a detailed Joint Declaration attesting to, *inter alia*, their backgrounds,

8

their experience serving as Lead Plaintiff in prior PSLRA actions, their understanding of the responsibilities of a lead plaintiff pursuant to the PSLRA, their decision to seek appointment jointly as Lead Plaintiffs, and the steps that they are prepared to take to cooperatively prosecute this litigation on behalf of the class. *See generally* Dkt. No. 17-4. Courts routinely appoint investor groups who have made comparable showings. *See, e.g.*, *Xu v. FibroGen, Inc.*, No. 21-cv-02623-EMC, 2021 U.S. Dist. LEXIS 164034, at *23-24 (N.D. Cal. Aug. 30, 2021) (appointing group of sophisticated institutional investors as Lead Plaintiffs, considering *inter alia* group's submission of detailed Joint Declaration in assessing adequacy); *McCracken v. Edwards Lifesciences Corp.*, Nos. 8:13-CV-1463-JLS (RNBx) *et al.*, 2014 U.S. Dist. LEXIS 2147, at *12-13 (C.D. Cal. Jan. 8, 2014) (same).

Fourth, the Funds have already demonstrated their adequacy by serving as Lead Plaintiffs in other securities class actions. For example, Meitav is currently serving or has recently served as Lead Plaintiff or Co-Lead Plaintiff in the PSLRA actions *Arora v. HDFC Bank Ltd.*, 2:20-cv-04140 (E.D.N.Y.), *Meitav Dash Provident Funds and Pension Ltd. v. Spirit Aerosystems Holdings, Inc.*, 4:20-cv-00054 (N.D. Okla.), *In re Mylan N.V. Securities Litigation*, 1:16-cv-07926 (S.D.N.Y.) ("*Mylan*"), and *Roofer's Pension Fund v. Papa*, 2:16-cv-02805 (D.N.J.). *See* Dkt. No. 17-4 ¶ 2. The Teachers Funds, for their part, are currently serving as Co-Lead Plaintiffs along with other institutional investors in the PSLRA action *Genesee County Employees Retirement System v. Kornit Digital Ltd. et al.*, 2:23-cv-00888 (D.N.J.). *Id.* ¶ 3. Finally, the Menora Funds are serving as Lead Plaintiffs or Co-Lead Plaintiff in the PSLRA actions *Mylan*, *Plumbers and Steamfitters Local 60 Pension Trust v. Meta Platforms, Inc. et al*, 4:22-cv-01470 (N.D. Cal.), *AMI - Government Employees Provident Fund Management Company Ltd. v. Alphabet Inc. et al.*, 3:23-cv-01186 (N.D. Cal.), *In re Adobe Inc. Securities Litigation*, 1:23-cv-09260 (S.D.N.Y.), and *In re*

*Perion Network Ltd. Sec. Litig.*, 1:24-cv-2860 (S.D.N.Y.). *Id.* ¶ 4. Previously, the Menora Funds have served as Lead Plaintiffs in the PSLRA action *In re Comverse Tech. Inc. Sec. Litig.*, 06-cv-1825 (E.D.NY.), where they achieved a $225 million settlement on behalf of the Class. *Id.* By virtue of these prior experiences, the Funds' membership includes experienced litigants—significantly, with respect to serving as class representatives in other PSLRA actions—and their adequacy in this regard cannot reasonably be questioned.

Fifth, the Funds have further demonstrated their adequacy by selecting qualified counsel, Pomerantz, with substantial experience litigating securities class actions. *See* Dkt. No. 17-5. Pomerantz recently secured a recovery of $3 billion on behalf of investors in the securities of Petróleo Brasileiro S.A. — Petrobras, the largest class action settlement in a decade and the largest settlement ever in a class action involving a foreign issuer. *See id.* Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 06-CV-1825 (E.D.N.Y.), in June 2010, and the $90 million settlement in *Klein v. Altria Group, Inc. et al*, No. 3:20-cv-00075 (E.D. Va.) in March 2022. *See id.*

\* \* \* \* \*

Because the Funds have the largest financial interest of any eligible Lead Plaintiff applicant in the relief sought by the Class and otherwise satisfy the requirements of Rule 23, they are the presumptive "most adequate plaintiffs" of the Class within the meaning of the PSLRA.

To overcome the strong presumption entitling the Funds to appointment as Lead Plaintiffs, the PSLRA requires "***proof***" that the presumptive Lead Plaintiff is subject to unique defenses or otherwise inadequate to represent the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added).

No such proof exists with respect to the Funds and any suggestions to the contrary should be rejected as mere speculation.

**B.    THE COMPETING MOTIONS SHOULD BE DENIED**

**1.    The Deka-CDPQ Group, SWIB and the SICAV Group Are Inadequate Under Rule 23**

Irrespective of their claimed financial interests in this litigation, the Deka-CDPG Group, SWIB, and the SICAV Group are ineligible for appointment as Lead Plaintiff because they fail to satisfy the adequacy requirement of Rule 23.  The Rule 23 adequacy inquiry asks, *inter alia*, whether a movant is ready and willing to "prosecute the action vigorously on behalf of the class[.]." *Staton*, 327 F.3d at 957 (citations omitted).  Here, for the reasons discussed below, none of these three movants has made the requisite Rule 23 adequacy showing.

