STOEL RIVES LLP
B. JOHN CASEY, OSB No. 120025
john.casey@stoel.com
ALEX VAN RYSSELBERGHE, OSB No. 174836
alex.vanrysselberghe@stoel.com
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone: 503.224.3380
Facsimile: 503.220.2480

GIBSON, DUNN & CRUTCHER LLP
BRIAN M. LUTZ *(Pro Hac Vice)*
blutz@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone: 415.393.8379
Facsimile: 415.374.8474

JESSICA VALENZUELA *(Pro Hac Vice)*
jvalenzuela@gibsondunn.com
JEFF LOMBARD *(Pro Hac Vice)*
jlombard@gibsondunn.com
310 University Avenue
Palo Alto, CA 94301-1744
Telephone: 650.849.5340

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| IN RE NIKE, INC. SECURITIES LITIGATION | Case No. 3:24-cv-00974-AN<br><br>DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS<br><br>Judge: Hon. Adrienne Nelson |

**TABLE OF CONTENTS**

**Page**

MEMORANDUM ....................................................................................................................... 1

I.   INTRODUCTION ............................................................................................................. 1

II.  ARGUMENT ..................................................................................................................... 2

    A.  There Is No Procedural Bar to Considering Defendants' Loss Causation Arguments. ....... 2

        1.  The Law of the Case Doctrine Does Not Apply. ............................................................. 2

        2.  The Court May Dismiss Plaintiffs' Claims as to Specific Alleged Corrective
            Disclosures. ................................................................................................................. 3

    B.  Plaintiffs Do Not Plead Loss Causation Tied to the "Innovation Pipeline" Statement. ..... 4

    C.  Plaintiffs Do Not Plead Facts Demonstrating That NIKE's March, June, and October
        2024 Statements Were Corrective. ...................................................................................... 6

        1.  Plaintiffs Do Not Plead Loss Causation Based on the March 21, 2024, Earnings Call.. 7

        2.  Plaintiffs Do Not Plead Loss Causation Based on the June 27, 2024, Earnings Call... 11

        3.  Plaintiffs Do Not Plead Loss Causation Based on the October 1, 2024, Earnings Call.
            ...................................................................................................................................... 13

    D.  The Court Should Not Grant Plaintiffs Leave to Amend. ................................................. 15

III. CONCLUSION ............................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re BofI Holding, Inc. Sec. Litig.*,
977 F.3d 781 (9th Cir. 2020) ...................................................................................1, 2, 4, 8

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005)...................................................................................................13

*Espy v. J2 Global, Inc.*,
99 F.4th 527 (9th Cir. 2024) ......................................................................................5

*Estep v. City of Somerset, Ky.*,
2011 WL 845847 (E.D. Ky. Mar. 8, 2011)...................................................................3

*In re Facebook, Inc. Sec. Litig.*,
87 F.4th 934 (9th Cir. 2023) ......................................................................................4

*Fid. Fin. Corp. v. Fed. Home Loan Bank of S.F.*,
792 F.2d 1432 (9th Cir. 1986) ..................................................................................15

*Glazing Emps. & Glaziers Union Loc. #27 Pension & Ret. Fund v. iRhythm
Techs., Inc.*,
2025 WL 3128193 (N.D. Cal. Nov. 7, 2025) ...............................................................3

*Grigsby v. BofI Holding, Inc.*,
979 F.3d 1198 (9th Cir. 2020) ............................................................................1, 4, 8

*Katyle v. Penn Nat'l Gaming, Inc.*,
637 F.3d 462 (4th Cir. 2011) .................................................................................8, 12

*Loc. 272 Lab.-Mgmt. Pension Fund v. Walt Disney Co.*,
2025 WL 2428897 (C.D. Cal. Aug. 21, 2025)..............................................................3

*Loos v. Immersion Corp.*,
762 F.3d 880 (9th Cir. 2014) ...............................................................................10, 12

*Lopes v. Fitbit, Inc.*,
2020 WL 1465932 (N.D. Cal. Mar. 23, 2020), *aff'd*, 848 F. App'x 278 (9th
Cir. 2021) .............................................................................................................10, 14

*Menora Mivtachim Ins. Ltd. v. Meta Platforms, Inc.*,
2026 WL 508834 (9th Cir. Feb. 24, 2026) ...........................................8, 11, 13, 14

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
540 F.3d 1049 (9th Cir. 2008) ..............................................................................4, 13

*Mineworkers' Pension Scheme v. First Solar Inc.*,
881 F.3d 750 (9th Cir. 2018) ......................................................................................5

# TABLE OF AUTHORITIES
### *(continued)*

**Page(s)**

*In re Nektar Therapeutics Sec. Litig.*,
  34 F.4th 828 (9th Cir. 2022) ...................................................................................1, 3