**a.    The Deka-CDPQ Group's Motion Papers Contain Significant Errors**

The Deka-CDPQ Group is inadequate under Rule 23 because both members of the group submitted papers containing errors that call their readiness to serve as Class representatives into question.  Courts routinely deny Lead Plaintiff motions on the basis of such errors, as they raise questions regarding a movant's fitness to supervise a complex securities class action.  *See, e.g.*, *Rodriguez v. DraftKings Inc.*, 21 Civ. 5739 (PAE) *et al.*, 2021 WL 5282006, at *9 (S.D.N.Y. Nov. 12, 2021) (denying motion, finding that errors in movant's submission "call[] into doubt [movant's] adequacy to be lead plaintiff.") (quoting *Plaut v. Goldman Sachs Grp., Inc.*, No. 18 Civ. 12084 (VSB), 2019 WL 4512774, at *5 (S.D.N.Y. Sept. 19, 2019); *In re Vonage Initial Pub. Offering Secs. Litig.*, 2007 U.S. Dist. LEXIS 66258, at *23, *28 n.8 (denying motion by movant whose certification "contained incorrect trading data and loss calculations," finding it to be "plagued with misinformation"); *In re Boeing Co. Aircraft Sec. Litig.*, 2020 U.S. Dist. LEXIS 15012, at *16-17  (denying motion by movants where errors in loss calculations demonstrated that

11

movants either knowingly submitted incorrect information or failed to review their submissions before filing).

Deka's motion papers contain errors relating to its accounting for 10,000 shares that were purportedly transferred into certain Deka accounts (rather than having been purchased by those accounts) during the Class Period.  Both Deka's Certification (Dkt. No. 19-1) and damages analysis (19-2) identify a total of four transactions as transfers of shares into three different accounts, as detailed below:

| Date | Account | Number of Shares Transferred | Price |
|---|---|---|---|
| 9/30/2021 | WertpapierStrategiePortfolio MA | 3,108 | $145.23 |
| 9/30/2021 | WertpapierStrategiePortfolio MA | 1,670 | $145.23 |
| 6/30/2022 | SHC-Masterfonds | 3,000 | $102.20 |
| 12/30/2022 | Kinderdorf-Fonds | 4,000 | $117.01 |

While these shares may have been *transferred* into the accounts at issue on the dates recorded, Deka provides no information on the actual date—or dates—on which the transferred shares were originally *purchased* by the transferor account.  This dearth of information casts serious doubt on the accuracy of Deka's submissions.  The transferred shares likely comprise a combination of shares purchased prior to and/or during the Class Period at various different prices.  For example, there is no reason to simply assume, for damages-calculation purposes, that the 3,000 shares transferred into the SHC-Masterfonds account on June 30, 2022 were all purchased at the same price.  As such, some explanation is clearly necessary as to why Deka has recorded $102.20 as the purchase price of *all* of these shares, but Deka has provided no such explanation.  Conspicuously, however, the price recorded for the transferred shares falls within the range of prices within which Nike stock traded on the NYSE on each relevant *transfer* date.  This strongly

12

suggests that the prices recorded in Deka's motion papers were *not*, in fact, the prices at which the shares were actually acquired, but rather reflects Deka using an unexplained methodology involving then-current market prices to value those transferred shares, rather than the prices at which the shares were actually purchased.

The fact that certain of the transferred shares may have been purchased prior to the Class Period adds another wrinkle. The theory of the fraud in this litigation is that Class members, including Deka, purchased Nike stock at prices artificially inflated by the Defendants' false and/or misleading statements *during the Class Period*—that is, during the period of time during which the Defendants are alleged to have made the false and/or misleading statements at issue. *See*, *e.g.*, Dkt. No. 1 ¶¶ 1, 11. There is thus no theory of damages in this litigation that would permit investors to seek recovery of losses incurred in connection with shares purchased *prior* to the Class Period, because such shares are *not* alleged to have been purchased at prices artificially inflated by the Defendants' alleged fraud—which, definitionally, only occurred *during* the Class Period. Accordingly, any shares purchased prior to the Class Period must be excluded from Deka's damages analysis. The fact that Deka has provided no information whatsoever about the transferred shares, such as their purchase date or price, leaves open the possibility that some or even all of these shares were acquired prior to the Class Period and were only transferred between Deka accounts during the Class Period. If so, then Deka's inclusion of losses incurred in connection with these shares in its damages analysis is clearly in error. As a matter of logic, either Deka's Certification is erroneous for failing to include the purchase price for these transferred shares, or its loss calculations are inaccurate. Neither scenario portends well for Deka's ability to act as Lead Plaintiff for the putative class.