*Nova Scotia Health Emps.' Pension Plan v. Comerica Inc.*,
  2026 WL 323711 (9th Cir. Feb. 6, 2026) ...................................................................10

*In re Petrobras Sec. Litig.*,
  150 F. Supp. 3d 337 (S.D.N.Y. 2015)...........................................................................9

*Pub. Emps.' Ret. Sys. of Miss. v. Amedisys, Inc.*,
  769 F.3d 313 (5th Cir. 2014) ........................................................................................9

*Robb v. Fitbit, Inc.*,
  216 F. Supp. 3d 1017 (N.D. Cal. 2016) ........................................................................4

*Rok v. Identiv, Inc.*,
  2017 WL 35496 (N.D. Cal. Jan. 4, 2017) .....................................................................8

*Salameh v. Tarsadia Hotel*,
  726 F.3d 1124 (9th Cir. 2013) ....................................................................................15

*Sec. Inv. Prot. Corp. v. Vigman*,
  74 F.3d 932 (9th Cir. 1996) ..........................................................................................3

*Silva-Pereira v. Lynch*,
  827 F.3d 1176 (9th Cir. 2016) ......................................................................................3

*State Teachers Ret. Sys. of Ohio v. ZoomInfo Techs. Inc.*,
  2025 WL 3013683 (W.D. Wash. Oct. 28, 2025) ..........................................................9

*Steamfitters Loc. 449 Pension & Ret. Sec. Funds v. Extreme Networks, Inc.*,
  2026 WL 817221 (N.D. Cal. Mar. 23, 2026)................................................................9

*United States v. Cote*,
  51 F.3d 178 (9th Cir. 1995) .......................................................................................1, 2

*Wochos v. Tesla, Inc.*,
  985 F.3d 1180 (9th Cir. 2021) .......................................................................1, 3, 8, 12

### Treatises

18B Charles Alan Wright et al., *Fed. Prac. & Proc.: Jurisdiction & Related
  Matters* § 4478.1 (3d ed. 2026)....................................................................................2

## MEMORANDUM

## I.    INTRODUCTION

Plaintiffs' opposition brief misses the central reason why judgment on the pleadings should be granted for Defendants: this case is no longer about the Consumer Direct Acceleration ("CDA") strategy "fraud" alleged in Plaintiffs' Second Amended Complaint ("Complaint").  NIKE's four stock price declines that form the basis of Plaintiffs' loss causation theory are not credibly alleged to have been caused by any revelation of the "truth" regarding the single alleged misstatement that NIKE's "innovation pipeline is strong."  Compl. ¶ 594.  And if there was any "truth" revealed about NIKE's innovation pipeline, it was fully disclosed in the first so-called "corrective disclosure" in December 2023.  Repetitive disclosures on later earnings calls about NIKE's work to improve innovation do not, as a matter of law, "correct" the same statement multiple times.  As a matter of common sense—and binding case law—these later disclosures did not "correct" the one remaining misstatement about the strength of NIKE's innovation pipeline and do not plead loss causation as a matter of law.

Nor does the "law of the case" doctrine bar Defendants from raising a loss causation argument that has never been raised, let alone decided.  *See United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995) (the doctrine "clearly does not extend to issues [a court] did not address").

Consistent with scores of Ninth Circuit and district court cases, this Court can—and should—dismiss this case on the pleadings for failure to plead the essential loss causation element. *E.g.*, *In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 838 (9th Cir. 2022); *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1197 (9th Cir. 2021); *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 786 (9th Cir. 2020); *Grigsby v. BofI Holding, Inc.*, 979 F.3d 1198, 1207 (9th Cir. 2020).

Plaintiffs' lengthy opposition cannot rewrite their Complaint or conceal its fatal defects. Defendants' motion for judgment on the pleadings should be granted.

## II.    ARGUMENT

### A.    There Is No Procedural Bar to Considering Defendants' Loss Causation Arguments.

Plaintiffs clearly are anxious about their loss causation theory, so they try to erect procedural hurdles to bar the Court from even considering the obvious pleading deficiency in their narrowed lawsuit. The "law of the case" doctrine, however, has no application here because there has been no final judgment or appeal, and because the Court has not even addressed, let alone ruled on, the loss causation issue in this case. And Plaintiffs' argument that loss causation cannot be resolved in whole or in part on the pleadings is simply wrong.