13

CDPQ's motion papers contain a demonstrable error regarding the classification of at least one transaction. The schedule of Class Period transactions appended to CDPQ's Certification records a *sale* of 100,000 shares on November 17, 2022 at a price of $105.36 per share. *See* Dkt. No. 19-1 at *7. However, CDPQ's damages analysis records this same transaction as a *transfer*. *See* Dkt. No. 19-2 at *5.

| Transaction Type | Trade Date | Shares | Share Price | Cost/Proceeds |
|---|---|---|---|---|
| Sales | 08/08/22 | (1,576) | $115.06 | $181,339.60 |
| Sales | 08/09/22 | (36,714) | $109.96 | $4,036,961.30 |
| Sales | 08/31/22 | (38,428) | $106.45 | $4,090,660.60 |
| Purchases | 09/26/22 | 21,100 | $96.06 | ($2,026,866.00) |
| Purchases | 09/30/22 | 78,654 | $83.12 | ($6,537,720.48) |
| Sales | 10/20/22 | (10,600) | $86.83 | $920,398.00 |
| Sales | 10/31/22 | (9,592) | $92.79 | $890,020.58 |
| Sales | 11/17/22 | (100,000) | $105.36 | $10,536,000.00 |
| Purchases | 11/18/22 | 55,400 | $105.42 | ($5,840,268.00) |

*Transaction schedule appended to CDPQ's certification (Dkt. No. 20-1 at 7)*

| Transaction Type | Trade Date | Shares | Price Per Share |
|---|---|---|---|
| Purchase | 9/30/2022 | 78,654 | $83.1200 |
| Sale | 10/20/2022 | (10,600) | $86.8300 |
| Sale | 10/31/2022 | (9,592) | $92.7878 |
| Transfer out | 11/17/2022 | (100,000) | $105.3600 |
| Purchase | 11/18/2022 | 55,400 | $105.4200 |

*CDPQ's damages analysis (Dkt. No. 20-2 at *5)*

The inconsistency between the Certification and loss chart necessarily means that at least one of these documents is incorrect. The transaction at issue was either a sale *or* a transfer—it cannot have been both. If CDPQ's damages analysis is correct (*i.e.*, the transaction was a transfer, not a sale), then CDPQ's Certification, attested to under penalty of perjury, is facially false. On the other hand, if CDPQ's Certification is correct (*i.e.*, the transaction was a sale, not a transfer), then CDPQ's damages analysis incorrectly accounted for a transaction of 100,000 Nike shares—a significant volume. The presence of such an error raises questions as to whether CDPQ thoroughly reviewed the Deka-CDPQ Group's motion papers for accuracy before authorizing their filing.

The Court should not downplay the significance of the foregoing errors. The Lead Plaintiff in this litigation will have a fiduciary obligation to the Class to vigorously and competently prosecute the claims of defrauded Nike investors, which will include, *inter alia*, undertaking a detailed review of all significant pleadings and closely supervising the efforts of counsel. The errors at issue cumulatively implicate transactions involving 110,000 shares of Nike stock—not a trivial amount—and multiple accounts, on multiple dates, and call into question whether the Deka-

14

CDPQ Group has even accurately calculated its own financial exposure to Defendant's alleged fraud. The Funds respectfully submit that such errors call into question whether Deka and CDPQ are sufficiently prepared to shoulder the responsibilities of a Lead Plaintiff appointed pursuant to the PSLRA.

### b.      The SICAV Group Is an Inadequate Movant Group

The SICAV Group is inadequate under Rule 23 because it has failed to demonstrate any prior relationship between its members or any *raison d'être* beyond aggregating their losses to secure the statute's "largest financial interest" presumption. Courts in the Ninth Circuit generally decline to appoint movant groups who have "made no showing of former ties or current cohesion." *Netflix*, 2012 WL 149617, at *4. *See also Niederklein v. PCS Edventures!.com, Inc.*, No. 1:10-cv-00479-EJL-CWD., 2011 WL 759553, at *6-8 (D. Idaho Feb. 24, 2011) (finding lead plaintiff movant group inadequate for "fail[ing] to present any evidence of cohesion, in either its materials in support of its motion or during the hearing, to justify its members' relationship as a group"); *Haideri v. Jumei Int'l Holding Limited*, No. 20-cv-02751-EMC, 2020 WL 5291872, at *5 (N.D. Cal. Sept. 4, 2020) (denying motion by movant group, citing "lack of involvement" and lack of information about "how they would cooperate and manage the litigation given their status as a group.").

Here, the SICAV Group has made no showing whatsoever of any relationship between the two funds comprising its membership—C+F and Universal—predating this litigation. The group's motion papers contain a statement (unsworn, by its counsel) to the effect that "Capfi/Cadelam and Cadelux are the related management companies of the respective and related SICAVs, all of which are under common ownership and control," (Dkt. No. 20 at *3), but this convoluted and vague phrasing tells the Court effectively nothing. The words "respective and related" suggests that one

15

or more management company may exercise "ownership and control" over the C+F funds, while a different management company (or companies) altogether controls the Universal funds. Indeed, every indication is that the C+F funds and the Universal funds have no relation to one another whatsoever. To wit, the C+F funds are organized under Belgian law (*see* Dkt. No. 21-4 at 2 ¶ 6.), while the Universal funds are organized under Luxembourgian law (*see* Dkt. No. 21-5 at 1 ¶ 4). Likewise, their respective Certifications were signed by different individuals—in C+F's case, individuals named Maria A. Chris and Philippe D. Gregory (*see* Dkt. No. 21-2 at *3), and in Universal's case, one Philippe Peiffer (*see* Dkt. No. 21-2 at *10). All of these facts further support the conclusion that C+F and Universal have no pre-litigation relationship.