#### 1.    The Law of the Case Doctrine Does Not Apply.

The law of the case is a discretionary doctrine that courts sometimes invoke to avoid revisiting a final ruling. *See* 18B Charles Alan Wright et al., *Fed. Prac. & Proc.: Jurisdiction & Related Matters* § 4478.1 (3d ed. 2026) (describing the doctrine as balancing "[t]he necessary power to reopen and the equally necessary reluctance to reopen"). Because its principles "are analogous to res judicata," it "clearly does not extend to issues [a court] did not address." *United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995). Plaintiffs argue that NIKE's motion is barred because NIKE previously moved to dismiss the Complaint on two grounds: falsity and scienter. Dkt. 85 at 24; Opp. at 4. But they concede that NIKE challenges loss causation here "for the first time." Opp. at 3. And courts routinely consider loss causation on motions under Rule 12(c) where they have previously ruled on a Rule 12(b)(6) motion—that was the procedural posture in *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781 (9th Cir. 2020), for instance. *Id.* at 788. Because NIKE does not move the Court to "reconsider" any legal issue, the law of the case doctrine has no

PAGE 2 – REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

application here. *See Silva-Pereira v. Lynch*, 827 F.3d 1176, 1191 (9th Cir. 2016) (doctrine did not apply where there was "no evidence that the [prior decisionmaker] was ever presented with or actually considered that issue").[1]

### 2. The Court May Dismiss Plaintiffs' Claims as to Specific Alleged Corrective Disclosures.

Plaintiffs argue that NIKE's motion cannot be resolved on the pleadings because Defendants ask the Court to rule on the "quantum or amount of damages." Opp. at 10–11, 24–25. Not true. Defendants' motion is simple: the Complaint fails to plead specific facts demonstrating that any of the so-called "corrective disclosures"—let alone all four occurring over a ten-month span—provided new information that corrected the single statement that remains in the case. The issue is loss causation, not damages, and Plaintiffs have failed to plead that element of their claim.

Contrary to Plaintiffs' argument, courts frequently decide on the pleadings whether a plaintiff has met its burden of pleading loss causation. *E.g.*, *In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 838 (9th Cir. 2022) (affirming dismissal of Section 10(b) claim for failure to trace the loss "back to the very facts about which the defendant lied"); *Wochos v. Tesla, Inc.*, 985 F.3d

---

[1] Plaintiffs' authorities confirm that the doctrine has no application here. In two of the cases they cite, the courts used their discretion to invoke the doctrine where the defendants asked them to "consider the same arguments for dismissal it previously considered under the motion to dismiss" or to reconsider its prior rulings on the same elements. *Loc. 272 Lab.-Mgmt. Pension Fund v. Walt Disney Co.*, No. 2:23-CV-03661-CBM-AS, 2025 WL 2428897, at *1 (C.D. Cal. Aug. 21, 2025); *see Glazing Emps. & Glaziers Union Loc. #27 Pension & Ret. Fund v. iRhythm Techs., Inc.*, No. 24-CV-00706-JSC, 2025 WL 3128193, at *1, 5 (N.D. Cal. Nov. 7, 2025) (defendant rechallenged scienter and loss causation). NIKE does not repeat any arguments it made in its motion to dismiss or rechallenge the same elements. In another case Plaintiffs cite, the law of the case doctrine barred the court from deciding an issue because the Supreme Court had already decided the same issue in the same case. *Sec. Inv. Prot. Corp. v. Vigman*, 74 F.3d 932, 937–38 (9th Cir. 1996). That is not the case here. And in *Estep v. City of Somerset, Ky.*, No. CIV.A. 10-286-ART, 2011 WL 845847 (E.D. Ky. Mar. 8, 2011), the court held that the defendants' Rule 12(c) motion was *proper* because it established that the plaintiff's claim failed as a matter of law. *Id.* at *2.

1180, 1197 (9th Cir. 2021) (similar).  Plaintiffs' authorities (Opp. at 15) are not to the contrary, and hold only that whether other factors *also* contributed to a plaintiff's loss is a factual question that cannot be decided on the pleadings *once the plaintiff adequately pleads loss causation.  See, e.g., Robb v. Fitbit, Inc.*, 216 F. Supp. 3d 1017, 1033 (N.D. Cal. 2016).

Courts also routinely streamline cases by dismissing some alleged corrective disclosures while allowing others to proceed, contrary to Plaintiffs' argument.  *See* Opp. at 24.  In *In re BofI Holding*, for example, the Ninth Circuit affirmed the district court's holding that certain blog posts were not corrective as a matter of law while holding the plaintiffs had adequately pled that a whistleblower lawsuit was corrective.  977 F.3d at 786.  And in *Grigsby v. BofI Holding, Inc.*, 979 F.3d 1198, 1207 (9th Cir. 2020), the Ninth Circuit affirmed a holding that a news article was not corrective as a matter of law, while another disclosure had been adequately pled to correct an earlier alleged misstatement.  Plaintiffs' attempt to create problems where none exist should be rejected.[2]