While the SICAV Group members might have demonstrated cohesiveness even absent a pre-litigation relationship, they have not done so. For example, the SICAV Group's members have not attested to any communications having taken place between these apparently unrelated funds, and/or what steps C+F and Universal intend to take to jointly shoulder the responsibilities of Lead Plaintiffs. Strikingly, the SICAV Group has not even shown that the C+F and Universal funds are even aware of one another's existence, let alone that they stand ready to prosecute a complex securities class action together. These glaring omissions stand in stark contrast with the detailed Joint Declaration submitted by the Funds (as discussed *supra* at p. 9-10). *See*, *e.g.*, *Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-2204-PHXFJM, 2008 WL 942273, at *5 (D. Ariz. Apr. 7, 2008) (finding that movant group that did not submit a joint declaration lacked cohesion and was inadequate under Rule 23); *Niederklein*, 2011 WL 759553, at *6-8 (finding lead plaintiff movant group inadequate for "fail[ing] to present any evidence of cohesion, in either its materials in support of its motion or during the hearing, to justify its members' relationship as a group"); *In re Tarragon Corp. Sec. Litig.*, 2007 WL 4302732, at *1-2 (S.D.N.Y. Dec. 6, 2007) (rejecting two

16

groups seeking appointment as lead plaintiff where neither had "proven its own existence. Other than that each of the two groups is represented by a set of lawyers, no information is provided. There is no evidence that the members of these groups have ever communicated with other members of their respective group or will do so in the future").

### 2.     SWIB's Short-Selling of Nike Stock Makes it Atypical Under Rule 23

In addition to being inadequate under Rule 23, SWIB is likewise atypical under Rule 23. The typicality assessment asks, *inter alia*, whether a would-be class representative's injury arises from "conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *TVIA*, 2007 U.S. Dist. LEXIS 28406, at \*16 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).  Here, the fact that SWIB was a habitual short seller of Nike stock during the Class Period plainly differentiates it from other Class members in this litigation, thus rendering SWIB highly atypical of the Class it seeks to represent.

Unlike a typical investor, a short seller is an investor who sells a security with the intention of repurchasing it later at a lower price.  Specifically, a short-selling investor first borrows the securities at issue from a third party, sells those securities when their price is high, re-buys those securities on the market when their price has fallen, then returns the securities to the lending party and pockets the difference between its original (higher) sale price and the subsequent (lower) re-purchase price.  Accordingly, while a typical investor purchases a security with the expectation that its value will go up, a short seller thus trades in the expectation that a security's value will go down—in effect, betting ***against*** the company.

Thus, for obvious reasons, courts routinely decline to appoint short sellers as lead plaintiffs in PSLRA actions for failure to satisfy the typicality requirement of Rule 23, because "[s]hort sales raise the question of whether the seller was actually relying on the market price, and the class is

17

not served by its representative coming under such scrutiny." *Critical Path*, 156 F. Supp. 2d at 1110; *Isaacs*, 2018 U.S. Dist. LEXIS 200717, at \*12-13 ("[T]he Court has concerns regarding the adequacy or typicality of [movant] because it is a short seller[.]"); *Weisz*, 2002 U.S. Dist. LEXIS 27831, at \*28 (finding movant to be "disqualified from serving as a lead plaintiff by virtue of the fact that he admittedly sold Calpine stock 'short' during the Class Period."); *Marcus v. J.C. Penney Co.*, No. 6:13-CV-736, 2014 U.S. Dist. LEXIS 197529, at \*20-21 (E.D. Tex. Feb. 28, 2014) (finding short selling to be an "atypical trading practice" and holding short seller to be "subject to unique defenses and flaws that render him inadequate to serve as lead plaintiff").

Here, SWIB's submissions reflect that during the Class Period, it maintained a separate investment account that *exclusively* took short positions with respect to Nike stock. In total, during the Class Period, SWIB sold short 340,254 shares of Nike stock, with a total value of *$38,647,255*. During the Class Period, SWIB maintained a short position on no fewer than 890 days—that is, comprising 74% of the 1,197-day Class Period. The stock chart below illustrates the extent to which SWIB was actively shorting Nike stock during the Class Period:



Nike, Inc.
3/19/21–6/27/24

18

This quantum of short sales illustrates that one of SWIB's investment accounts was consistently betting *against* the Company during the Class Period, by investing in the expectation that its stock price would fall.  By contrast, the Class members whom SWIB seeks to represent invested in Nike, in reliance upon the Defendants' positive statements about the Company's operations, in the simple expectation that the Company's stock price would increase, to their benefit.  Moreover, the fact that one of SWIB's accounts exclusively shorted Nike stock, while another solely took long positions, creates a likelihood that different investment managers were responsible for the respective accounts—that is, that different managers were separately pursuing conflicting investment strategies on SWIB's behalf during the Class Period.   These conflicting strategies will almost certainly come into sharp focus during class certification and merits discovery.  Such discovery is likely to reveal that one of SWIB's investment managers did not credit Nike's positive statements during the Class Period, in contrast to the rest of the putative Class members and the allegations against the Company, and believed that Nike's stock was likely to fall once the truth was revealed.  This only further sets SWIB apart from most other Class members, who presumably did not simultaneously employ different investment managers using divergent investing strategies.  Indeed, the fact that SWIB appears to have two separate investment managers with conflicting views on the Company's prospects will raise a plethora of questions regarding its reliance on the Company's Class Period statements.  As such, SWIB's prolific short selling thus clearly makes it an atypical Class member.