### B.    Plaintiffs Do Not Plead Loss Causation Tied to the "Innovation Pipeline" Statement.

Under binding Ninth Circuit precedent, Plaintiffs bear the burden of pleading loss causation with particularity, consistent with the mandate of Rule 9(b).  *In re Facebook, Inc. Sec. Litig.*, 87 F.4th 934, 954 (9th Cir. 2023).  The very cases Plaintiffs cite for the proposition that this is a low bar underscore that a plaintiff "will always need to provide *enough factual content* to give the

---

[2] Plaintiffs contend that a holding that statements made on the March, June, and October 2024 earnings calls were not corrective as a matter of law would not "foreclose the[ir] expert" from opining on whether those statements precipitated a stock drop.  Opp. at 25.  That argument obviously is wrong.  If later statements did not, as a matter of law, correct the remaining misstatement, there would be no basis for their expert to offer an opinion about their impact on NIKE's stock price.

PAGE 4 – REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

defendant 'some indication of the loss and the causal connection that the plaintiff has in mind.'" *In re BofI Holding*, 977 F.3d at 794 (emphasis added) (citation omitted); *see also Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1064 (9th Cir. 2008) (plaintiffs may not allege loss causation through conclusory euphemisms). Plaintiffs contend that loss causation may be shown in an "infinite variety of ways," Opp. at 22 (citing *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753–54 (9th Cir. 2018)), but *First Solar* did not relax the requirement that the plaintiff allege with particularity that her loss stemmed from the "very facts" the defendant allegedly misrepresented, and not from "some other negative information about the company." *First Solar*, 881 F.3d at 753–54; *Espy v. J2 Global, Inc.*, 99 F.4th 527, 540 (9th Cir. 2024).[3]

Plaintiffs have failed to plead loss causation because their loss causation theory is anchored to dismissed statements about the CDA strategy, not to the surviving statement by Donahoe about NIKE's "innovation pipeline." Plaintiffs attempt, in their opposition brief, to rewrite their Complaint as one focused on innovation rather than on the CDA strategy (Opp. at 12–18), but they simultaneously concede that "the story of NIKE's innovation gap remains a story about CDA" (*id.* at 19). And Plaintiffs contend that "many of the CDA-related revelations on the corrective disclosures facially and directly implicated NIKE's innovation pipeline." Opp. at 20. But the thrust of the Complaint's loss causation allegations is that, on four separate occasions, investors learned "the truth about the CDA strategy's failure"—that the CDA strategy was not delivering

---

[3] Defendants do not contend that a corrective disclosure must "precisely mirror" the challenged statement. Opp. at 11. Nor do Defendants argue that other factors caused Plaintiffs' losses. The point is that Plaintiffs have failed to meet their burden of pleading that any of the four stock drops at issue in their Complaint corrected the single remaining statement about the strength of NIKE's innovation pipeline, as opposed to correcting alleged misstatements about the CDA strategy.

PAGE 5 – REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

sustainable growth, and that this failure negatively impacted NIKE's financial performance. *See, e.g.*, Compl. ¶¶ 621–23, 632, 639–40, 643–44, 654, 658–59, 666–67.

Plaintiffs also argue that, because "the CDA strategy rested on six components," NIKE's underperformance caused investors to "reassess the strength of" each component, including innovation. Opp. at 21–22. But the Court previously held that "[n]o reasonable investor would hear that the CDA strategy was working and understand it to mean" that its purported six components "were all without fault." Dkt. 85 at 27–28. If the strategy's success did not show that each component was working well, then the strategy's failure cannot reveal a weakness in any particular component, including the innovation pipeline.

Plaintiffs finally contend that the CDA's "reorganization disrupted the structures . . . that had historically supported product innovation," such that "NIKE's innovation gap was a consequence of the Company's CDA-driven reorganization." Opp. at 19 (citing Compl. ¶¶ 261, 280–88). But those allegations relate to statements about reorganization the Court already dismissed, not to NIKE's innovation pipeline. *See* Dkt. 85 at 37.

In short, Plaintiffs have not met their burden of pleading loss causation because they have not pled facts demonstrating that the lone remaining alleged misrepresentation was corrected by statements about innovation, as opposed to statements about the CDA strategy as a whole.