**3.     Deka and the SICAV Group Are Subject to Unique Defenses Related to Their Standing**

The PSLRA precludes the appointment of a Lead Plaintiff who "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb).  "The PSLRA . . . provides that we ask simply whether [a movant] is

19

likely to be 'subject to' the unique defense . . . ; we do not have to determine that the defense is likely to succeed." *Bally Total Fitness*, 2005 U.S. Dist. LEXIS 6243, at \*19. *See also In re Surebeam Corp. Secs. Litig.*, No. 03 CV 1721 JM (POR), 2003 U.S. Dist. LEXIS 25022, at \*22 (S.D. Cal. Jan. 5, 2004) (denying lead plaintiff motion upon "find[ing] that there is at least a potential that [movant] will be subject to unique defenses and will not fairly and adequately protect the interests of the class."); *Schaffer v. Horizon Pharma PLC*, 16-CV-1763 (JMF), 2016 U.S. Dist. LEXIS 83175, at \*11 (S.D.N.Y. June 27, 2016) ("'proof' of a non-speculative risk that the movant will not be adequate" sufficient to "rebut the presumption in favor of the movant with the greatest financial loss"); *In re Enron Corp., Sec. Litig.*, 206 F.R.D. 427, 456 (S.D. Tex. 2002) (denying motion for lead plaintiff appointment due to "information [that] raises more than the mere specter of . . . unique defenses"). Here, as discussed below, both Deka and the SICAV Group are subject to such disqualifying unique defenses because neither movant has established their standing to pursue fraud claims against the Defendants in this litigation.

"[S]tanding requires that the plaintiff 'personally has suffered some actual or threatened injury.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2015) (quoting *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982)). "[T]he injury must affect the plaintiff in a personal and individual way." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n. 1 (1992). In a securities fraud action under Section 10(b) of the Exchange Act, the injury-in-fact requirement is satisfied when the plaintiff was a beneficial owner of the securities at issue, and engaged in a purchase or sale, during the relevant period during which misconduct allegedly occurred. *See, e.g.*, *In re Bank of America Corp. Sec., Derivative and ERISA Litig.*, No. 09-MD-2058, 2011 WL 3211472, at \*12 (S.D.N.Y. 2011). Neither Deka nor the SICAV Group has established that the parties seeking appointment as Lead Plaintiff in this

20

litigation are in fact the beneficial owners of the securities at issue—that is, the parties who were actually harmed by Defendants' alleged fraud—or are otherwise entitled to pursue fraud claims in this litigation.

Deka acknowledges in its motion papers that it is ***not*** the beneficial owner of the securities at issue.  Rather, it merely "manages the investments of the DEKA Funds"—that is, the 42 various funds referenced in Deka's Certification.  *See* Dkt. No. 19-1 at *11; Dkt. No. 20-4 ¶¶ 1-2.  Deka asserts that in its capacity as the Deka Funds' investment manager, "[u]nder German law, Deka has the right and obligation to bring claims in its own name to recover losses incurred by the . . . DEKA Funds."  Dkt. No. 20-4 ¶ 2.

As a threshold matter, Article III standing is a question of ***U.S.*** law, making Deka's attestations about German law beside the point.  *See*, *e.g.*, *NextEngine Inc. v. NextEngine, Inc.*, No. 2:19-CV-00249-AB (MAA), 2021 WL 4026759, at *8 (C.D. Cal. Sept. 03, 2021) ("Whether a party has constitutional standing to 'assert the jurisdiction of a federal court is a question of federal law'") (quoting *Parallax Grp. Int'l, LLC v. Incstores.com, LLC*, No. 16-0929, 2017 WL 3017059, at *1 (C.D. Cal. Jan. 25, 2017)); *Schultz v. iGPS Co., LLC*, No. 10C71, 2011 WL 3651267, at *3 (N.D. Ill. Aug. 16, 2011) (same).  *See also Pfizer Inc. v. Elan Pharm. Research Corp.*, 812 F. Supp. 1352, 1370 n.23 (D. Del. 1993) ("Although the parties' rights and obligations under [an agreement] may be governed by German law, the question of standing to sue for patent infringement is a matter of United States Law."); *Afros, S.PA. v. Krauss-Maffei Corp.*, 671 F. Supp. 1402, 1442-46 (D. Del. 1987) (while contract interpretation was governed by foreign law, question of standing was a matter of U.S. law).