**C.      Plaintiffs Do Not Plead Facts Demonstrating That NIKE's March, June, and October 2024 Statements Were Corrective.**

At the very least, Plaintiffs have not pled facts supporting loss causation as to the last three alleged corrective disclosures on the March, June, and October 2024 earnings calls. To try to salvage these "corrective disclosures," Plaintiffs cite things NIKE had already disclosed on the December 2023 call and then repeated on these later calls. On December 21, 2023, NIKE executives said that NIKE had embarked on a "multiyear product innovation cycle" because it

PAGE 6 – REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

needed to "increas[e] the pace of innovation."  Compl. ¶ 624.  Thus, even according to Plaintiffs' logic, investors already knew by December 2023 that NIKE needed to rebuild its innovation pipeline—that it was *not* strong—but that its efforts to do so would take time to "fully ramp up." *Id.*  Plaintiffs point to "disclosures" in NIKE's subsequent earnings calls that reiterate what the market already knew in December 2023 about NIKE's efforts to improve innovation and claim that NIKE's innovation issues had additional financial consequences that were disclosed on those earnings calls.  Neither of these arguments works.  The March, June, and October 2024 statements are not corrective disclosures and should be out of the case.

### 1. Plaintiffs Do Not Plead Loss Causation Based on the March 21, 2024, Earnings Call.

Plaintiffs allege that NIKE made two corrective statements about innovation on its March 2024 earnings call, and that its statements about the impacts of the alleged innovation failures on NIKE's financial performance also were corrective.  But NIKE's statements about innovation were not new and did not correct Donahoe's September 2023 statement.  And the disclosures about the financial impacts of previously disclosed issues are not corrective as a matter of law.

***NIKE's March 2024 statements were confirmatory, not corrective.***  Plaintiffs argue that NIKE made two corrective statements about innovation on the March 2024 earnings call: (1) that NIKE had been "missing some product newness at scale in [its] portfolio over the last several seasons," and (2) that NIKE "must drive a continuous flow of new product innovation."  Opp. at 27 (quoting Compl. ¶¶ 633–34).  But Plaintiffs' contention that the March 2024 statements "hinted at a problem in [NIKE's] innovation pipeline" "for the first time" (Opp. at 26) is belied by their own pleading, which alleges that the December 2023 statements "revealed" that NIKE had been experiencing "innovation stagnation."  Compl. ¶ 624.  The March statements merely confirmed what NIKE had said on the December 2023 earnings call: that it needed to accelerate and scale

PAGE 7 – REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

innovation and had embarked on "the start of a multiyear product innovation cycle" to do so. Compl. ¶ 624.

Plaintiffs contend that NIKE's statement that it had been missing product newness at scale "over the last several seasons" was nonetheless corrective because it "provided investors with new information regarding NIKE's innovation pipeline deficiencies" and "revealed the significance of NIKE's innovation deficiencies and the central role they played in the Company's broader strategic challenges." Opp. at 27. But that statement did not present "new facts" that for the first time revealed that Donahoe's statement that "NIKE's innovation pipeline is strong" was false or misleading. *In re BofI Holding*, 977 F.3d at 794; *see Rok v. Identiv, Inc.*, No. 15-CV-5775-CRB, 2017 WL 35496, at *18 (N.D. Cal. Jan. 4, 2017) (a correction must be "new, that is, publicly revealed for the first time"). Under Plaintiffs' own theory, the market already knew by December 2023 that NIKE's innovation pipeline was not "strong," but was "stagnat[ing]." Compl. ¶ 624. Even if the March 2024 statement added some detail about the nature of the alleged "stagnation," it merely confirmed what Plaintiffs plead was already public information—that NIKE's innovation pipeline was "stagnat[ing]" due to NIKE's "fail[ure] to adequately invest in product innovation." *Id.* This kind of "confirmatory information" is, as a matter of law, not corrective. *Grigsby*, 979 F.3d at 1205.

Defendants' authorities are squarely on point. *Cf.* Opp. at 31. *Wochos*, 985 F.3d at 1197–98, *Katyle v. Penn National Gaming, Inc.*, 637 F.3d 462 (4th Cir. 2011), and *Menora Mivtachim Ins. Ltd. v. Meta Platforms, Inc.*, No. 24-6218, 2026 WL 508834 (9th Cir. Feb. 24, 2026), underscore that statements that confirm previous disclosures are not corrective, even if they add credibility, color, and detail. As in *Wochos*, NIKE's December 2023 statements disclosed "precisely the fact that Plaintiffs contend had been misrepresented"—that, as Plaintiffs assert,

PAGE 8 – REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

NIKE's innovation pipeline was not "strong," but "stagnat[ing]." 985 F.3d at 1197–98; Compl. ¶¶ 594, 624. And as in *Katyle*, NIKE's subsequent statements were not corrective because they told the market "nothing . . . that it had not already heard" about the strength of NIKE's innovation pipeline in September 2023. 637 F.3d at 477 (dismissing six disclosures adding new detail confirming the mounting risk a deal would not close because the market already knew of that risk); *see also Menora*, 2026 WL 508834, at *1 (disclosure was not corrective because it confirmed the impact of changes "Meta already had disclosed").