Under the U.S. securities laws, when an investment company, investment advisor, or asset manager brings suit in federal court, it has Article III standing to sue for injuries to customers who

21

are the beneficial owners of the securities at issue only if the company has "legal title to, or a proprietary interest in, the claim." *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 108 (2d Cir. 2008). The Article III standing doctrine is not satisfied if the company has simply "a power of attorney from its clients to bring th[e] lawsuit," but is not itself "the beneficial owner[ ] of the underlying securities." *Id*. at 103. *See generally CW Capital Asset Mgmt., LLC v. Chicago Properties, LLC*, 610 F.3d 497, 501 (7th Cir. 2010) (distinguishing, for standing purposes, between "an assignee" and "a mere attorney"); *Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 454 (3d Cir. 2018) (distinguishing an assignment of a claim from a power of attorney).

Under this standard, Deka has not established its standing to pursue claims on behalf of the Deka Funds. Deka's claim to have standing to pursue claims on behalf of the Deka Funds rests entirely on a few conclusory sentences in its Joint Declaration (by declarants who do not purport to be attorneys), attesting to what **German** law purportedly authorizes Deka to do on behalf of the Deka Funds. Yet Deka has submitted no constitutional documents or management agreements describing the nature of the Deka Funds or their relationship with Deka. *Cf. Olsen v. New York Cmty. Bancorp. Inc.*, 233 F.R.D. 101, 107 (E.D.N.Y. 2005) (finding investment manager to have standing where it proffered portion of client contract); Minute Entry, *Chow v. Archer-Daniels-Midland Company et al*, No. 1:24-cv-00634, ECF No. 41 (N.D. Ill. Jan 24, 2024) (appointing as lead plaintiff asset manager that established standing by submitting management agreement in support of opening motion); Order, *City of Miami General Employees' & Sanitation Employees' Retirement Trust v. Globe Life Inc., et al.*, No. 4:24-cv-00376, ECF No. 18 (E.D. Tex. Apr 30, 2024) (appointing as lead plaintiff asset manager that established standing by submitting management agreement in support of opening motion); Minute Entry, *KBC Asset Management NV*

22

*et al v. Discover Financial Services et al,* No. 1:23-cv-06788, ECF No. 61 (N.D. Ill. Sep 01, 2023) (appointing as lead plaintiff asset manager that established standing by submitting management agreement in support of opening motion). Absent such documentation, Deka plainly has not shown that its relationship with the Deka Funds gives it more than a mere "power of attorney" and would satisfy the specific requirements of Article III standing under U.S. law.

Further, while a narrow prudential exception to Article III's injury-in-fact requirement exists, Deka has neither invoked the prudential exception nor demonstrated that it would apply here. The prudential exception "permit[s] third-party standing where the plaintiff can demonstrate (1) a close relationship to the injured party and (2) a barrier to the injured party's ability to assert its own interests." *Huff,* 549 F.3d at 109. However, third-party standing is strongly disfavored, and thus narrowly construed and applied. "[T]he Supreme Court has made clear that it does 'not look favorably upon third-party standing' except in certain circumstances." *Green v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 56-57 (E.D.N.Y. 2017) (quoting *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004)). Here, the few sparse sentences in the Deka-CDPQ Group's Joint Declaration obviously fall short of the robust showing necessary to demonstrate that the prudential exception permits Deka to pursue claims on behalf of the Deka Funds in this litigation.

Deka's failure at the outset of this litigation either to submit documentation sufficient to establish its standing, or to demonstrate that the prudential exception to Article III's injury-in-face requirement applies, is troubling, given that the Defendants are virtually guaranteed to demand such proof of Deka's standing if this lawsuit survives a motion to dismiss and proceeds to discovery. At the very least, the Defendants will vigorously litigate the question of Deka's standing, thereby distracting Deka from the prosecution of the Class's fraud claims. In the worst-case scenario, if Deka is subsequently found ***not*** to have standing to pursue fraud claims in this

23

lawsuit, then the Class's claims risk dismissal for esoteric reasons unique to Deka and irrelevant to the overwhelming majority of Class members. There is simply no reason to subject the Class's claims to such a foreseeable risk.

The SICAV Group fares even worse than Deka. The group consists of a total of seven members: the four C+F funds and the three Universal entities. The group's motion papers state that each of the seven constituent funds is a "compartment or sub-fund" of a UCITS SICAV—that is, C+F and Universal, respectively—"treated as a separate entity having its own name, funding, capital gains, losses, and expenses," although lacking "a legal personality distinct from the UCITS SICAV." *See* Dkt. No. 21-4 ¶ 9; Dkt. No. 21-5 ¶ 7. The SICAV Group has also submitted two declarations—one by a Belgian attorney, Johan Verbist, "provid[ing] an opinion regarding the legal status and structure of [the] C+F [funds] under Belgian Law" (the "Verbist Declaration") (Dkt. No. 21-4 ¶ 2), and one by a Luxembourgian attorney, Cathy Arendt, providing the same regarding the Universal funds under Luxembourgian law (the "Arendt Declaration") (Dkt. No. 21-5 ¶ 2). The Verbist Declaration states that "C+F [S.A.] is a Belgian public limited company, qualifying as a [SICAV]" that "has a legal personality and can be named as a plaintiff or a defendant in a legal action." Dkt. No. 21-4 ¶ 6. The Arendt Declaration contains a substantively identical attestation regarding the legal personality of Universal Invest under Luxembourgian law. Dkt. No. 21-5 ¶ 4. The Verbist and Arendt Declarations state, respectively, that each of C+F and Universal Invest "has the legal personality" and "acts on behalf of" its respective compartments or sub-funds—in the case of C+F, four sub-funds (C+F Global, C+F Global Route, C+F Very Low and C+F World Equities); and in the case of Universal, three sub-funds (Universal Invest Dynamic, Universal Invest High, and Universal Invest Medium). *See* Dkt. No. 21-4 ¶¶ 2, 10; Dkt. No. 21-5 ¶¶ 2-8.