The cases Plaintiffs cite in which courts held that the plaintiff sufficiently pled partial-disclosure theories (*see* Opp. at 23) are easily distinguishable. One case involved allegations of corrective disclosures that were necessarily new because they described "details and developments . . . that *could not have been known* before they occurred." *In re Petrobras Sec. Litig.*, 150 F. Supp. 3d 337, 344 (S.D.N.Y. 2015). Another featured disclosures that revealed the truth about the defendant's allegedly deceptive channel-stuffing practices. *Steamfitters Loc. 449 Pension & Ret. Sec. Funds v. Extreme Networks, Inc.*, 824 F. Supp. 3d 983, 997–98 (N.D. Cal. 2026). A third case involved several statements and events that combined to create a single corrective disclosure even though no disclosure was held corrective on its own—a fact pattern that contrasts sharply with Plaintiffs' allegations that each of NIKE's four disclosures was itself corrective. *Pub. Emps. Ret. Sys. of Miss. v. Amedisys, Inc.*, 769 F.3d 313, 324 (5th Cir. 2014). In the fourth case Plaintiffs cite, the defendants did not contest loss causation, and the court did not discuss it. *State Teachers Ret. Sys. of Ohio v. ZoomInfo Techs. Inc.*, No. 3:24-CV-05739-TMC, 2025 WL 3013683, at *26 (W.D. Wash. Oct. 28, 2025).

Finally, Plaintiffs contend that NIKE's March 2024 statements conveyed new information because some other statements on the December earnings call were purportedly misleading or

PAGE 9 – REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

"framed optimistically," negating the effect of the December disclosures. Opp. at 26. But Plaintiffs did not even plead that some of these statements were false or misleading, and the ones that they did plead were found *not actionable* by the Court. *See* Dkt. 85 at 42. Plaintiffs cite no authority for the proposition that *true* representations can continue to mislead. And in any event, the purported "reassuring" statements Plaintiffs cite say nothing about the state of NIKE's innovation pipeline in September 2023.[4]

**NIKE's financial results and projections are irrelevant.**  Plaintiffs also contend that statements NIKE made about its financial results and guidance on the March 2024 earnings call somehow corrected the September 2023 innovation pipeline statement. Opp. at 32. But even if there were factual support connecting the innovation pipeline statement to NIKE's earnings and projections—and nothing of the sort is pled—this new theory from Plaintiffs fails because Plaintiffs must trace their claimed loss to Donahoe's alleged misrepresentation, not to "the purported 'impact' of the alleged fraud." *Nova Scotia Health Emps.' Pension Plan v. Comerica Inc.*, No. 24-7673, 2026 WL 323711, at *4 (9th Cir. Feb. 6, 2026). That is, a plaintiff must plausibly plead that the market "learned of and reacted to the company's fraudulent *practices* as opposed to the financial impact of those practices." *Loos v. Immersion Corp.*, 762 F.3d 880, 887–88 (9th Cir. 2014). For instance, in *Lopes v. Fitbit, Inc.*, No. 18-CV-06665-JST, 2020 WL 1465932 (N.D. Cal. Mar. 23, 2020), *aff'd*, 848 F. App'x 278 (9th Cir. 2021), the court held that "a series of negative disclosures regarding Fitbit's financial health" did not correct earlier alleged

---

[4] Plaintiffs contend that the statement that NIKE had been "missing some product newness at scale in [its] portfolio over the last several seasons" also "reassured" investors by "minimiz[ing] the extent and duration of [NIKE's] innovation problems." Opp. at 28. But the very same statement cannot plausibly correct a misstatement while simultaneously continuing to mask the truth by "reassuring" investors.

misrepresentations about Fitbit's finances because Fitbit "had already disclosed the flattening demand which served as the basis for these results." *Id.* at *12. Here, similarly, NIKE's financial results have no bearing on whether Donahoe's statement that NIKE's "innovation pipeline [was] strong" as of September 2023 was true or false. Moreover, NIKE had already disclosed in December 2023 that its product pipeline would have financial consequences, stating that it was experiencing "adjusted digital growth plans" due to supply management of its key franchises. *Compare* Compl. ¶ 623, *with id.* ¶ 632.

NIKE's revised guidance also is not corrective as a matter of law. "[P]rediction[s] of [a company's] future financial picture" are not "corrective disclosure[s] because [they are] forward-looking rather than 'descriptive of historical fact.'" *Menora*, 2026 WL 508834, at *1 (citation omitted). NIKE's future financial guidance revealed nothing about whether its innovation pipeline was strong in September 2023.