24

In the first instance, the SICAV Group's reliance on the Verbist and Arendt Declarations, rather than constitutional documents of the entities comprising the SICAV Group, is a red flag.  If C+F and Universal Invest's standing to pursue claims in this litigation were so clear-cut, presumably it would have been simple enough to submit documentation specific to these entities describing their relationship between the SICAVs and their respective compartments, including plain statements of the former's authority to litigate on behalf of the latter.  Instead, C+F and Universal Invest rely on expert declarations that consist largely of generalized statements of Belgian and Luxembourgian law.  Neither Mr. Verbist nor Ms. Arendt purports to be an employee of or counsel to C+F or Universal, nor otherwise to having any involvement with either SICAV apart from providing their respective Declarations, or has attested to reviewing the relevant management agreements or constitutional documents underpinning the relationship between the SICAVs and respective sub-funds.  The SICAV Group's reliance on this type of generalized expert testimony at the outset of this litigation, merely to establish something as straightforward as its members' own standing, should not give the Court comfort.

Further, as discussed *supra* at p. 21 with reference to Deka's own standing proffer, standing under Article III of the U.S. Constitution is a question of U.S. law.  *See*, *e.g.*, *NextEngine*, 2021 WL 4026759, at *8; *iGPS*, 2011 WL 3651267, at *3.  The Funds thus respectfully submit that the attestations in the Verbist and Arendt Declarations regarding Belgian and Luxembourgian law cannot establish the SICAV Group's standing to pursue fraud claims in this Consolidated Action.

Indeed, reviewed alongside the SICAV Group's other motion papers, the Verbist and Arendt Declarations only further complicate the standing inquiry.  In its motion, the SICAV Group states that "Capfi/Cadelam and Cadelux are the related management companies of the respective and related SICAVs" and, in that capacity, "they direct the activities of the related SICAVs."  Yet

25

neither the Verbist nor the Arendt Declaration so much as mentions Capfi/Cadelam or Cadelux, let alone explains their role(s) relative to one another, to C+F, Universal, or to their respective "compartments or sub-funds".  Is Capfi/Cadelem one management company or two?  Do each of these management companies "direct the activities" of all of the SICAVs, or does each only direct the activities of certain of the SICAVs?  As set forth below, only Cadelux appears to have taken any role in this litigation (that is, by executing Universal's Certification).  What role, then, does Capfi/Cadelem play?  With these two or three management companies directing the activities of the two SICAVs, which in turn contain the seven "compartments or sub funds", which in turn purportedly own the underlying Nike securities at issue, granting the SICAV Group's motion would amount to appointing a Russian nesting doll as Lead Plaintiff.

The SICAV Group's Certifications raise further questions.  Neither C+F's or Universal's Certification provides any meaningful information about the identities or roles of the Certifications' respective declarants and signatories.  C+F's Certification is digitally signed by individuals named Maria A. Chris and Philippe D. Gregory, but does not explain who those signatories are; indicate which entity (*e.g.*, C+F, Capfi, Cadalem, Cadelux, or a different entity altogether) each works for; identify their respective titles, roles, or positions; or clearly state that these individuals and/or the entity with which they are associated have authority to bind C+F and enter into litigation on its behalf, let alone on what basis they have such authority.  *See generally* Dkt. No. 21-2.

Moreover, considered alongside the attestations in the Verbist and Arendt Declarations to the effect that each SICAV "has *the* legal personality"—that is, the sole relevant legal personality—"and acts on behalf of *each* respective compartment or sub-fund"—that is, as opposed to merely on behalf of *certain* of the compartments/sub-funds—the presence of *multiple*

26

unidentified signatories on one Certification raises even more questions about the SICAV Group's standing. The Universal Certification, meanwhile, is digitally signed by one Philippe Peiffer and includes an email address apparently indicating that Mr. Peiffer is associated with Cadelux in some capacity, but otherwise suffers from the same dearth of information as Universal's Certification, leaving it entirely unclear what position Mr. Peiffer occupies at Cadelux and why that gives him authority to execute Universal's Certification.