### 2. Plaintiffs Do Not Plead Loss Causation Based on the June 27, 2024, Earnings Call.

Nor did NIKE make any "corrective disclosures" on the June 27, 2024, earnings call.[5] Plaintiffs argue that NIKE's statement that it had "started managing [certain classic] franchises a couple of years ago" due to "a gap in innovation in [its] pipeline" was corrective because it "further reveal[ed] the longstanding innovation deficiencies underlying NIKE's business and its

---

[5] Plaintiffs ignore the April 2024 statement by Donahoe—that NIKE had been "ruthlessly focused on rebuilding [its] disruptive innovation pipeline" over the last year—that the Court concluded supported a pleading-stage inference that the September 2023 innovation pipeline statement was false or misleading and made with scienter. Dkt. 85 at 48 (quoting Compl. ¶¶ 298, 594). Plaintiffs do not claim that this statement was a corrective disclosure, but they ignore its relevance for this motion: the statement provided the market yet again with information about NIKE's challenges with its innovation pipeline that rendered later statements incapable of pleading loss causation because the alleged "truth" about NIKE's innovation pipeline already was known.

management of its classic product franchises." Opp. at 30 (quoting Compl. ¶¶ 645, 647). But NIKE had already disclosed its need to manage its supply of classic franchises and to improve innovation in December 2023, when it stated that it had started a new "product innovation cycle" and was "adjust[ing] digital growth plans based on recent digital traffic softness . . . higher marketplace promotions [and] lifecycle management of key product franchises." Compl. ¶ 623. According to the Complaint, the market already learned in December 2023 that NIKE's innovation pipeline was not "strong," as Donahoe had indicated in September 2023, but "stagnat[ing]." *Id.* ¶¶ 594, 624. Nothing new was needed to "correct" Donahoe's alleged misrepresentation. NIKE's statements on June 27, 2024, therefore, were not corrective as a matter of law, even if they added more detail about the nature of the "stagnation" revealed in December 2023. *See Wochos*, 985 F.3d at 1197–98 (confirmatory statements not corrective even if they disclose new, concrete detail); *Katyle*, 637 F.3d at 477 (similar).

Plaintiffs also argue that NIKE's statement that "newness" was "not yet at scale" was corrective because it revealed that NIKE had a "concrete and sustained problem" with innovation. Opp. at 29. They further contend that NIKE's statement that it was "moving aggressively to reestablish our innovation edge" was similarly corrective because it "further revealed the severity and persistence of NIKE's innovation deficiencies." Opp. at 30. But even if true, all of this information already was public as of at least December 2023, when NIKE disclosed that its pace of innovation was slow, and that the Company had launched a new product innovation cycle to increase the speed of innovation. So investors knew *then*—as of December 2023—that NIKE's product innovation had slowed. Further "severity" or "persistence" of the slowdown in June 2024 did not "correct" the statement about NIKE's innovation pipeline being strong, because NIKE investors already knew as of December 2023 that NIKE needed to increase the pace of innovation.

PAGE 12 – REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiffs next contend that NIKE made corrective statements on the June 2024 earnings call when it "revealed that the financial consequences of NIKE's deficient innovation pipeline had worsened" and "would have a substantially greater impact on future revenues." Opp. at 29–30. Specifically, NIKE announced that its fourth-quarter FY 2024 revenue was lower than expected and revised its FY 2025 guidance. But, again, this financial news is not corrective because the statement that NIKE's "innovation pipeline [was] strong" in September 2023 said nothing about NIKE's finances, and because evidence of the evolving financial consequences of known issues is not corrective as a matter of law. *See Loos*, 762 F.3d at 887–88 (loss causation requires facts that the market "learned of and reacted to the company's fraudulent *practices* as opposed to the financial impact" thereof). Plaintiffs' reliance on analysts' reactions to NIKE's revised financial forecast (*see* Opp. at 30) has the same problem. Financial guidance is merely a "prediction of [NIKE's] future financial picture" and not "'descriptive of historical fact,'" *Menora*, 2026 WL 508834, at *1 (citation omitted), so analysts' reactions to it say nothing about whether NIKE's innovation pipeline was strong in September 2023.

Plaintiffs also note that NIKE's stock dropped 20% following the June 2024 earnings call. Opp. at 30. But this has no bearing on whether they have plausibly alleged a corrective statement. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) ("an inflated purchase price will not itself constitute or proximately cause the relevant economic loss"); *Metzler*, 540 F.3d at 1064 (rejecting reliance on a 45% stock drop as a correction by euphemism).