A plaintiff's standing is assessed "at the outset of the litigation." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). *See also McFalls v. Purdue*, No. 3:16-cv-2116-SI, 2018 WL 785866, at *8 (D. Or. Feb. 08, 2018) ("Article III standing is evaluated by considering the facts as they existed at the time of the commencement of the action."). Moreover, "[s]tanding . . . is measured from the time when a cause of action is filed, not from the time when a party corrects any defects in its initial pleading of that cause." *Narra v. Skyhop Techs., Inc.*, No. 23-cv-01587-PCP, 2023 WL 8108460, at *1039 n. 1 (N.D. Cal. Nov. 22, 2023). Here, neither Deka nor the SICAV Funds have established in their initial pleadings that they have standing to pursue fraud claims in this litigation—nor may they "correct[] any defects" by filing amended or subsequent submissions. *Id.* The appointment of either Deka or the SICAV Funds will subject the Class to the litigation of standing-related issues that would be unique to the Lead Plaintiff and irrelevant to most Class members.

## C. THE COURT SHOULD GRANT DISCOVERY INTO SWIB'S SHORT-SELLING, DEKA'S STANDING, AND THE ERRORS IN CDPQ'S MOTION PAPERS

The Funds respectfully request that the Court grant discovery into facts surrounding SWIB's short-selling, Deka's standing, and the errors in CDPQ's motion papers. The PSLRA permits this Court to order "discovery relating to whether [a movant] is the most adequate plaintiff" if another lead plaintiff movant has demonstrated "a reasonable basis for a finding that [a movant

27

is] incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iv).  *See also*

*Broadfoot v. Barrick Gold Corp.*, No. 17-cv-3507, 2017 WL 3738444, at *1 (S.D.N.Y. Aug. 9,

2017) (granting limited discovery where "there exists a potential that [a movant] is in a unique

position that would defeat typicality and adequacy"); *Rao v. Quorum Health Corp.,* 221 F. Supp.

3d 987, 990 (M.D. Tenn. 2016) (granting limited discovery to determine if movant "will

adequately represent the class and whether it is subject to any unique defenses").

Here, for the reasons discussed at length above, the Funds respectfully submit that the

Deka-CDPQ Group and SWIB are variously inadequate, atypical, and/or subject to various

disqualifying unique defenses for a litany of reasons.  To the extent that the Court believes

additional information would assist its "most adequate plaintiff" analysis pursuant to the PSLRA,

then the foregoing issues at a minimum demonstrate "a reasonable basis for finding that [these

competing movants] are incapable of adequately representing the class", such that discovery is

warranted.  The Funds thus respectfully request that the Court grant them the ability to serve

discovery into, *inter alia*:

- the identities and trading practices of SWIB's investment managers, in order to determine the significance of SWIB's extensive short-selling of Nike stock during the Class Period;

- the relationship between Deka and the Deka Funds, in order to assess questions surrounding Deka's standing to pursue claims in this litigation; and

- CDPQ's Class Period transaction data with respect to Nike stock, in order to identify the reason for the inconsistencies between CDPQ's Certification and damages analysis, as well as determine whether any other errors exist in CDPQ's motion papers.

Should the Court grant the Funds' request for discovery, the Funds further request that the

Court permit additional briefing to allow the movants to address any new information revealed in

the course of discovery.

* * * * *

28

As set forth above, three of the four movants before the Court are variously inadequate, atypical, and/or subject to unique defenses that render them incapable of adequately representing the Class in this litigation.  Only one movant, the Funds, is unburdened by any such issues.  Unlike the SICAV Group, the Funds have robustly demonstrated that they are prepared to work together to jointly shoulder the responsibilities of Lead Plaintiffs.  Unlike SWIB, the Funds did not set themselves apart from other Class members by short-selling Nike stock during the Class Period.  Unlike the Deka-CDPQ Group, the Funds have not demonstrated their inadequacy by submitting error-laden motion papers.  And unlike Deka and the SICAV Group, there is no question as to the Funds' standing to pursue fraud claims against the Defendants in this litigation.  Of the four competing movants before the Court, then, it is clear that only the Funds satisfy the PSLRA's criteria for appointment as Lead Plaintiff in the Consolidated Action.

**CONCLUSION**

For the foregoing reasons, the Funds respectfully request that the Court issue an Order: (1) appointing the Funds as Lead Plaintiffs for the Class; and (2) approving Pomerantz as Lead Counsel and Ransom as Liaison Counsel for the Class.

Dated: September 3, 2024

Respectfully submitted,

**RANSOM, GILBERTSON, MARTIN & RATLIFF, LLP**

By: */s/ Jeffrey S. Ratliff*
Jeffrey S. Ratliff
5441 S. Macadam Avenue, Suite 301
Portland, OR 97239
T: 503-226-3664
Email: RGMR1500@gmail.com

*Liaison Counsel for Lead Plaintiff Movants
Meitav Provident and Pension Funds Ltd., the*

29

*Teachers Funds, and the Menora Funds and [Proposed] Liaison Counsel for the Class*

**POMERANTZ LLP**
Jeremy A. Lieberman
(*pro hac vice* application pending)
J. Alexander Hood II
(*pro hac vice* application pending)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

*Counsel for Lead Plaintiff Movants Meitav Provident and Pension Funds Ltd., the Teachers Funds, and the Menora Funds and [Proposed] Lead Counsel for the Class*