### 3.    Plaintiffs Do Not Plead Loss Causation Based on the October 1, 2024, Earnings Call.

Nor have Plaintiffs adequately pled that NIKE made any corrective disclosures on its October 1, 2024, earnings call. That call marked the third consecutive earnings call on which NIKE reported disappointing earnings. And the only references to innovation on this call repeated

PAGE 13 – REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

the same information NIKE previously disclosed in December 2023: that NIKE needed to accelerate and scale innovation, and that it was experiencing financial impacts, particularly in NIKE Digital, due to its management of classic franchises. *Compare* Compl. ¶ 623 (December 2023: NIKE was experiencing "adjusted digital growth plans based on . . . lifecycle management of key product franchises") *and id.* ¶ 624 (December 2023: NIKE "must be faster, increasing the pace of innovation"), *with id.* ¶ 660 (October 2024: NIKE had been "intentionally reducing the proportion of [its] business driven by [its] classic footwear franchises") *and id.* ¶ 661 (October 2024: NIKE planned to "introduce and scale newness and innovation across the marketplace"). Even Plaintiffs concede the repetitive nature of the innovation disclosures in October 2024, acknowledging that NIKE "*continued* to acknowledge" its need to improve innovation on the October call. Opp. at 32 (emphasis added).

Plaintiffs try to salvage this repetitive disclosure as corrective by arguing that, "[a]lthough NIKE had previously acknowledged deficiencies in its innovation pipeline," its October 2024 statements were corrective because they "further revealed that those deficiencies had not yet been remedied and continued to impair the Company's financial performance." Opp. at 32. They make similar arguments about NIKE's reduced supply of its classic franchises, its decision to withdraw its FY 2025 financial guidance, and its statements that its "[f]ranchise management actions will continue throughout the year." *Id.* But disclosures about the state of NIKE's innovation pipeline in *late 2024* again do nothing to contradict Donahoe's statement that NIKE's "innovation pipeline [wa]s strong" as of September 2023. And the statements about NIKE's withdrawn guidance and franchise management forecast were not corrective because they were "prediction[s] of [NIKE's] future financial picture," not "'descriptive of historical fact.'" *Menora*, 2026 WL 508834, at *1 (citation omitted). And in any event, the market already knew as of December 2023 that NIKE

PAGE 14 – REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

had "adjusted digital growth plans" and was facing "increased macro headwinds" (i.e., adverse impact on its financial performance) due to its ongoing efforts in supply management of key products. Compl. ¶ 623; *see Lopes*, 2020 WL 1465932, at *12 (worsening financial results "added no new information" because defendants had "already disclosed the flattening demand which served as the basis for these results"). Plaintiffs have come nowhere close to meeting their burden of pleading facts demonstrating that the October 2024 earnings call contained a corrective disclosure.

> **D.      The Court Should Not Grant Plaintiffs Leave to Amend.**

When the Court previously dismissed 78 of Plaintiffs' 79 alleged misstatements, it gave Plaintiffs 30 days to file an amended complaint. Dkt. 85 at 56. They chose not to amend. Remarkably, Plaintiffs now request leave to amend in a footnote, without explaining what new facts they could plead—much less facts that were *not* available to them in April 2026, when they strategically declined the Court's invitation to amend their allegations. Opp. at 33 n.5. Plaintiffs "have had ample opportunity to properly plead a case and have failed to do so." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013); *Fid. Fin. Corp. v. Fed. Home Loan Bank of S.F.*, 792 F.2d 1432, 1438 (9th Cir. 1986) (describing district court's discretion to deny leave to amend as "particularly broad" when plaintiff already had an opportunity to amend). This Court should deny Plaintiffs' belated request to unwind their deliberate choice to stand on their operative pleading.

## III.    CONCLUSION

The Court should enter judgment on the pleadings for Defendants on all of Plaintiffs' remaining claims for failure to plead loss causation. In the alternative, because Plaintiffs have not sufficiently alleged that the March, June, and October 2024 earnings calls contained a corrective

PAGE 15 – REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

disclosure, the Court should grant Defendants partial judgment on the pleadings and hold that

Plaintiffs have not pled loss causation based on those earnings calls.

DATED: July 13, 2026                          STOEL RIVES LLP


                                              _____s/ B. John Casey_____
                                              B. John Casey, OSB No. 120025
                                                john.casey@stoel.com
                                              Alex Van Rysselberghe, OSB No. 174836
                                                alex.vanrysselberghe@stoel.com
                                              Telephone: (503) 224-3380

                                              GIBSON, DUNN & CRUTCHER LLP
                                              Brian M. Lutz *(Pro Hac Vice)*
                                                blutz@gibsondunn.com
                                              Jessica Valenzuela *(Pro Hac Vice)*
                                                jvalenzuela@gibsondunn.com
                                              Jeff Lombard *(Pro Hac Vice)*
                                                JLombard@gibsondunn.com

PAGE 16 – REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS